FILED
2020 May-13  AM 07:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 52

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

PEOPLE FIRST OF ALABAMA, et al.,

        Plaintiffs,

        v.

JOHN MERRILL, et al.,

        Defendants.

Case No.: 2:20-cv-00619-AKK

**DECLARATION OF ROBERT CLOPTON**

Pursuant to 28 U.S.C. § 1746, I declare that the following is true and correct to the best of my knowledge:

1. My name is Robert Clopton. I am 65 years old. I am Black. I was born in Colony, Alabama, and currently live in Mobile, Alabama with my wife.

2. I am retired. I worked for UPS for 31 years prior to my retirement in July 2009. Since 2014, I have done part time work for the City of Mobile as a crossing guard, one hour in the morning and one hour in the afternoon.

3. I understand that there is a primary runoff election for Alabama's First U.S. Congressional District in Mobile County on July 14, 2020. I am eligible to vote in that election and I would like to vote in that election. As the President of the Mobile County branch of the NAACP, voting and political participation is a core part of our mission and of my values. I have been voting since I was 18 years old, and I have never missed an election. I witnessed the joy and jubilation from my family and others when the Voting Rights Act was signed in 1965. As soon as we were able to vote, my family impressed upon me the importance of voting. Ever since, I have been active in getting out the vote, and ensuring that others are heard in our democracy. I have

helped register people and set the example for my children and others about the importance of voting as well.

4.      However, I am truly concerned by the dangers of COVID-19. I understand that I am at particular risk for serious complications from the virus because of my age, underlying medical conditions, and recent surgery.

5.      I have diabetes and hypertension. I take medications for both, try to keep my weight down, and do as much as possible to avoid insulin spikes. I have been managing both, but I have a brother who died from diabetes complications in 2016. My mother and sister are on insulin as well, so it runs in my family.

6.      In addition, I am recovering from a recent surgery. On March 3, 2020, I voted in the primary in the morning and went to the doctor for what I believed would be a routine MRI in the afternoon. Before I made it back home from the MRI, the doctor's office called and told me to immediately go to the ER.  I was admitted to the hospital and scheduled for emergency surgery on March 5. I was in the hospital until March 10. I am not expected to make a full recovery from my surgery until at least four months from now. Over the course of my stay at the hospital, I started noticing everyone in the hospital wearing face masks and gloves. The reaction of hospital staff helped me to realize that COVID-19 was a serious threat. When I was discharged, my wife and I decided to self-quarantine at home even before the President declared a state of emergency and before Governor Ivey issued the first stay at home order.

7.      As an Black male, I am also aware that Black people have higher rates of getting and dying from COVID-19 in Alabama. In fact, two of my very dear friends have passed away from COVID-19. I know numerous friends and acquaintances who have contracted the virus. All of these friends and acquaintances are Black. These individuals were such an important part of

my life, that I almost certainly would have come into contact with them if it were not for our staying at home and self-quarantining. These protective measures may have saved my life.

8.      Because of these factors, I am particularly concerned about the virus and I am determined to practice strict safety measures. Other than my wife, no one else resides in our home. We have not allowed visitors into the home. The only exception was my sister-in-law who stopped by the entryway in mid-March on two occasions. I was never in the same room as her. One time she remained at the front door and, on another occasion, she asked to use the restroom. After my sister-in-law left, my wife sanitized and sprayed every surface and the doorknobs. No one else has been inside our home since mid-March.

9.      We have declined visits from friends, family, and from various business services who have come by the home. Specifically, pest control came by, but we turned them away. In addition, although we have some repairs that need to be done by Comcast, we have turned them away as well. Although we have not let any people in, my wife cleans the doors and knobs every day because we cannot be sure that they have not touched the outside. We sanitize everything, but we can never be sure others are as careful as we are.

10.      My wife and I have only left home on five occasions in over two months, one of which was for me to go to a follow-up doctor's appointment in late March. The other four occasions were to go to the grocery store only during the senior citizens' hours of 7-8 am when it is nearly empty. Each time we have worn masks and gloves. I have not left the house for any other reason.

11.      Although the Governor has started reopening some businesses and locations, I am staying in place. I do not anticipate feeling safe in other people's company, even at a six-foot distance, for the foreseeable future. Even survivors of COVID-19 do not know if they are

immune to the virus or whether they can contract it again. We do not know enough about this virus, and I will not take my chances. Any precaution I can take for me, my family, and others, I am going to do it.

12.     In light of current projections, I would not feel safe being in any group setting, including voting in-person at a polling place for the July and November elections.

13.     I would like to vote absentee in the July 14, 2020 primary runoff election. But, because of our strict self-quarantining and social distancing, I only have one witness—my wife. I do not feel comfortable taking the risk of going to see a notary or inviting other witnesses to our home, even if outside. I understand that the Governor announced that notarization by videoconferencing will be available for the July runoff. Although I can access videoconferencing technology, neither me nor my wife feel comfortable going to the post office to send the ballot to a notary, which would be required of us in order to use this option.

14.     If casting an absentee ballot is not available to me as an option, I am interested in drive thru voting as a way to minimize the risk as much as possible. I have never missed an election, but if I cannot vote by absentee mail-in ballot or "drive thru" in July or November, my voting rights will be infringed. I will be forced to make a choice between my health and casting a ballot. Voting is an inalienable right that people died for. But people should not have to risk dying needlessly to vote now. I saw what a travesty Wisconsin was. I will not risk it for myself.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this day the 11th of May, 2020.

Robert Clopton, Sr.

# EXHIBIT 53

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

PEOPLE FIRST OF ALABAMA, et al.,

        Plaintiffs,

        v.

JOHN MERRILL, et al.,

        Defendants.

**Case No. 2:20-cv-00619-AKK**

## <u>DECLARATION OF ERIC PEEBLES</u>

Pursuant to 28 U.S.C. § 1746, I, Eric Peebles, declare as follows:

1.      I am over the age of eighteen, and I am competent to make this declaration. I provide this declaration based upon my personal knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

2.      I am a Plaintiff in the case *People First of Alabama et al., v. Merrill, et al.*

3.      I am 38 years old and a resident of Auburn, Alabama. I am a U.S. citizen and have never lost my right to vote due to felony conviction or court order.

4.      I am a white man. I live alone in my home in Auburn, Alabama.

5.      I am registered to vote in Auburn, Alabama.

6.      I have spastic cerebral palsy, which makes me high-risk for contracting and suffering severe complications, including death, from COVID-19. Respiratory illnesses like COVID-19 can be fatal for people with cerebral palsy. I also use a wheelchair.

7.      I am the co-founder and executive director of Accessible Alabama, an organization founded in 2013 that works to increase accessible housing options in communities for people with disabilities and those facing growing limitations as they age.

8.      Because I am at serious risk of severe complications and death if I were to contract COVID-19, I have been in strict self-isolation since approximately March 12, 2020. In fact, one of my doctors told me I had to switch to remote treatment for a wound I have because it is not safe for me to come to the doctor's office.

9.      I have four caregivers who provide 60 hours of care in separate shifts that do not overlap. At my request, to protect my health, each of my four caregivers were tested for COVID-19 and received negative results.

10.     I voted in person in the March 3, 2020 primary in Auburn. I usually vote in person. I cannot operate the voting machines without assistance, so I bring someone into the voting booth to help me fill out my ballot.

11.     I plan to vote in the November 3, 2020 general election.

12.     I would prefer to vote in person, but because of my increased risk of contracting and having severe complications, including death, from COVID-19, I am unable to vote in person for the November election without severe risk to my health and life.

13.     I understand that to vote by absentee ballot in the November 3 election, I need to qualify for an excuse provided on the absentee ballot application. I understand that no State of Alabama official has approved COVID-19-related health concerns as a valid excuse to vote by absentee ballot in the November general election. I do not believe that I currently qualify for an excuse on the absentee ballot application because my physical condition has not prevented my attendance at the polls in the past.

14.     I also understand that to vote by absentee ballot in the November 3 election, I must sign my absentee ballot in the presence of a notary or two adult witnesses.

15.     Because I live alone, am under strict self-isolation, and only interact with one other person at a time, I would have to leave my home and engage in the person-to-person contact I have been avoiding to sign my ballot in the presence of a notary or two adult witnesses. This is a risk I cannot take given my higher risk of contracting and having severe illness or dying from COVID-19.

16.     If given the option to vote curbside at the polling place, I would do so. Curbside voting would allow me to avoid the person-to-person contact of voting inside the polling place that will put my health and life at severe risk.

17.     If I cannot vote by absentee ballot or via curbside voting at my polling place, I will not be able to vote in November.

18.     Voting is very important to me. When I was a child in the mid-1980s, my local public school tried to bar me from attending because of my disability and wheelchair use. School officials even said I was a danger to other students because of my power wheelchair. My mother refused to accept this discrimination and lobbied local leaders on my behalf. After two years of advocacy, my school district was put under federal supervision, and I was allowed to attend public school like every other kid my age. I learned the power of individual political action and self-advocacy at a young age. I registered to vote after I turned 18, and I have tried to vote in every election since.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __8th__ day of __May__ 2020.

Eric Peebles

# EXHIBIT 54

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

PEOPLE FIRST OF ALABAMA, et al.,

        Plaintiffs,

        v.

JOHN MERRILL, et al.,

        Defendants.

Case No.: 2:20-cv-00619-AKK

## DECLARATION OF HOWARD PORTER, JR.

Pursuant to 28 U.S.C. § 1746, I declare that the following is true and correct to the best of my knowledge:

1.      My name is Howard Porter. I am 69 years old. I am Black. I currently live in Prichard, Alabama, in Mobile County. I am a registered voter at my current address.

2.      I live with my wife of 45 years, and my son, who is over 18 years old.

3.      I am retired and receiving Social Security Income.  I used to work for the Fair Housing Agency of Alabama.

4.      I understand that there is a primary runoff election for Alabama's First U.S. Congressional District in Mobile County on July 14, 2020. I am eligible to vote in that election. I have been voting since I was 18 years old, and exercising my fundamental right is very important to me.

5.      I hope to vote in the July runoff, but I am afraid of voting in person at a polling place. I am at high-risk for contracting COVID-19, because of my age and my medical conditions, including my asthma.

6.      I also have Parkinson's disease, and it is hard for me to ambulate. I was first

diagnosed about two years ago. As part of my condition, my legs can freeze up and, when that happens, I fall and I cannot get up by myself. I use a cane as a mobility aid.

7.      As a Black man, I am also aware of the higher rates of contracting, serious complications from, and death due to COVID-19 that Black people are experiencing. This makes me especially concerned about the virus and determined to practice social isolation to the extent possible.

8.      I also take this virus very seriously because it has hit very close to home.

9.      My sister has been in the hospital for about one month now due to COVID-19. She was on a ventilator for two weeks. She is out of the ICU, but she is still in the hospital and now on a feeding tube. Prior to her hospitalization from the virus, her kidneys were functional, but now she is on dialysis. Last I heard from the hospital, my sister does not know where she is.

10.     My last surviving uncle is also in the hospital with COVID-19. He has been in the hospital for about two weeks. I do not want COVID-19 to impact me or my family any more than it already has.

11.     Because I am at serious risk of complications and even death from COVID-19, I have not left my home since the Governor issued the April 3 stay-at-home order. My wife and son do our grocery shopping. They wear masks and gloves and use hand sanitizer. As soon as they come home, they both take showers and wash their clothes before they can enter the same room as me. I plan to stay at home for the foreseeable future even after the "Safer at Home" or any other such order is lifted.

12.     I do not anticipate feeling safe leaving my home until a vaccine against COVID-19 is developed or a cure becomes available.  I am also fearful that leaving my home will become more dangerous to me now that social distancing restrictions have been relaxed in

Alabama. If more people are out because restrictions have been relaxed or they become lifted in the near future before a vaccine or cure, it will become even harder for me to exit my home and attempt to be socially distant.

13.     I have always voted in-person. I voted in person during this year's Super Tuesday primary on March 4, and I want to vote in the July 14 primary runoff. But I am afraid to go to the polls, because I cannot risk contracting COVID-19.

14.     I would like to vote absentee, but I am afraid I will not be able to comply with the requirement that you mail in a photocopy of your photo ID with the absentee ballot application. Although I have a printer at home, I am retired and receive only my very limited Social Security Income. I am worried that I may not be able to afford the ink, paper, and toner needed to maintain my printer for the July 14 election.

15.     Because of my difficulty ambulating, I worry that if I am forced to go to a place of business to copy my photo ID or to an in-person polling place, I may not be able to keep an adequate distance from others—even if I am careful to keep six feet or more away from others, that does not mean others will be careful to keep six feet away from me. Its physically impossible for me to react quickly to evade people or move out of the way.

16.     If I am unable to meet the absentee voting requirements, I would prefer to vote curbside rather than in-person by entering the polling place. "Drive thru" voting would greatly reduce my risk of contact with other persons, particularly in light of my difficulty ambulating.

17.     If I am unable to vote absentee or curbside, and the only option available to me is to vote in-person, I will not vote because the risk to my life from a COVID-19 infection is too great. The franchise is something people of my parents' generation died for, but I do not think it is right for us to have to die now. I should not have to pay that kind of price to vote.

18.     Although it seems far off, I understand that this virus is not expected to go away by the fall. Because of my severely increased risk of contracting COVID-19 due to my health conditions, my age, and my race, I cannot imagine feeling safe to vote in-person in November. I also cannot predict my family's financial situation in November. I am not sure if we will be able to afford the ink and paper we would need to print a copy of my ID in November.

19.     Because of the photo ID requirement and the lack of curbside voting in Alabama, I do not know how or if I will be able to vote without having to risk my life and safety in July or November.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 9th, 2020

*Howard Porter, Jr.*

Howard Porter, Jr.

# EXHIBIT 55

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

PEOPLE FIRST OF ALABAMA, et al.,

        Plaintiffs,

        v.

JOHN MERRILL, et al.,

        Defendants.

**Case No. 2:20-cv-00619-AKK**

## <u>DECLARATION OF ANNIE CAROLYN THOMPSON</u>

Pursuant to 28 U.S.C. § 1746, I, Annie Carolyn Thompson, declare as follows:

1.      I am over the age of eighteen, and I am competent to make this declaration. I provide this declaration based upon my personal knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

2.      I am a Plaintiff in the case *People First of Alabama et al., v. Merrill, et al.*

3.      I am 69 years old and a resident of Mobile, Alabama. I am a U.S. citizen and have never lost my right to vote due to felony conviction or court order.

4.      I am an African-American woman. I live alone in my home in Mobile, Alabama.

5.      I am registered to vote in Mobile, Alabama.

6.      I currently suffer from chronic medical conditions, including diabetes and high blood pressure. I am also recovering from a serious fall in January and am having more difficulty than usual getting around.

7.      I was born in Wilcox County, Alabama. My family—the Pettaway family—has deep roots in Wilcox County. My family on my mother's side were enslaved by the Pettaway family on their plantation. After emancipation, my family worked as sharecroppers. Many members of

my family still live and own land in Boykin, Alabama, also known as Gee's Bend—or Pettaway Bend to locals.

8.      I went to Central High School in Mobile, Alabama before it was integrated, and I lived in Mobile during the Civil Rights Movement of the 1950s and 1960s.

9.      I was a cosmetologist for 35 years in Mobile and in New Orleans, Louisiana. When I retired from cosmetology, I became a caretaker. I am hired by the family of a loved one who lives in an assisted living facility to provide extra care.

10.     On or about April 1, 2020, the patient I was caring for spiked a high fever. He was taken to the hospital and tested for COVID-19.

11.     On or about April 1, 2020, because I had been in close contact with someone who may have had COVID-19, I was tested for COVID-19. I went to the parking lot of my doctor's office where I knew tests were being offered to those who qualified. Thankfully, my test came back negative at that time.

12.     Prior to April 1, 2020, I had been taking measures to protect myself, including wearing a mask and gloves whenever I was out in public or at the assisted living facility.

13.     On or about April 1, 2020, I began self-isolating at my home to protect myself from contracting COVID-19. I am isolating myself from others to prevent COVID-19 infection since I am high-risk for complications. Since that time, I only see another person when my daughter or granddaughter bring me groceries and check on me periodically.

14.     I voted in person in the March 3, 2020 primary in Mobile.

15.     I plan to vote in the First Congressional District Democratic primary runoff election on July 14 in Mobile and the November 3 general election.

16.     I would prefer to vote in person for upcoming 2020 elections. But because of my increased risk of contracting and having severe complications, including death, from COVID-19,

I am unable to vote in person for the remainder of the 2020 elections without severe risks to my health and life.

17.     I understand that to vote by absentee ballot in the July 14, August 25, and November 3 elections, I must include a copy of my photo ID with my absentee ballot application.

18.     I do not own a printer, a scanner, or a copy machine. I only recently purchased a laptop computer and have internet access, but I have no way of making a copy of my photo ID from my home.

19.     To obtain a copy of my photo ID, I would have to leave my home and find a business that would allow me to purchase a copy of my photo ID. This would require me to engage in the person-to-person contact that I have been specifically avoiding to protect myself from COVID-19 infection.

20.     I also understand that to vote by absentee ballot in the July 14, August 25, and November 3 elections, I must sign my absentee ballot in the presence of a notary or two adult witnesses.

21.     Since I live alone, I would have to leave my home and engage in the person-to-person contact I have been avoiding to sign my ballot in the presence of a notary or two adult witnesses. This is a risk I do not want to take given my higher risk of contracting and having severe illness or dying from COVID-19.

22.     I understand that to vote by absentee ballot in the November 3 election, I need to qualify for an excuse provided on the absentee ballot application. I understand that no State of Alabama official has approved COVID-19-related health concerns as a valid excuse to vote by absentee ballot in the November general election. I understand that I do not currently qualify for an excuse on the absentee ballot application.

23.     If given the option to vote curbside at my polling place, I would do so.

24.     If I cannot vote by absentee ballot or via curbside voting at my polling place, I will not be able to vote in November.

25.     Voting has always been important to me, particularly given my family's history, and the long struggle for voting rights in Alabama and this country. When I was a child, I saw members of my community who were forced to buy "voting cards" to cast a ballot. Growing up, I knew that most of the adults I looked up to in my neighborhood were not able to vote. I know that Black people from my home in Gees Bend and my community in Mobile fought and died for the right to vote. I registered to vote when I was 18 years old, and I have tried to vote in every election since then. Over the years, I have worked as a poll worker for my local precinct, including as a precinct captain.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __7th__ day of __May__ 2020.

Annie Carolyn Thompson

# EXHIBIT 56

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

PEOPLE FIRST OF ALABAMA, et al.,

        Plaintiffs,

        v.

JOHN MERRILL, et al.,

        Defendants.

**Case No. 2:20-cv-00619-AKK**

## DECLARATION OF SUSAN ELLIS ON BEHALF OF
## PEOPLE FIRST OF ALABAMA

Pursuant to 28 U.S.C. § 1746, I, Susan Ellis, declare as follows:

1.     I am over the age of eighteen, and I am competent to make this declaration. I provide this declaration based upon my personal knowledge. I would testify to the facts in this declaration under oath if called upon to do so.

2.     I am the Executive Director of People First of Alabama ("People First"). In my capacity as Executive Director, I am familiar with, and receive frequent updates and proposals for, the activities of People First.

3.     People First is a Plaintiff in the case *People First of Alabama et al., v. Merrill, et al.*

4.     People First, founded in 1988, is a group of people with developmental disabilities dedicated to making their dreams happen by having choices and control over their own lives, including by having opportunities to make decisions and plans for themselves instead of having others make decisions for them.

5.     People First has membership chapters across Alabama, divided into five regions. We currently have 25 membership chapters.

6.      People First assists its members in accessing, among other things, competitive employment, decent housing of their choosing, transportation, and full citizenship with equal rights. This work with members includes securing access to full and equal voting rights.

7.      One of People First's current initiatives is called "Project Vote" and is a training curriculum that our organization has adapted to provide voter training to individuals with disabilities around the state. The curriculum focuses on how to register to vote, the importance of voting, and what support is available for voters with disabilities.

8.      Our members include registered voters with disabilities who plan to vote in the July 14, August 25, and November 3 elections.

9.      People First members include registered voters with disabilities who have conditions that put them at higher risk of contracting or having severe complications, including death, from COVID-19, and are thus required to self-quarantine. Voting in person would therefore put the health of these voters at significant risk because of the person-to-person contact at the polling place.

10.     People First members include registered voters with disabilities who live alone, including those with conditions that put them at higher risk of contracting or having severe complications, including death, from COVID-19. Although these members could vote by absentee ballot for the July 14 and August 25 elections given Secretary of State Merrill's emergency order, they are unable to comply with the requirement to have their absentee ballot notarized or witnessed by two adults because those activities require person-to-person contact.

11.     For example, People First member Kelly has severe asthma and difficulty breathing. She has an elevated risk for severe complications from respiratory illnesses such as COVID-19. Because of her elevated risk, Kelly has been socially isolating at her home in Pea Ridge,

Alabama where she lives alone. Kelly cannot safely vote in person without risking COVID-19 infection, but because she lives alone and is isolating herself from others, she will be unable to comply with the requirement to have her absentee ballot notarized or witnessed by to adults without risking her health. Kelly will also not be able to comply with the requirement to include a copy of her photo ID requirement with her absentee ballot application. Kelly has a developmental disability that makes it very difficult for her to use technology, and she does not have a printer, scanner, or copier in her home. And because she cannot leave her home due to COVID-19 risks, she is unable to obtain a copy elsewhere without significant risks to her health.

12.     Many People First members have disabilities that make it difficult for them to have steady employment and they live mostly off social security disability income, including people with conditions that put them at higher risk of contracting or having severe complications, including death, from COVID-19. Accordingly, they cannot afford technology required to comply with the state's photo ID requirement for absentee ballot, including printers, scanners, copiers, or even internet access. And traveling to a business to make copies—which would also be challenging on a fixed income—would force these members to engage in person-to-person contact that risks their health.

13.     People First members include voters who use wheelchairs and voters with physical disabilities who are less able to access the inside of their polling place and those who require assistance voting and thus cannot vote by absentee ballot, including people with conditions that put them at higher risk of contracting or having severe complications, including death, from COVID-19. People First members also include people with intellectual disabilities who normally vote in-person and would have difficulty switching to an absentee ballot process, including people with conditions that put them at higher risk of contracting or having severe complications,

including death, from COVID-19. If Alabama offered curbside or drive-thru voting—especially during the COVID-19 pandemic—these members would use such an option to safeguard their health while still voting in person.

14.     Every election year People First conducts voter education trainings for its members. These trainings are conducted at individual chapter meetings and at larger events throughout the state. Typically, the content focuses on the voting rights of people with developmental disabilities and the right to assistance in the voting booth. This year People First must divert resources from these trainings so that it can train its members on navigating the election system during the pandemic, including education on how to apply for, fill out, and return an absentee ballot so that it is counted.

15.     People First of Alabama is Plaintiff in this lawsuit because people with disabilities have the same fundamental right to vote as other Americans. During the COVID-19 pandemic, it is critical that election administrators protect the health and safety of voters and election workers and safeguard accessible voting for voters with disabilities, including safe mail-in, curbside, and in-person options.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __11__ day of _May_ 2020.

Susan Ellis

# EXHIBIT 57

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

PEOPLE FIRST OF ALABAMA, et al.,

        Plaintiffs,

        v.

JOHN MERRILL, et al.,

        Defendants.

Case No.: 2:20-cv-00619-AKK

## <u>DECLARATION OF SCOTT DOUGLAS, III</u>

Pursuant to 28 U.S.C. § 1746, I declare that the following is true and correct to the best of my knowledge:

1.      My name is Scott Douglas, III, and I am employed as the Executive Director of Greater Birmingham Ministries ("GBM"), a Plaintiff in this matter.

2.      GBM was founded in 1969 in response to the urgent human and justice needs of the residents of the greater Birmingham, Alabama area.  GBM is a multi-faith, multi-racial organization that provides emergency services for people in need and engages in community efforts to create systematic change with the goal of building a strong, supportive, and politically active society that values and pursues justice for all people.

3.      I have served as the Executive Director for GBM since February 1993.

4.      GBM is a non-profit and non-partisan organization committed to improving the participation of marginalized and low-income voters, in particular, African-American and Latino voters, in the democratic process, through voter registration, voter education and voter participation.  During my employment with GBM, I have overseen our voter registration, voter education and voter turnout efforts.

5.      GBM conducts its voter registration activities at its offices and at community-based sites such as school campuses, malls and fairs.

6.      Since its founding in 1969, GBM has conducted numerous voter mobilization campaigns in Alabama.  GBM conducts its voter mobilization campaigns by identifying, recruiting, training and organizing members of partner faith communities, student groups and other organizations to contact registered voters and monitor elections at identified high traffic polling places in Birmingham's low-income and predominately African-American and Latino neighborhoods.  Additionally, GBM provides resources and training to students on Birmingham-area college campuses who work to register their fellow students at various campus locations and events.

7.      As a result of the Witness Requirement and the Prohibition on Curbside Voting, GBM is now required to divert a portion of its limited financial and organizational resources away from voter registration and turnout efforts to undertake such new activities as (1) assessing who among its members are unable to comply with the Witness Requirement amid the COVID-19 pandemic; (2) increasing efforts to educate its members and constituents about the Witness Requirement; (3) advocating that Defendants permit curbside voting; and (4) investigating, responding to, mitigating, and addressing the concerns of its members and constituents impacted or who will be disenfranchised by the Witness Requirement, Prohibition on Curbside Voting, and Defendants' inadequate efforts to protect voters from COVID-19 ahead of the 2020 elections. In absence of the Witness Requirement and Prohibition on Curbside Voting, GBM would not have had to engage in these activities. As a result, GBM is limited, and will continue to be limited, in the organizational resources that it can devote to its other core goals.

8.      In addition, because of the Witness Requirement and Prohibition on Curbside

Voting, a significant number of GBM's members will be forced to make an impossible choice between their health and safety or the ballot.

9.     GBM has about 5,000 members. Many of GBM's low-income members lack access to a computer, the internet, or other videoconferencing technology. About a third of GBM's members are senior citizens and about one fifth of all GBM members live alone. Of those members, many are Black, Latinx, disabled, or low-income registered voters who are staying home because they are at a higher risk of death or serious illness from COVID-19 due to age or preexisting medical conditions, like diabetes or hypertension.

10.    For example, one member is 44 years old and has high blood pressure. She has been taking care of her two grandkids who have asthma since mid-March, because her daughter has to continue working. She is staying at home unless absolutely necessary. She does the grocery shopping for her grandkids, and for her homebound uncle and mother, who are in the at-risk age group and currently living together. She limits her grocery visits to one big trip about every other week. She uses a mask, gloves, and hand sanitizer. She is already concerned about having to go to the grocery store, and does not feel comfortable going to additional group settings unless absolutely necessary. She is interested in curbside voting to minimize her exposure to other people for the health of herself and her family.

11.    Another member is 65 years old and lives only with her husband. She is very concerned about contracting COVID-19, and has been staying at home except for necessary trips like the grocery store. Although she is a devoted church-goer and teaches Sunday school, she stopped going to church, the gym, and other group settings about two weeks before the Governor's stay at home order was issued. She is interested in voting absentee, but she cannot get a second witness signature without coming into contact with someone outside of her household. She is

interested in the option of "drive thru" voting in order to minimize contact with others.

12.     Without the relief requested, these members will have to choose between risking their lives or not voting in the upcoming August 25 and November 3, 2020 elections. In addition, without court intervention, GBM will be unable to undertake activities that are central to achieving its mission and to ensuring the dignity and political participation of vulnerable people.

I swear under penalty of perjury that the forgoing is true and correct. Executed on this day the 12th of May, 2020.

_____

Scott Douglas III

# EXHIBIT 58

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

PEOPLE FIRST OF ALABAMA, et al.,

   Plaintiffs,

  v.

JOHN MERRILL, et al.,

   Defendants.

Case No.: 2:20-cv-00619-AKK

## DECLARATION OF BENARD SIMELTON

Pursuant to 28 U.S.C. § 1746, I declare that the following is true and correct to the best of my knowledge:

1. My name is Benard Simelton and I am the President of the Alabama State Conference of the NAACP ("Alabama NAACP"). The Alabama NAACP is a Plaintiff in this matter.

2. The Alabama NAACP is a non-profit and non-partisan organization and a state conference of the National Association for the Advancement of Colored People. The Alabama NAACP was founded in 1913 and is the oldest civil rights organizations in the State. The Alabama NAACP works to ensure the political, educational, social, and economic equality of African Americans, other minorities, and all residents of Alabama. We are committed to the removal of all discriminatory barriers to the democratic process, and the full enforcement of federal laws securing the right to vote.

3. The Alabama NAACP fulfills its mission by seeking to increase voter registration and voter turnout, engaging in voter registration and "get-out-the-vote" drives, and publicly

advocating to address the adverse effects of racial discrimination in voting and to seek its elimination.

4.      I have served as the President of the Alabama NAACP since October 2009. During my time as President, I have overseen the Alabama NAACP's voter registration, voter education and voter mobilization efforts.

5.      As a non-profit organization, the Alabama NAACP raises money from private donors and membership fees. The Alabama NAACP has no paid staff and relies entirely on the assistance of volunteers, such as myself, to meet its goals. As a result, the Alabama NAACP's monetary, personnel and time resources are very limited.

6.      Although the "Witness Requirement," which requires a voter to have a notary or two witnesses sign their absentee ballot affidavit,  and the prohibition on curbside voting (together, the "Challenged Provisions") already presented barriers to voting, those barriers have become exponentially worse in light of the COVID-19 pandemic. The Alabama NAACP has had to expend greater time and resources addressing these Challenged Provisions, such as (1) assessing who, among its members and constituency will be unable to comply with the Witness Requirement, while taking protective measures against COVID-19 infection, like staying home; (2) increasing efforts to educate Black and disabled voters, as well as the general public, about the Witness Requirement; and (3) advocating for the adoption of measures like curbside voting that would ease the burdens on in person voters amid the pandemic. For example, the Alabama NAACP has contacted the Alabama Secretary of State to raise our concerns regarding burdens to safely casting a ballot in the July 14 primary runoff and other 2020 elections, including concerns regarding the lack of curbside or "drive thru" voting. In absence of the Challenged Provisions, the Alabama NAACP would not have had to engage in these activities.

7.      This diversion of our resources, time, and efforts impairs our ability to conduct our traditional voter education and voter mobilization efforts, such as registration and "get-out-the-vote" drives. Having to address the Challenged Provisions limits our ability to fulfill our broader mission of expanding political, social, and economic opportunities for African Americans.

8.      Moreover, there is documented evidence that Black Alabamians continue to face higher rates of infection and death from COVID-19 due to disparities in access to healthcare and other forms of structural inequality. Unnecessary interactions with other people—whether a notary, a witness, or poll workers and other voters at polling sites—will exacerbate the health risks already posed by COVID-19 to Alabama's African-American community members.

9.      Many of the Alabama NAACP members are African American citizens and registered voters who will be directly impacted by the Challenge Provisions. In addition, many Alabama NAACP members are considered at high risk for serious illness or dying from COVID-19 due to their advanced age (above 65) or underlying health conditions (such as diabetes or hypertension). These members and others are staying at home and engaging in strict social isolation to avoid contracting COVID-19. For example, one of our members and a president of a local NAACP chapter is in their 80s, lives alone, and has both heart disease and breast cancer. This member is extremely vulnerable to COVID-19. Additionally, this member does not have ready access to videoconferencing technology. Therefore, for this individual and other vulnerable members, complying with the Witness Requirement would require unsafe exposure to people outside of their household, contrary to public health guidance. Moreover, because of the prohibition on curbside voting, this member—and other Alabama NAACP members—do not have a safe option for voting in person. It is paramount that Alabama NAACP members continue to have safe options for voting in person, like curbside voting. This is especially true of Latino

members who may require language assistance or older voters who may need assistance reading or filling out the ballot, due to limited literacy or other concerns. Those members who cannot satisfy the Witness Requirement or who need assistance from poll workers will need to vote in person. Unfortunately, the Challenged Provisions force these members to make a choice between protecting their health and exercising their right to vote.

10.     If these Challenged Provisions remain in place, our members will not be able to access their full rights, and our organization's mission to ensure the equal representation of our members and communities in this July's primary runoff and other 2020 elections will be and all 2020 elections will be irreparably harmed.

Dated: May 7, 2020

Benard Simelton

4