FILED
2020 May-22  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| PEOPLE FIRST OF ALABAMA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No.: |
| v. | ) | 2:20-cv-00619-AKK |
| | ) | |
| JOHN H. MERRILL, in his official | ) | |
| capacity as the Alabama Secretary of | ) | |
| State, et al. | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF CLAY S. HELMS

My name is  Clay S. Helms.   I am the Deputy Chief of Staff and the Director of Elections for the Alabama Secretary of State's Office.  I am over the age of 19 and the facts I have set out below are based upon my personal knowledge, the records of the Alabama Secretary of State's Office maintained in the ordinary course governmental business, or documents issued to the public by Alabama governmental agencies.

1.  The Secretary of State is Alabama's Chief Election Officer "and shall provide uniform guidance for election activities," Ala. Code § 17-1-3, but Probate Judges are the chief elections officials of their counties.  The Secretary of State does not have supervisory authority over Probate Judges who are

separately elected.    The Secretary of State can only advise Probate Judges and their staffs regarding the running of elections.

2.    Probate Judges are directly responsible for the conduct of federal, State, and county elections.    They manage in-person voting, including, within the parameters of State law, designating the number and location of polling places (in conjunction with the County Commissions). They ensure polling places meet legal standards (such as the American with Disabilities Act), arrange staffing of polling places, furnish voting tabulators, furnish ballots, and take other steps to ensure an orderly and legal election.    Probate Judges are responsible for training and oversight of local poll workers.

3.    Absentee Election Managers ("AEMs"), conduct or oversee the absentee ballot process.    That is, they receive absentee ballot applications, send out absentee ballots, receive absentee ballots, and count (in conjunction with other local officials) returned absentee ballots.    The Secretary of State provides training for AEMs but does not oversee, appoint, or supervise them.    Further, he does not compensate the AEMs or have the authority to remove an AEM from office.    There is a federal relief statute related to COVID-19 that provides funds to States that could be used for limited compensation and additional expenses related to the state of emergency.    The Circuit Clerks, who are separately elected officials, have the option to be the AEMs for their counties,

if they are not in a contested election that year. When Circuit Clerks are ineligible or unwilling to serve as AEMs, someone else is appointed to the position. The Secretary does not make that appointment.

4. The Secretary of State has no role in the conduct of municipal elections. The Secretary does provide limited training to town clerks acting as Absentee Election Managers and the Secretary receives PAC filings.

5. On March 2, 2020, the Alabama Department of Public Health issued a press release that stated in part: "ADPH has monitored more than 100 people returning from China and there are no positive cases of COVID-19." Attachment 1, available at https://www.alabamapublichealth.gov/news/2020/03/02.html.

6. On March 3, 2020, Alabama held its federal, State, and county elections, including the presidential primary election, under the usual laws and regulations, essentially without incident. Attachments 2 and 3. Available at: https://www.sos.alabama.gov/index.php/newsroom/secretary-states-office-provides-election-night-reporting-super-tuesday-election (March 3 press release) and https://www.sos.alabama.gov/index.php/newsroom/alabama-secretary-state-issues-response-coronavirus-preparation (March 11 press release). The Secretary announced that there had been a record turnout for a primary election. Attachment 3.

7.  On Friday, March 6, 2020, the Department of Public Health formed a coronavirus task force at the direction of the Governor. *See e.g.* https://www.wtok.com/content/news/Ivey-establishes-Coronavirus-Task-Force-568560511.html (visited May 13, 2020).  Governor Ivey was quoted in the media as saying: "While there are no known cases in Alabama, I have gathered the experts in an effort to be as prepared as possible should the coronavirus affect Alabama,…"  She went on to say "The safety of Alabamians is paramount, and we will do everything we can to limit exposure to this illness." *Id.*

8.  Under Alabama law, a primary election may only be won by a majority vote. If the leading candidate has less than a majority, then the top two candidates meet in a primary runoff election to be held four weeks after the primary election.  Ala. Code § 17-13-18; *see also* Ala. Code § 17-13-3.  Thus, after the March 3 primary election, a statewide primary runoff election was expected to be held on March 31, 2020 for several offices, including a U.S. Senate seat and a State Court of Criminal Appeals seat.  Primary runoff elections are also needed in Congressional Districts 1 and 2 and for other offices.

9.  Voting for the primary runoff election commenced immediately for UOCAVA (Uniformed and Overseas Citizens Absentee Voting Act) voters

4

who had voted ranked absentee ballots in the March 3, 2020 primary election.

Thus, the primary runoff election has been ongoing since that date.

10. Ballot printing, both in-person as well as absentee, commenced shortly thereafter as directed by the various Probate Judges. Absentee ballots for primary runoff elections are ordinarily printed within days following the primary election.

11. On March 11, 2020, the Secretary of State's Office issued a press release responding to a March 10 columnist's piece which was titled "Election Day epidemic? Alabama has no plan." The Secretary's release read in part:

> In Alabama, our Legislature has already provided a mechanism to confront situations of detriment to the state. Our Governor has broad and expanse emergency powers. Understanding Governor Ivey's concern and care for the people of Alabama, I am confident that, if deemed necessary, the Governor would consult with our office to ensure the March 31 Runoff Election runs smoothly and without issue.

Attachment 3 at 2.

12. On Friday, March 13, 2020, the Secretary sent a letter to all 67 Probate Judges in which he noted that there had been no reported COVID-19 cases in Alabama but that "[t]he Office of the Secretary of State will continue to monitor the situation and will provide additional guidance, if necessary." (Attachment 4). The letter suggested the Probate Judges consider alternate polling places "in the case an area becomes of concern to you or citizens of

your county," recruiting backup poll workers and the use of student poll worker interns. *Id.*   The letter suggested steps to maintain a safe and sanitary polling place, including frequently wiping down voting machines and equipment with alcohol wipes, providing hand sanitizer at the entrance and exits of polling places, disinfecting voting and registration tables, and providing gloves for poll workers. *Id.*

13. Later that day, following the first reported case of COVID-19 in the State, an individual at Maxwell-Gunter Air Force Base who had returned to the State from Illinois and was being treated (*see* e.g. https://www.wbrc.com/2020/03/13/alabamas-st-confirmed-coronavirus-case-was-civilian-employee-maxwell-air-force-base-montgomery/), the Secretary issued a press release stating that "As of today, the administration of the election will continue as planned," Attachment 5, available at https://www.sos.alabama.gov/newsroom/secretary-merrill-issues-update-march-31-runoff-election.

14. Later that day, Governor Ivey declared a State of Emergency after two confirmed cases, one in Montgomery County and one in Jefferson County, had been reported by the Alabama Department of Public Health.  Attachment 6, available at https://governor.alabama.gov/newsroom/2020/03/state-of-emergency-coronavirus-covid-19/.

15. The Secretary immediately issued a second press release, Attachment 7, which contained a link to the Governor's proclamation (Attachment 6), available at https://www.sos.alabama.gov/index.php/newsroom/governor-kay-ivey-issues-state-emergency.

16. At 5:19 p.m. the Secretary's Deputy Secretary of State and Chief of Staff sent a blast e-mail to County Commissioners and Probate Judges requesting that members of the Boards of Registrars and Absentee Election Managers to be provided access to any courthouses that are closed or would be closed so that necessary election deadlines could be met. Attachment 8. While the Secretary hopes that all County Commissioners and Probate Judges will comply with these requests, the Secretary has no authority to require them to do so. As of the date of this declaration, 24 county courthouses have been reopened.

17. On Saturday March 14, 2020, the Secretary's Deputy Secretary of State and Chief of Staff, responding to questions, sent a blast e-mail to Probate Judges regarding the number and types of poll workers required for each precinct. Attachment 9.

18. By Sunday, March 15, 2020, the Secretary had concluded that the March 31, 2020 primary runoff election should be postponed. He requested an emergency opinion from the Alabama Attorney General asking if the Governor has the power to postpone an election and stating that the election

should be postponed. Attachment 10.  The Secretary also issued a press release notifying the public of the request.  Attachment 11, available at: https://www.sos.alabama.gov/newsroom/secretary-state-requests-emergency-opinion-attorney-generals-office-postpone-runoff.

19. On March 17, 2020, the Attorney General issued an official opinion which concluded that the Secretary of State has the power to certify the results of a primary election (runoff) that had been postponed and rescheduled by the Governor pursuant to the Alabama Emergency Management Act of 1955. Attachment 12, available at https://www.alabamaag.gov/Documents/opin/Merrill%20Opinion%200001.pdf.

20. On Wednesday, March 18, 2020, the Governor, Secretary of State, and Attorney General held a joint press conference and announced that the March 31, 2020 primary runoff election was being postponed until July 14, 2020 under the Governor's emergency powers.  The event was covered live by media and both the Governor and the Secretary issued press releases. The Secretary issued two press releases, the first press release, Attachment 13, available at: https://www.sos.alabama.gov/newsroom/march-31-runoff-election-postponed-until-july-14, and the second, Attachment 14, available at https://www.sos.alabama.gov/index.php/newsroom/governor-ivey-issues-

supplemental-state-emergency. The second was issued after the Governor

issued her first supplemental state of emergency proclamation and contained

a link to the Governor's Proclamation, Attachment 15, available at

https://governor.alabama.gov/newsroom/2020/03/supplemental-state-of-

emergency-coronavirus-covid-19/.

21.   On that same day, March 18, 2020, the Secretary filed Emergency Rule 820-

2-3-.06.01ER which provided in part:

> ...due to the State of Emergency issued by the Governor
> on March 13, 2020, as amended on March 18, 2020, as
> well as the National Emergency declared by the President
> of the United States on March 13, 2020 related to the 2019
> Novel Coronavirus known as COVID-19, any qualified
> voter who determines it is impossible or unreasonable to
> vote at their voting place for the Primary Runoff Election
> of 2020 due to the declared states of emergency, shall be
> eligible to check the box on the absentee ballot application
> which reads as follows:
>
> "I have a physical illness or infirmity which prevents my
> attendance at the polls. [ID REQUIRED]"

Attachment           16           at           2,           available           at

https://www.sos.alabama.gov/sites/default/files/SOS%20Emergency%20Ru

le%20820-2-3-.06-.01ER.pdf; also available on the Public Health website at

http://alabamapublichealth.gov/legal/assets/order-secretarystate-

031820.pdf.  The Alabama Department of Public Health has links to all State

COVID-19 related actions by State agencies on its website at https://alabamapublichealth.gov/legal/orders.html.

22. Emergency Rule 820-2-3-.06.01ER also directed Absentee Election Managers and other election personnel to accept absentee ballot applications accordingly. Attachment 16 at 2.

23. Moving the primary runoff election from March 31 to July 14 added 3½ months to the gap between the primary election and the primary runoff election. Since ballots were already printed (or in process) the amount of time ordinarily available for absentee voters to obtain, complete, and return their absentee ballots to their Absentee Election Managers more than tripled.

24. On March 23, 2020, the Secretary issued two press releases, the first, Attachment 17, available at https://www.sos.alabama.gov/newsroom/secretary-state-shares-guidance-absentee-voting-upcoming-july-14-primary-runoff-election, informed voters how to obtain and vote an absentee ballot after the issuance of Emergency Rule 820-2-3-.06.01ER. The second, Attachment 18, available at https://www.sos.alabama.gov/index.php/newsroom/governor-ivey-issues-supplemental-state-emergency-0, stated that the Governor had issued a Supplemental State of Emergency and contained a link to the Governor's Proclamation.

25. On March 26, 2020, the Secretary issued a press release, Attachment 19, available at https://www.sos.alabama.gov/index.php/newsroom/governor-ivey-issues-state-emergency-related-education, stating that the Governor had issued a Supplemental State of Emergency. The press release contained a link to the Governor's Proclamation, Attachment 20, available at https://governor.alabama.gov/assets/2020/03/4th-Supplemental-State-of-Emergency-COVID-19.pdf. That Proclamation authorized notaries who either attorneys or operating under the supervision of a licensed attorney to notarize signatures and confirm the signatures of witnesses *via* videoconferencing. *Id*. at 1-2.

26. On March 30, 2020, the Secretary's Supervisor of Voter Registration sent a blast e-mail to all county Boards of Registrars in which he stated:

> We are aware that several courthouses may be closed or have amended hours of operation right now. As mentioned in earlier messages, the work of the registrars' office will continue as usual. This includes issuing photo IDs. The issuance of photo IDs must continue during this time, regardless of the courthouse being open or not. If a qualified voter needs a photo ID, then you should issue the photo ID. If our courthouse is closed, please make an appointment with the individual in need of the ID and escort them into the building.

Attachment 21.

27. Since the declaration of the state of emergency, the Secretary has received no complaints regarding an individual being unable to obtain photo ID for the upcoming elections.

28. On March 31, 2020, the Secretary issued a press release reminding voters that there were 100 days left to apply for an absentee ballot for the July 14, 2020 primary runoff election. Attachment 22, available at https://www.sos.alabama.gov/index.php/newsroom/100-days-left-apply-absentee-ballot-primary-runoff-election. The press release contains a link to download an absentee ballot application, a link to each county's Absentee Election Manager contact information, a reminder about the option to vote absentee if the voter determines it is impossible or unreasonable to vote at their polling place, various absentee deadlines, as well as a link to the CDC website for coronavirus information.

29. Since that time, the Secretary has issued regular press releases reminding voters of the remaining time to cast their absentee ballots. Attachments 22, 29, 32, 33, 36, 43, and 45. Each of these press releases contains a link to download an absentee ballot application and a link to each county's Absentee Election Manager contact information:

12

| Date | Days Remaining | Link to Press Release | Attachment No. |
|---|---|---|---|
| March 31 | 100 | https://www.sos.alabama.gov/newsroom/100-days-left-apply-absentee-ballot-primary-runoff-election | 22 |
| April 7 | 93 | https://www.sos.alabama.gov/newsroom/93-days-left-apply-absentee-ballot-primary-runoff-election | 29 |
| April 14 | 86 | https://www.sos.alabama.gov/newsroom/86-days-left-apply-absentee-ballot-primary-runoff-election | 32 |
| April 21 | 79 | https://www.sos.alabama.gov/newsroom/79-days-left-apply-absentee-ballot-primary-runoff-election | 33 |
| April 28 | 72 | https://www.sos.alabama.gov/newsroom/72-days-left-apply-absentee-ballot-primary-runoff-election | 36 |
| May 12 | 58 | https://www.sos.alabama.gov/newsroom/58-days-left-apply-absentee-ballot-primary-runoff-election | 43 |
| May 19 | 51 | https://www.sos.alabama.gov/newsroom/51-days-left-apply-absentee-ballot-primary-runoff-election | 45 |

30. On April 2, 2020, the Secretary issued a press release following the Governor's fifth Supplemental State of Emergency Proclamation. The press release, Attachment 23, available at https://www.sos.alabama.gov/newsroom/governor-ivey-issues-supplemental-state-emergency-1, contained a link to the Governor's Proclamation, Attachment 24, available at https://governor.alabama.gov/newsroom/2020/04/fifth-supplemental-state-

of-emergency-coronavirus-covid-19/. The Proclamation, among other things, expanded videoconferencing to notaries and required detailed recordkeeping requirements for such notarizations (but confirmed the validity of any notarizations performed under the previous proclamation). Attachment 24 at 4.

31.   The next day, Friday, April 3, 2020, the Secretary issued two press releases. The first, Attachment 25, available at https://www.sos.alabama.gov/newsroom/update-governors-state-emergency-and-state-health-officers-order informed the public about the Proclamation (which protected against evictions and was not related to voting), contained a link to the Proclamation and a link to the State Health Officer's stay at home order, Attachment 26, available at https://governor.alabama.gov/assets/2020/04/Final-Statewide-Order-4.3.2020.pdf The second press release headlined the State Health Officer's stay at home order and contained a link to that order. Attachment 27, available at https://www.sos.alabama.gov/newsroom/state-health-officer-dr-scott-harris-issues-stay-home-order.

32.   On Saturday, April 4, 2020, the Secretary issued a press release reminding the public that the State Health Officer's stay at home order became effective at 5:00 p.m. that day and containing a link to the stay at home order. Attachment

14

28, available at https://www.sos.alabama.gov/newsroom/stay-home-order-state-health-officer-becomes-effective-today-500-pm.

33.   On Sunday, April 12, 2020, the Secretary issued a press release, Attachment 30, available at https://www.sos.alabama.gov/newsroom/governor-ivey-issues-state-emergency, with a link to the Governor's Proclamation regarding the probability of severe weather throughout the state and its potential impact on COVID-019 responses, Attachment 31, available at https://mcusercontent.com/081f770fdd6b6261cca397fa5/files/221b74bf-7f19-403f-9337-07c13ad3c035/SOE_4.12.2020.pdf.

34.   On April 22, 2020, the Secretary issued a press release, Attachment 34, available at https://www.sos.alabama.gov/newsroom/alabama-counties-are-now-able-apply-covid-19-related-election-expense-reimbursement, in which he reported the availability of additional funding for the July 14 primary runoff election.  The press release stated:

> In order to keep polling places safe and sanitary, the Office of the Secretary of State intends to reimburse counties for various preparation and election expenses including, but not limited to, masks, gloves, disinfectant spray, hand sanitizer, alcohol wipes and professional cleaning services to return the polling places back to their sanitary pre-election condition.

Attachment 34 at 1. The Secretary has developed a PowerPoint presentation about CARES Act reimbursement for such expenses.  Attachment 39.

35.  On April 22, 2020, a representative   of the Alabama Probate Judges
     Association sent the Secretary's General Counsel an e-mail requesting an
     expedited response to an April 17th e-mail in which it was suggested that the
     Governor reduce the number of polling places and create "voting centers"   or
     "super polls" to address an anticipated shortage of poll workers. Attachment
     35.   Alabama has 2,267 precincts and 1,980 polling places as of March 3,
     2020.  Attachment 46.

36.  On May 4, 2020, Mobile County Probate Judge Don Davis sent the Secretary
     a letter in which he expressed concerns about the number of poll workers
     available for the July 14 primary runoff election and the adequacy of the
     scheduled polling places. Attachment 37.

37.  On May 5, 2020, the Secretary launched a multi-media campaign to educate
     voters about ways that they can participate in the July 14, 2020 primary runoff
     election.  The campaign issued a press release, Attachment 38, available at
     https://www.sos.alabama.gov/newsroom/how-apply-absentee-ballot-july-14-
     2020-primary-runoff-election, which included a link to a video on how to
     apply for an absentee ballot, https://www.youtube.com/watch?v=8xxwlwV-
     4fE&t=13s, as well as a link to download an absentee ballot application
     https://www.sos.alabama.gov/alabama-votes/voter/absentee-voting.

38. On May 8, 2020, the Secretary issued a press release, Attachment 40, available at https://www.sos.alabama.gov/newsroom/governor-ivey-shares-new-information-runoff-election-businesses-and-more, stating that the Governor had issued two Supplemental Proclamations, the first of which (the Eighth Supplemental Proclamation), Attachment 41, available at https://governor.alabama.gov/assets/2020/05/2020-05-08-8th-Supplemental-SOE-COVID-19.pdf, began the process of reopening the State. The second May 8th Proclamation (the Ninth Supplemental Proclamation), Attachment 42, available at https://governor.alabama.gov/assets/2020/05/2020-05-08-9th-Supplemental-SOE-COVID-19.pdf, addressed the July 14, 2020 primary runoff election. That Proclamation, among other things, allows for Probate Judges to reduce the number of poll workers running the election (so long as the number is adequate) and to educate poll workers via online video or recorded telephone call. Attachment 42 at 1-2. The Proclamation does not allow for reducing the number of polling places. *Id.*

39. On May 14, 2020, the Secretary sent a letter to all AEMs explaining the absentee voting modification made by Emergency Rule 820-2-3-.06-.01ER. Attachment 44 (without enclosures).

40. As of the present date, the Secretary's Office is continuing to monitor the situation and intends to take action regarding COVID-19 and the July 14, 2020

primary runoff election as the Secretary, in his discretion, deems appropriate and, when prudent, in consultation with other election officials and with the Governor's Office.

**The Absentee Voting Process**

41. If a voter wishes to vote absentee in the July 14, 2020 primary runoff election because the voter is concerned about COVID-19, the voter must do the following:

    a. Request an absentee ballot using an acceptable photo ID or be exempt from the photo ID requirement.  There are multiple reasons why one would be eligible to vote absentee, and two of them concern health.  The two health boxes on the form are:

    ☐ I have a physical illness or infirmity which prevents my attendance at the polls. *[ID Required]*

    ☐ *I have a physical illness or infirmity which prevents my attendance at the polls. I am unable to access my assigned polling place due to a neurological, musculoskeletal, respiratory (including speech organs), cardiovascular, or other life-altering disorder that affects my ability to perform manual tasks, stand for any length of time, walk unassisted, see, hear or speak and:

        a)   I am an elderly voter aged 65 or older; or

        b)   I am a voter with a disability.

        *[ID Not Required]*

    If the voter checks the first box and mails in the application without a photo ID before eight days before the election, the AEM is to contact the voter and notify him or her of the deficiency.  If the application occurs closer to the election than that, he or she will be mailed a **provisional ballot** (*i.e.,* the ballot envelope will have "provisional" on it) and the voter, will then have until close of business on the Friday after the election to cure

the defect by furnishing the Board of Registrars or the AEM with proof of photo ID). If the voter checks the second box, he or she will be mailed an absentee ballot irrespective of whether a photo ID has been enclosed with the application. The provisional and absentee ballots are identical; it is the envelope that designates the ballot as provisional.

b. Once the voter receives the absentee ballot, he/she votes the ballot and inserts the voted ballot into the secrecy envelope.

c. The voter then seals the secrecy envelope (containing the voted ballot), marks the reason for voting absentee by checking the appropriate box on the envelope. Because of the COVID-19 state of emergency, a voter may permissibly check the first box displayed above for the July 14, 2020 primary runoff election if he or she is voting absentee because of a fear of contracting the virus at the polls. This is because of the Secretary's issuance of Emergency Rule 820-2-3-.06.01ER (Attachment 16).

d. The voter next inserts the secrecy envelope into the witness envelope and voter then obtains the signature of either a notary or the signatures of two witnesses.

   i. Under the Governor's Fourth and Fifth Supplemental Emergency Proclamations (Attachments 20 and 24), the notary does not have to be physically present and may witness the signature by video

conferencing, but the notary must personally sign the witness envelope.

    ii.  If two witnesses are used, there are many options available to the voter.  Witnesses may be anyone over the age of 18, and so might be, among others, a family member, spouse, roommate, friend, neighbor, caregiver, clergyman, mail delivery person, grocery or food delivery person, police officer or sheriff's deputy, or medical professional.  They may safely witness the voter's signature by multiple ways such as watching from a safe distance or even through a window of a building or vehicle.

e.  The voter then places the witness envelope into a third envelope (the mailing envelope) and transmits or delivers the completed absentee ballot to the Absentee Election Manager.  Transmission/delivery must be by U.S. mail or commercial carrier (*e.g.* FedEX, UPS, DHL, etc.) or in person by the voter.  This is an election security/integrity matter.

f.  The AEM maintains the absentee ballots until they are counted/rejected on Election Day by the canvassing board.

42.  At present, the Secretary does not see a need to extend the hours for counting absentee ballots because he has not been advised by AEMs of an inordinate number of absentee ballots received and his experience is that primary runoff

elections have substantially lower turnout, both in-person and absentee, than primary elections.  As the primary runoff election nears, the Secretary will continue to monitor the situation and advise the Governor if additional steps need to be taken.

**Why Curbside Voting Cannot Work**

43. The Plaintiffs have essentially stated that the Secretary told Hale County officials that curbside voting is illegal.  That is not quite correct.  What did happen is that on at least two occasions (one in Hale County), the Secretary's office became aware on election day that local officials were conducting in-person voting in the parking lot in a way that does not legally comply with Alabama laws concerning election integrity measures including the voter personally signing the poll list, ballot secrecy, and ballot placement in tabulation machines.  Alabama law requires voters to themselves place their voted ballot into the tabulation machine.  Alabama law provides that "[t]he ballot of every voter shall be kept secret and inviolate." Ala. Code § 17-13-10.  It is unacceptable for poll workers to sign poll books for voters.  It is unacceptable for poll workers to handle an individual's voted ballot.  The Secretary contacted the counties in question and advised them that they were conducting an election in violation of State law.

44. Alabama law is silent on whether in-car-in-person voting is specifically prohibited. The Secretary does not have the power to set polling places or to require Probate Judges to conduct in-car-in-person voting. Moreover, implementation of "curbside" voting would be completely unfeasible for the July 14, 2020 primary runoff election or any 2020 election.

45. To legally cast an in-person ballot in Alabama, the voter must successfully do the following:

   a. Provide photo ID to an election worker and sign the poll book using a pen provided by an election worker. Alabama law requires a singular numbered poll list. While the list may be split alphabetically to allow for multiple processing (for example, Line 1 could be designated for voters whose last names begin with A-M with a second line, line 2, for voters whose last names begin with N-Z), the list cannot be otherwise segmented for election integrity and contest purposes.

   b. Receive the ballot and pen;

   c. Vote the ballot using that pen;

   d. Take the voted ballot and place it in the tabulation machine which is done by the voter to ensure ballot secrecy.

46. To create a voting station in a parking lot (assuming that such is even permissible) would require:

a. Either the use of e-poll books (which are currently in use in 35 of the 67 counties) or disrupting the voting in the building by removal of the poll list to the parking lot for in-car voters and then return it to the building for traditional in-person voters.

b. Additional e-poll books at a cost of (excluding maintenance contract costs) between $850 to $1200 each. To add one e-poll book to each polling place would cost over 1.6 million dollars.

c. Additional tabulation machines for the in-car voters to put their voted ballots in to preserve the secrecy of their ballots. Tabulation machines (excluding maintenance contract costs) cost over $5,000 each. To add one tabulation machine to only half of the polling places (assuming that the in-building could get by with one fewer machine without causing waiting lines at the remaining machine(s), would cost nearly 5 million dollars.

d. Additional poll workers to staff what would be additional voting stations. Someone would have to interact with the in-car voters and watch the tabulation machines.

47.   There will likely be other problems including the issue of privacy where a car may contain multiple voters, some parking areas may interfere with candidates who wish to campaign and must remain 30 feet from the polling place, whether a polling place can accommodate both in-building parking and

in-car voting traffic, and whether lines of cars will intrude into highway traffic.

48. Given that there are, as of March 3, 2020, 2267 precincts and 1980 polling places in Alabama in a statewide election (Attachment 46), there are nowhere near enough tabulation machines in the State to provide for in-car voting at every polling place.

49. There have been some concerns expressed by Probate Judges about poll workers availability for a standard primary runoff election. Creating additional voting stations at polling places would require even more poll workers, and with little time left to recruit and train them. Nor could in-building polling places be abolished because not every in-person voter drives a car to the polling place.

50. In addition, it is unknown what, if any, specialized or additional training that Probate Judges would have to implement to efficiently conduct in-car voting.

51. Even if in-car voting were feasible from an implementation standpoint, and even if the Secretary had the authority to order it be implemented, the Secretary would not, in his discretion, order it because it would not seem a prudent way to reduce the COVID-19 risk. The in-car voter would still have to interact with poll workers (who are interacting with other voters) as well as use pens (or, in case of e-books, styluses) and voting materials (such as e-

books) that have already been handled by other people.   There is no reason to believe that sanitation procedures within the polling place would be any less effective than what would occur in the parking lot.

**Notification of Voting Changes**

52. As noted earlier, the **July 14, 2020 election** is ongoing.

53. Notifying voters by any means other than what have already been undertaken would be **quite expensive**.  For example, a 2017 postcard mailing to every registered voter cost just under $890,000.00.  The Secretary's Office has also calculated the cost of **mailing every registered voter an absentee ballot with** return postage and that cost is over $5,000,000.00.

Pursuant to 28 U.S.C.  § 1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 22, 2020.

Clay S. Helms
Deputy Chief of Staff
Director of Elections

About Us (../../../about/index.html)  |  Careers (../../../employment/index.html)  |
Help/FAQ (../../../about/faq.html)  |  Login (../../../about/login.html)

(../../../index.html)

(http://www.facebook.com/alabamapublichealth)
(http://instagram.com/alabamapublichealth)     (http://www.pinterest.com/alpublichealth)
(http://twitter.com/alpublichealth)     (http://www.youtube.com/alabamapublichealth)

Search ADPH          ADPH Home (../../../index.html) |
                     Download Adobe Reader
                     (http://get.adobe.com/reader)



Home (../../../index.html) / News (../../../index.html) / 2020 (../index.html) / Alabama is prepared for COVID-19;
supports CDC recommendations for returning travelers

**Alabama is prepared for COVID-19; supports CDC recommendations for returning travelers**

**FOR IMMEDIATE RELEASE**

CONTACT: Burnestine Taylor, M.D.
(334) 206-5100

CONTACT: Karen Landers, M.D.
(256) 383-1231

Since mid-January, the Alabama Department of Public Health (ADPH) has worked with the Centers for
Disease Control and Prevention (CDC) to learn, prepare and provide the most up-to-date information about
the new coronavirus that causes COVID-19. Travelers, including college students, business travelers,
tourists and airline employees, are returning to Alabama from countries where the disease is widespread.
ADPH has monitored more than 100 people returning from China and there are no positive cases of
COVID-19.

As a clearer picture is emerging, ADPH advises the general public that the best way to avoid infection is to
wash your hands frequently, avoid touching your face, cover coughs and sneezes, stay home when you
are ill, and practice social distancing strategies such as staying 6 feet apart from other individuals. Flu
shots are recommended for those who have not had one this season to allow for earlier identification and
limit confusion as to whether COVID-19 or the flu. This will also hopefully free up resources for use if a
COVID-19 outbreak occurs.

In addition, ADPH is asking that all universities and colleges implement their plans to mitigate and control
the spread of disease on their campuses. The CDC has recommended that institutions of higher education
consider postponing or cancelling upcoming student foreign exchange programs and is asking current
program participants to return to their home country.

All persons returning from Level 3 or Level 2 countries with active community transmission

Attachment 1

(www.cdc.gov/coronavirus/2019-ncov/travelers/index.html (https://www.cdc.gov/coronavirus/2019-ncov/travelers/index.html)) may have been exposed to COVID-19 and are asked to self-monitor for 14 days after leaving the affected area. ADPH will be providing materials with specific instructions on self-monitoring and practicing social distancing to institutions, companies, and others upon request. In addition, information with instructions on self-monitoring is available for download at alabamapublichealth.gov/infectiousdiseases/assets/cdc-care-booklet.pdf (../../../infectiousdiseases/assets/cdc-care-booklet.pdf).

The ADPH Infectious Diseases & Outbreaks (ID&O) Division can answer general questions about COVID-19, at 334-206-5347 during regular business hours or visit the ADPH website at alabamapublichealth.gov/covid19 (../../../covid19/index.html). ADPH continues to monitor the situation and work with our partners to respond. Persons returning from countries with active community transmission who become sick and physicians are asked to contact ADPH ID&O at 1-800-338-8374.

*County health departments throughout Alabama provide a wide range of confidential and professional services. Contact your local county health department for additional information.*

*Mission: To promote, protect, and improve Alabama's health*

*Vision: Healthy People. Healthy Communities. Healthy Alabama.*

- 30 -

03/02/2020

### ALABAMA DEPARTMENT OF PUBLIC HEALTH
RSA Tower 201 Monroe Street, Suite 910, Montgomery, AL 36104
Phone: (334) 206-5300 | Fax: (334) 206-5520

News/Media Home (../../index.html)

News Releases (../index.html)

Social Media (../../social-media.html)

Notices (../../notices.html)

Events (../../events.html)

State Health Officer (../../sho-message.html)

PSAs (../../psa.html)

Contact Us (../../contact.html)

Publications (../../../publications/index.html)

News Releases (../index.html)

*Preserving and Protecting the Public's Health*

 Alabama Secretary of State 

# Secretary of State's Office Provides Election Night Reporting for Super Tuesday Election

Home  ›  Newsroom  ›  Secretary of State's Office Provides Election Night Reporting for Super Tuesday Election

FOR IMMEDIATE RELEASE

---

Tuesday, March 3, 2020 – Montgomery – The Secretary of State's Office will provide election night reporting for today's Presidential Preference Primary Election and Statewide Primary Election, following the close of polls at 7:00 p.m.

Please visit the Secretary of State's website to view the unofficial county election results.

### ###

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  -  Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993

Attachment 2

ification

 

Alabama Secretary of State

# Alabama Secretary of State Issues Response to Coronavirus Preparation

Home  ›  Newsroom  ›  Alabama Secretary of State Issues Response to Coronavirus Preparation

FOR IMMEDIATE RELEASE

Wednesday, March 11, 2020 – MONTGOMERY – The following statement from Secretary of State John H. Merrill is in direct response to a recent opinion column published by AL.com:

Last week, Alabama witnessed what may yet be another record voter turnout during a Presidential Preference Primary Election, as our state has seen over the last four major elections.

With the severe weather and looming threat of the Coronavirus (COVID-19), more than 33% of all eligible Alabamians still participated in the Super Tuesday election.

Despite all of this, AL.com reporter Kyle Whitmire insists on creating hysteria when there is no need.

State Health Officer Dr. Scott Harris issued a statement on Monday, March 2, the day before the election, confirming what Alabamians already knew: there are no known cases of the Coronavirus in the State of Alabama. As of the writing of this editorial, this remains the case today.

Even after one of his own colleagues at AL.com reiterated this fact (read here), Whitmire repeatedly attempted to sensationalize issues that are not applicable or relevant to the people of Alabama. Rather, Whitmire should be focused on informing

Attachment 3

Alabamians of useful ways they can participate in the electoral process. For example, voters in Alabama can apply for an emergency absentee ballot under certain circumstances we helped to outline in 2019, which made the opportunity available to even more Alabamians.

Whitmire goes on to mention the ways in which other states, who have confirmed cases of the Coronavirus, have reacted to the spread of the virus. It is important to remember that Alabama's elections laws, contrary to Whitmire's assumptions, vary from those in other states because the authority to govern lies with the respective state.

The Office of the Alabama Secretary of State will continue to operate under the parameters of the law, despite what other states across the country are doing or what Kyle Whitmire wants.

In Alabama, our Legislature has already provided a mechanism to confront situations of detriment to the state. Our Governor has broad and expanse emergency powers. Understanding Governor Ivey's concern and care for the people of Alabama, I am confident that, if deemed necessary, the Governor would consult with our office to ensure the March 31 Runoff Election runs smoothly and without issue.

I would also like to add, because Whitmire has seemingly forgotten, several members of the Legislature have attempted year after year to pass legislation allowing for no-excuse absentee voting and early voting – both of which have failed every time. No elected official or journalist should use a potential health concern to advance his or her own political agenda.

Lastly, I would like Mr. Whitmire to know that I am an Eagle Scout and the Boy Scout motto is "Be Prepared," and Alabamians can rest assured knowing that our state is taking all precautions to ensure we are well-prepared ahead of any potential virus.

Our plan for changes in the elections process, if necessary, will be revealed at the appropriate time, and not because a reporter believes he or she should prompt that response. Our intentions are to ensure a safe and secure election and provide accountable results in a manner that is transparent to the people of our state. We will continue to do so as we have consistently done in the past.

In case you missed it, the Governor recently announced the initiation of a task force set to keep Alabamians safe and protected from the Coronavirus, and we greatly appreciate Governor Ivey's leadership on this issue.

Until we are made aware of an issue in the State of Alabama, elections will continue to operate without interference from the mainstream liberal media.

### 

Alabama Directory   -   Online Services   -   Alabama.gov   -   Statements & Policies   -   Feeds   -   Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   -   Phone: (334) 242-7200   -   Fax: (334) 242-4993

ALABAMA STATE CAPITOL
600 DEXTER AVENUE
SUITE S-105
MONTGOMERY, AL 36130



(334) 242-7200
FAX (334) 242-4993
WWW.SOS.ALABAMA.GOV
JOHN.MERRILL@SOS.ALABAMA.GOV

## JOHN H. MERRILL
### SECRETARY OF STATE

March 13, 2020

Dear Probate Judge:

In the nature of being prepared and cautious ahead of any potential virus, I am writing you today to encourage you to take additional preventative measures to ensure the safety of the citizens of Alabama.

Below are some suggested steps to maintain a clean and virus-free polling place:

- Wipe down voting machines and any other equipment available to the public with alcohol wipes frequently throughout the day
- Provide hand-sanitizer at entrance and exit of polling place. Make sure that is available throughout the day
- Clean voting and registration tables with disinfectant spray regularly
- Provide latex-free gloves for poll workers

We appreciate your consideration of the aforementioned steps and any others you may initiate to keep Alabamians safe on Election Day.

At this time, there are no known cases of the Coronavirus (COVID-19) in the State of Alabama. The Office of the Secretary of State will continue to monitor the situation and will provide additional guidance, if necessary.

Additionally, and in conjunction with the county commission, you may want to consider an alternate polling place(s), in the case an area becomes of concern to you or citizens of your county. I would also encourage you to begin recruiting backup poll workers and to activate student poll worker interns to make sure there is adequate help on Election Day.

If you have any questions or concerns, please do not hesitate to contact me on my cell phone at (334) 328-2787.

Sincerely,

John H. Merrill
Alabama Secretary of State

Attachment 4

 

Alabama Secretary of State

# Secretary Merrill Issues Update on March 31 Runoff Election

Home   ›   Newsroom   ›   Secretary Merrill Issues Update on March 31 Runoff Election

FOR IMMEDIATE RELEASE

Friday, March 13, 2020 – MONTGOMERY – This morning, Alabama Department of Public Health (ADPH) Officer Dr. Scott Harris confirmed the first Coronavirus (COVID-19) case in the State of Alabama.

Secretary of State John H. Merrill is confident in the ability of the ADPH to monitor the potential spread of the virus and to treat the case(s) accordingly.

The Office of the Secretary of State has been in close communication with the local election officials in all 67 of Alabama's counties to discuss Election Day preparation and encourage preventative measures to maintain the health and safety of voters.

As of today, the administration of the election will continue as planned.

Any person in our state is able to apply for an absentee ballot through contacting their local Absentee Election Manager. Absentee applications can be downloaded on our website AlabamaVotes.gov.

Voters who are concerned about contracting or spreading an illness or have an infirmity may vote by absentee. The deadline to apply for an absentee ballot is Thursday, March 26, and the last day to postmark or return an absentee ballot by hand is Monday, March 30.

Voters must submit an accompanying copy of their valid photo identification. For the full list of valid forms of photo identification, please visit our website.

Attachment 5

Upon successful application, voters will receive an absentee ballot in the mail.

Contact our office immediately should you have any questions or concerns at (334) 242-7223.

### ###

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  -  Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993



## STATE OF ALABAMA
# PROCLAMATION
## BY THE GOVERNOR

**WHEREAS** the Alabama Emergency Management Act of 1955, as amended, confers upon the Governor the power to proclaim a state of emergency when a public health emergency has occurred or is reasonably anticipated in the immediate future, *see* Ala. Code § 31-9-8;

**WHEREAS** the State Health Officer has reported the appearance of the 2019 novel coronavirus known as COVID-19 in the State of Alabama; and

**WHEREAS** the appearance of COVID-19 in the State indicates the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people;

**NOW, THEREFORE**, I, Kay Ivey, Governor of the State of Alabama, on the recommendation of the State Health Officer and pursuant to relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1 *et seq.*, do hereby declare that a state public health emergency exists in the State of Alabama. I direct the appropriate state agencies to exercise their statutory and regulatory authority to assist the communities and entities affected. I also direct the Alabama Department of Public Health and the Alabama Emergency Management Agency to seek federal assistance as may be available.

**FURTHER**, I hereby proclaim and direct all of the following:

### I. Alternative standards of care

I find that COVID-19 cases could overwhelm the health care facilities and personnel of this State and undermine their ability to deliver patient care in the traditional, normal, and customary manner or using the traditional, normal, and customary standards of care. To that end:

A. Health care facilities that have invoked their emergency operation plans in response to this public health emergency may implement the "alternative standards of care" plans provided therein, and those alternative standards of care are declared to be the state-approved standard of care in health care facilities to be executed by health care professionals and allied professions and occupations providing services in response to this outbreak.

B. These alternative standards of care shall serve as the "standard of care" as defined in section 6-5-542(2), Code of Alabama, for the purposes of section 6-5-540 *et seq.* The "degree of care" owed to patients by licensed, registered, or certified health care professionals for the purposes of section 6-5-484 shall be the same degree of care set forth in the alternative-standards-of-care plans. To the extent that the provisions of section 6-5-540 *et seq.* are inconsistent with this order, those provisions are hereby suspended.

1

C. All health care professionals and assisting personnel executing the alternative-standards-of-care plans in good faith are hereby declared to be "Emergency Management Workers" of the State of Alabama for the purposes of Title 31 of the Code of Alabama.

D. The State Health Officer shall inform members of the public on how to protect themselves and on the actions being taken in response to this public health emergency.

E. Any person suspected or confirmed as having COVID-19 shall obey the instructions given or communicated by the State Health Officer, or his designee, to prevent the spread of disease pursuant to section 22-11A-7, Code of Alabama. Instructions may include, but are not limited to, specific directions to be followed related to necessary self-monitoring, quarantine, and isolation. I direct all relevant state agencies to consult with the State Health Officer and provide all appropriate assistance to assure compliance with such instructions.

## II. Price gouging

In accordance with sections 8-31-1 through 8-31-6 of the Code of Alabama, all persons are hereby placed on notice that it is unlawful for any person within the State of Alabama to impose unconscionable prices (i.e., to engage in "price gouging") for the sale or rental of any commodity or rental facility during the period of a declared state of emergency.

## III. School closures

Any affected school system that is closed as a direct result of its response to COVID-19 and that loses student days or employee days, or both, may appeal to the State Superintendent of Education for relief in fulfilling the local school calendar with respect to student days or employee days, or both, with no loss of income to employees. *See* Ala. Code § 16-13-231(b)(1)c.2.

## IV. State-government office closures

State government offices may be closed at the direction of the Governor. State agency heads will receive instructions from the Governor's Office or the State Personnel Director if closures are authorized.

## V. Waiver of certain federal hours-of-service requirements

Pursuant to 49 C.F.R. § 390.23, this declaration of a state of emergency facilitates a waiver of certain regulations of the U.S. Department of Transportation-Federal Motor Carrier Safety Administration (FMSCA), including 49 C.F.R. Part 395 (Hours of Service for Drivers), as it relates to the provision of emergency-or disaster-related materials, supplies, goods, and services.   This waiver shall terminate at the earliest of (1) the conclusion of the motor carrier's or driver's direct assistance in providing emergency relief; (2) 30 days from the initial declaration of emergency; (3) the issuance of a proclamation terminating this State of Emergency; or (4) any other time dictated by the FMCSA's regulations.  Motor carriers that have an out-of-service order in effect may not take advantage of the relief from regulation that this declaration provides under 49 C.F.R. § 390.23.

FURTHER, I declare that this proclamation and all subsequent orders, laws, rules, or regulations issued pursuant hereto shall remain in full force and effect for the duration of the public health emergency unless rescinded or extended by proclamation.

2



**IN WITNESS WHEREOF,** I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this 13th day of March, 2020.

_____
Kay Ivey
Governor

ATTEST:


_____
John H. Merrill
Secretary of State

 Alabama Secretary of State   

# Governor Kay Ivey Issues State of Emergency

Home  ›  Newsroom  ›  Governor Kay Ivey Issues State of Emergency

FOR IMMEDIATE RELEASE

Friday, March 13, 2020 – MONTGOMERY – Please see the link below for the proclamation from Governor Kay Ivey's Office on the Declaration of a State of Emergency in response to the potential spread of the Coronavirus (COVID-19) in the State of Alabama.

The proclamation can be found here.

Alabama Directory   -   Online Services   -   Alabama.gov    Statements & Policies   -   Feeds   -
Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   -   Phone: (334) 242-7200   -   Fax: (334) 242-4993

Attachment 7

**Brewer, David**

| | |
|---|---|
| **From:** | Brewer, David |
| **Sent:** | Friday, March 13, 2020 5:19 PM |
| **To:** | Brewer, David |
| **Subject:** | County Courthouse & Local Election Officials |

Dear County Commissioners and Probate Judges:

The Secretary of State's Office has received information that several county courthouses have been, or may be, closed due to a determination of the County Commission.  If this is the case in your county, and your offices for your county Board of Registrars and Absentee Election Manager are located in the county courthouse (or courthouse annex) and it is closed, we respectfully ask that you allow the members of the Board of Registrars and Absentee Election Manager to have access to the closed facilities.  There are important deadlines your local election officials must meet to complete their work for the upcoming March 31 Run-off Election.

We greatly appreciate your consideration and assistance with this request.

If you have any questions, please contact me.

Respectfully submitted,

DAVID A. Z. BREWER
Deputy Secretary of State & Chief of Staff
Office of the Honorable John H. Merrill
Secretary of State, State of Alabama
600 Dexter Avenue, Suite S-105
Montgomery, Alabama 36130
(334) 242-7207 Office
(334) 324-6195 Cell



Cc: County Administrators

1

Attachment 8

**Brewer, David**

| | |
|---|---|
| From: | Brewer, David |
| Sent: | Saturday, March 14, 2020 10:51 AM |
| To: | Brewer, David |
| Subject: | Poll Workers |

Dear Probate Judges:

The Secretary of State's Office has received questions regarding the number of poll workers required for each precinct.  We hope the following information will help you if you have the same concern.  Section 17-8, et seq., Ala. Code, prescribes the number and type of poll workers required at each precinct.  While there is no statutory maximum/minimum number of poll workers required to be appointed, from a practical perspective, the size of the polling place may dictate the number, as there are four duties required to be performed. They are:

1) Inspector
2) Registration list clerk
3) Poll list clerk
4) Ballot clerk

Please also check any local laws that may affect your county with your County Attorney to ensure that there are no local variations.

Also, bear in mind that 17-8-14, Ala. Code, now allows student interns (2 per precinct) to perform certain duties (not including determining voter qualification or the operation and maintenance of any voting equipment.)

If you have any questions, please contact the Secretary's General Counsel, Hugh R. Evans, III, at 334.353.7857.

Thank you,

DAVID A. Z. BREWER
Deputy Secretary of State & Chief of Staff
Office of the Honorable John H. Merrill
Secretary of State, State of Alabama
600 Dexter Avenue, Suite S-105
Montgomery, Alabama 36130
(334) 242-7207 Office
(334) 324-6195 Cell

  

1

Attachment 9

ALABAMA STATE CAPITOL
600 DEXTER AVENUE
SUITE S-105
MONTGOMERY, AL 36130



(334) 242-7200
FAX (334) 242-4993
WWW.SOS.ALABAMA.GOV
JOHN.MERRILL@SOS.ALABAMA.GOV

# JOHN H. MERRILL
## SECRETARY OF STATE

March 15, 2020

The Honorable Steve Marshall
Attorney General, State of Alabama
501 Washington Avenue
Montgomery, Alabama 36130-0152

Dear General Marshall:

In accordance with Ala. Code § 36-15-1, and without limitation, and due to a national emergency, declared by the Honorable Donald Trump, President of the United States, and the State of Emergency declared by the Honorable Kay Ivey, Governor of Alabama, as related to the pandemic influenza outbreak of Coronavirus (COVID-19), please accept this request for an emergency opinion from the Office of Attorney General whereby the facts setting forth the nature and character of the question are as follows:

Under the Alabama Emergency Management Act of 1955, the Governor may declare a state of emergency by issuing a proclamation with findings that a "public health emergency has occurred or is reasonably anticipated in the immediate future within this state and that the safety and welfare of the inhabitants of this state require an invocation of" gubernatorial emergency powers. Ala. Code § 31-9-8(a). A state public health emergency includes "[a]n occurrence or imminent threat of an illness or health condition that . . . [i]s believed to be caused by . . . [t]he appearance of a novel or previously controlled or eradicated infectious agent or biological toxin" or "[p]oses a high probability of . . . [w]idespread exposure to an infectious or toxic agent that poses a significant risk of substantial future harm to a large number of people in the affected population." Ala. Code §§ 31-9-3(4)(a)(2), (b)(3). Additionally, the definition of a "State of Emergency" refers to an "epidemic" that causes both "extreme peril to the safety of persons and property within the state" and conditions that "by reason of their magnitude, are or are likely to be beyond the control of the services, personnel, equipment and facilities of any single county, city and county, or city" as a reason to declare a state of emergency. Ala. Code § 31-9-3(5).

If the Governor declares a state of emergency, she acquires substantial powers. See Ala. Code §§ 31-9-6, -8. Those powers include the power "[t]o make, amend, and rescind the necessary orders, rules, and regulations to carry out the provisions of this

Page **1** of **3**

article within the limits of the authority conferred upon him or her in this article, with due consideration of the plans of the federal government." Ala. Code § 31-9-6(1). The Governor may "make, amend, and rescind the necessary orders, rules, and regulations looking to the direction or control of . . . the conduct of civilians and the movement or cessation of movement of pedestrians and vehicular traffic, public meetings or gatherings." Ala. Code § 31-9-6(4).

In addition to these general powers, "the Governor shall have and may exercise . . . additional emergency powers." Ala. Code § 31-9-8(a). The Governor may "perform and exercise such other functions, powers and duties as are necessary to promote and secure the safety and protection of the civilian population." Ala. Code § 31-9-8(a)(5). Finally, the Alabama Emergency Management Agency provides that its provisions "shall be construed liberally in order to effectuate its purpose." Ala. Code § 31-9-23. This arguably provides some latitude to act in situations that otherwise may appear to be close calls, including delaying a statewide election where no specific authorization exists.

There is precedent for postponing an election due to emergency circumstances. On September 11, 2001, the Governor issued executive orders canceling all primaries throughout the state scheduled for that day, a move the Legislature later ratified.

The duration of any postponement of statewide elections must take into consideration both health and safety as well as the restrictions of state law. Health and safety counsel how far the election should be pushed back (far enough to ensure that the health crisis will likely be over). However, state law provides a schedule for elections that dictates how far the election can be pushed back as a practical matter.

Based on state law and the information available at this time—subject to the contrary opinions of State health officials—any postponement of the primary should last at least thirty days but should likely not extend past July 14, 2020. State law provides deadlines for primary contests to be decided by party officials in reference to the general election date, which fall in early August this year. See Ala. Code § 17-13-86 (eighty-three days prior to the general election for state office primaries and ninety days prior for county office primaries). The contestant and the person contested are also entitled to certain amounts of time to file and respond to the contest, respectively. See Ala. Code § 17-13-70. Thereafter, candidates are certified, ballots printed, etc. to prepare for the general election in November. Therefore, in order to avoid jeopardizing the general election schedule, the primary should not be postponed beyond July 14, 2020.

On March 13, 2020, Governor Ivey declared that a state public health emergency existed in the State of Alabama due to the 2019 novel coronavirus known as COVID-19, and issued a State of Emergency Proclamation in accordance with Ala. Code § 31-9-8.

**Question:**

As the Chief Election Official of the State of Alabama pursuant to Ala. Code § 17-1-3, related to the above statutory authorities, or any other authority, may the Governor of Alabama declare and issue a State of Emergency and/or expand a proclaimed State of Emergency to postpone the March 31, 2020, Primary Runoff Election no later than July 14, 2020?

If you need further information, please contact me at (334) 328-2787.

Sincerely,

John H. Merrill
Secretary of State

JHM/dazb/hre/csh

 Alabama Secretary of State                                    

# Secretary of State Requests Emergency Opinion from Attorney General's Office to Postpone Runoff Election

Home › Newsroom › Secretary of State Requests Emergency Opinion from Attorney General's Office to Postpone Runoff Election

FOR IMMEDIATE RELEASE

Sunday, March 15, 2020 – MONTGOMERY – Following the outbreak of the Coronavirus (COVID-19) in the State of Alabama and the declaration of a National Emergency by President Donald Trump and the declaration of a State of Emergency by Governor Kay Ivey, Secretary of State John H. Merrill has requested an emergency opinion from the Attorney General's Office related to the possible postponement of the March 31 Runoff Election.

In the nature of keeping Alabamians safe from the potential spread of the virus, Merrill has asked if, under the emergency powers granted to the Governor under Section 31-9-1 et seq. *Ala. Code*, the Governor has the authority to postpone the election.

Currently, neither the *Code of Alabama* nor the *Constitution of the State of Alabama* allow for the suspension, delay, or postponement of an election once the date has been set. This is why, in 2019, our office asked the Legislature to give the Governor the explicit power to be able to take prescribed action through means that would be codified. Our attempt was unsuccessful but in the 2020 Legislative Session, we have asked Senator Donnie Chesteen and Representative David Standridge to introduce

Attachment 11

this legislation once again for consideration by the membership of their respective bodies.

The health and well-being of the people of this state are of paramount importance. In order to effectively practice social distancing, as recommended by the President of the United States, the Centers for Disease Control & Prevention (CDC), the Alabama Department of Public Health, etc., the March 31 Runoff Election must be postponed.

In postponing the election until the threat of the Coronavirus is eliminated, Alabamians will be able to participate in the electoral process in a safe and healthy environment, as they have done in the past.

The Secretary of State's Office will continue to monitor the situation and will provide additional updates as they become available.

Because absentee ballots have not yet gone out, votes in the Runoff Election would not be affected.

In the meantime, Secretary Merrill has recommended others to follow the guidelines set out by the CDC:

- Stock up on supplies

- Keep space between yourself and others

- Avoid crowds
- Wash hands often

- Avoid touching nose, mouth, and eyes

For questions or concerns, contact the Office of the Secretary of State at (334) 220-4757.


###


Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  -  Contact Us

Secretary of State Requests Emergency Op...

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993



# 2020-020

**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

STEVEN T. MARSHALL
ATTORNEY GENERAL

501 WASHINGTON AVENUE
P.O. BOX 300152
MONTGOMERY, AL 36130-0152
(334) 242-7300
WWW.AGO.ALABAMA.GOV

March 17, 2020

Honorable John H. Merrill
Secretary of State
State Capitol Suite S-105
600 Dexter Avenue
Montgomery, Alabama 36130-4650

> Secretary of State – Elections – Emergencies – Governor – Voting
>
> The Secretary of State may certify the results of a secondary primary election (runoff) that has been postponed and rescheduled by the Governor pursuant to the Alabama Emergency Management Act of 1955 ("AEMA").

Dear Secretary Merrill:

This opinion of the Attorney General is issued in response to your request.

## QUESTION

May the Secretary of State certify the results of a secondary primary election (runoff) that has been postponed and rescheduled by the Governor pursuant to the Alabama Emergency Management Act of 1955 ("AEMA")?

Attachment 12

Honorable John H. Merrill
Page 2

FACTS AND ANALYSIS

On March 13, 2020, the Governor issued a proclamation that a "state public health emergency exists in the State of Alabama" as a result of the emergence of the COVID-19 virus within the state. The proclamation did not address the upcoming runoff elections scheduled for March 31, 2020. You question whether you may certify the results of a runoff election that is postponed and rescheduled pursuant to the Governor's authority under the AEMA.

The Secretary of State is prohibited from "certify[ing] names for placement on a ballot for election that, under the pertinent provisions of the Alabama Constitution, is not supposed to be held." *Allen v. Bennett*, 823 So. 2d 679, 685–86 (Ala. 2001). Accordingly, your authority to certify the results of a runoff election that has been postponed and rescheduled due to a public health emergency is contingent upon the Governor's authority under the AEMA.

The emergence of the COVID-19 virus is an occurrence contemplated under the AEMA that triggers the Governor's authority to declare a state of emergency such as the one proclaimed on March 13, 2020. According to section 31-9-8(a) of the Code of Alabama, the Governor may declare a state of emergency by issuing a proclamation with findings that a "public health emergency has occurred or is reasonably anticipated in the immediate future within this state and that the safety and welfare of the inhabitants of this state require an invocation of" gubernatorial emergency powers. ALA. CODE § 31-9-8(a) (2016). A state public health emergency includes "[a]n occurrence or imminent threat of an illness or health condition that . . . [i]s believed to be caused by . . . [t]he appearance of a novel or previously controlled or eradicated infectious agent or biological toxin" or "[p]oses a high probability of . . . [w]idespread exposure to an infectious or toxic agent that poses a significant risk of substantial future harm to a large number of people in the affected population." ALA. CODE §§ 31-9-3(4)(a)(2), -3(4)(b)(3) (2016). Additionally, the definition of a "state of emergency" refers to an "epidemic" that causes both "extreme peril to the safety of persons and property within the state" and conditions that "by reason of their magnitude, are or are likely to be beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, or city" as a reason to declare a state of emergency. ALA. CODE § 31-9-3(5) (2016).

When the Governor declares a state of emergency, she acquires substantial powers. *See* ALA. CODE §§ 31-9-6, -8 (2016). Those powers include the power "[t]o make, amend, and rescind the necessary orders, rules, and regulations to carry out the provisions of this article within the limits of the authority conferred upon him or her in this article, with due consideration of the plans of the federal government." ALA. CODE § 31-9-6(1) (2016). The Governor may "make, amend,

Honorable John H. Merrill
Page 3

and rescind the necessary orders, rules, and regulations looking to the direction
or control of . . . the conduct of civilians and the movement or cessation of
movement of pedestrians and vehicular traffic, public meetings or gatherings. . .
." ALA. CODE § 31-9-6(4) (2016).

In addition to these general powers, "the Governor shall have and may
exercise . . . additional emergency powers." ALA. CODE § 31-9-8(a) (2016). The
Governor may "perform and exercise such other functions, powers and duties as
are necessary to promote and secure the safety and protection of the civilian
population." ALA. CODE § 31-9-8(a)(5) (2016). Furthermore, the AEMA provides
that its provisions "shall be construed liberally in order to effectuate its purpose."
ALA. CODE § 31-9-23 (2016).

The orders, rules, and regulations issued by the Governor under the AEMA,
finally, have the force of law.  ALA. CODE § 31-9-13 (2016).  Section 31-9-13
states as follows:

> All orders, rules, and regulations promulgated by the
> Governor as authorized by this article shall have the full
> force and effect of law when a copy thereof is filed in
> the office of the Secretary of State.  All existing laws,
> ordinances, rules, and regulations or parts thereof
> inconsistent with the provisions of this article or any
> order, rule, or regulation issued under the authority of
> this article, shall be suspended during the period of time
> and to the extent that such inconsistency exists.  The
> Secretary of State shall cause to be printed and
> distributed to the probate judges of the several counties
> and to the clerks of the several municipalities of this
> state a copy of each order, rule, or regulation issued
> under the authority of this article.

ALA. CODE § 31-9-13 (2016).  The Governor, therefore, has the authority under
the AEMA to declare a state of emergency as a result of the emergence of the
COVID-19 virus, and she has the authority to postpone a primary runoff election
to protect the public health and safety during the proclaimed emergency. Should
the Governor exercise her authority to postpone the primary runoff election, any
existing law setting a contrary date for the primary runoff election would be
suspended by the AEMA.

As the state's chief election official, you have acknowledged that the
primary should likely not be postponed beyond July 14, 2020, to avoid
interference with the general election in November. We concur with this

Honorable John H. Merrill
Page 4

conclusion and agree that the election should likely not be postponed beyond this
date unless the proclaimed emergency persists.

<u>CONCLUSION</u>

The Secretary of State may certify the results of a secondary primary
election (runoff) that has been postponed and rescheduled by the Governor
pursuant to the Alabama Emergency Management Act of 1955.

I hope this opinion answers your question. If this Office can be of further
assistance, please contact John Porter of my staff.

Sincerely,

STEVE MARSHALL
Attorney General
By:

KATHERINE G. ROBERTSON
Acting Chief, Opinions Division

SM/JP/RWS/as
2751332/212626

 

Alabama Secretary of State

# March 31 Runoff Election Postponed Until July 14

Home  ›  Newsroom  ›  March 31 Runoff Election Postponed Until July 14

FOR IMMEDIATE RELEASE

Wednesday, March 18, 2020 – MONTGOMERY – Following a joint press conference featuring Governor Kay Ivey, Secretary of State John H. Merrill, and Attorney General Steve Marshall, the March 31 Runoff Election will be postponed until July 14, 2020.

The following statement is from Secretary of State John H. Merrill:

When I took office as Alabama's 53rd Secretary of State, I set out to ensure a free and fair elections process for the people of Alabama.

First and foremost, however, the safety and well-being of every single Alabamian is my top priority.

The guidelines prescribed by the Centers for Disease Control & Prevention and the Alabama Department of Public Health have made it clear that it is no longer advisable for the people of Alabama to go to the polls to vote on March 31.

The opportunity to participate in the electoral process and have one's voice heard at the polls is one that we will continue to protect and advocate for.

In postponing the March 31 Runoff Election to July 14, we are continuing Alabama's practice of providing free and fair elections that do not compromise the safety and health of our voters, poll workers, and anyone else who may be involved with the elections process.

Attachment 13

Case 2:20-cv-00619-AKK   Document 34-1   Filed 05/22/20   Page 54 of 67

This new date will allow for the electoral process to continue in a normal manner. This delay will allow all local election officials the time to assess and evaluate the changes that must be made to ensure the Runoff Election is administered according to plan.

Eligible Alabamians may continue to register to vote in the Runoff Election until Monday, June 29.

Absentee ballot applications that have already been successfully submitted will be valid for the July 14, 2020 Runoff Election. To check on the status of your application, please contact your local Absentee Election Manager.

All absentee ballot applications must be received by the close of business on Thursday, July 9. If delivered by hand, absentee ballots must be received by the Absentee Election Manager by the close of business Monday, July 13. If returning by mail, the last day to postmark an absentee ballot is Monday, July 13.

Voters eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

I am grateful to Governor Ivey and General Marshall for their proactive leadership, sincere dedication, and spirit of teamwork that we have seen displayed during these trying times to ensure we are providing a safe and secure environment for all 3,585,209 voters in the State of Alabama to participate in the electoral process.

### 

Alabama Directory   -   Online Services   -   Alabama.gov   -   Statements & Policies   -   Feeds   -
Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   -   Phone: (334) 242-7200   -   Fax: (334) 242-4993

  Alabama Secretary of State

# Governor Ivey Issues Supplemental State of Emergency

Home  ›  Newsroom  ›  Governor Ivey Issues Supplemental State of Emergency

FOR IMMEDIATE RELEASE

Wednesday, March 18, 2020 – MONTGOMERY – Please see the link below for the proclamation from Governor Kay Ivey's Office on the Declaration of a Supplemental State of Emergency in response to the potential spread of the Coronavirus (COVID-19) in the State of Alabama.

The proclamation can be found here.

### 

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  -  Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993

Attachment 14



# STATE OF ALABAMA
# PROCLAMATION
## BY THE GOVERNOR

WHEREAS, on March 13, 2020, I declared the existence of a state public health emergency based on the appearance of the 2019 novel coronavirus known as COVID-19 in the State of Alabama;

WHEREAS that initial proclamation included provisions designed to assist in preventing the spread of COVID-19 and in mitigating the consequences of COVID-19;

WHEREAS, on March 16, 2020, President Donald J. Trump and the Centers for Disease Control and Prevention ("CDC") issued the "15 Days to Slow the Spread" guidance advising individuals to adopt far-reaching social-distancing measures, such as working from home and avoiding gatherings of more than 10 people; and

WHEREAS new implications of COVID-19 come to light on a continual basis, requiring flexibility and adaptability by all levels of government within the State of Alabama;

NOW, THEREFORE, I, Kay Ivey, Governor of the State of Alabama, pursuant to relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1 *et seq.*, do hereby proclaim the existence of conditions that warrant implementation of additional extraordinary measures and relief during the state health emergency now in effect in order to guard public health and protect human life. I therefore proclaim and direct all of the following:

### I. Rescheduling of the March 31, 2020, Primary Runoff Election

I find that conducting the primary runoff election currently scheduled for March 31, 2020, poses a serious public-health threat because there is not enough time before then to implement best practices for safely conducting an election under conditions related to COVID-19. To that end:

A. The primary runoff election scheduled for March 31, 2020, is hereby rescheduled to July 14, 2020.

B. Nothing in this section shall be construed to alter, amend, or modify any other provision of state law regarding the conduct of this primary runoff election. The Secretary of State and appropriate election officials shall take all reasonable efforts to publicize voter registration and absentee-voting opportunities.

C. The Secretary of State shall amend his Administrative Calendar to reflect the rescheduled primary runoff date and provide a copy to all appropriate election officials via certified mail and email. The Secretary of State shall also provide an amended copy of the Alabama Fair Campaign Practices Act filing calendar to all

Attachment 15

candidates and committees participating in the rescheduled primary runoff election.

## II. School Closures

This supplemental proclamation shall ratify my previous order, issued orally on March 13, 2020, requiring the closure of all K-12 public schools at the end of the day Wednesday, March 18, 2020, with reopening scheduled for the start of school on Monday, April 6, 2020, should circumstances permit. Nothing in this section shall supersede any decision or order issued prior to the date of this supplemental proclamation that require school closures to a greater extent than required by this section. The State Superintendent of Education and State Health Officer shall consult with one another on a continuing basis and provide recommendations to me, as warranted, regarding the opening or closure of schools in response to COVID-19.

## III. Open Meetings Act

I find that the government response to COVID-19 requires a careful balance between concerns for public health and safety (including the effectiveness of COVID-19 mitigation strategies), for the continued operations of governmental body, and for the right of the public to the open conduct of government. To that end:

A. Notwithstanding any provision of the Open Meetings Act, members of a governmental body may participate in a meeting—and establish a quorum, deliberate, and take action—by means of telephone conference, video conference, or other similar communications equipment if:

    1. Any deliberation conducted, or action taken, during the meeting is limited to matters within the governmental body's statutory authority that is (a) necessary to respond to COVID-19 or (b) necessary to perform essential minimum functions of the governmental body; and

    2. The communications equipment allows all persons participating in the meeting to hear one another at the same time.

B. Governmental bodies conducting a meeting pursuant to this section are encouraged, to the maximum extent possible, to use communications equipment that allows members of the public to listen to, observe, or participate in the meeting.

C. No less than twelve hours following the conclusion of a meeting conducted pursuant to this section, a governmental body shall post a summary of the meeting in a prominent location on its website—or, if it has no website, in any other location or using any other method designed to provide reasonable notice to the public. The summary shall recount the deliberations conducted and the actions taken with reasonable specificity to allow the public to understand what happened.

D. Nothing in this section shall be construed to alter, amend, or modify any other provision of the Open Meetings Act, including the notice requirements found in section 36-25A-3 and the enforcement, penalty, and remedy provisions found in section 36-25A-9. Any action or actions taken in violation of paragraph A will be deemed invalid.

E. To the maximum extent possible, the terms used in this section shall have the same meaning as the terms defined in section 36-25A-2 of the Open Meetings Act.

## IV.  Procurement of emergency-related supplies

I find that state agencies and local awarding authorities may be required to procure goods or services to properly and adequately respond to the public health threat posed by COVID-19. Therefore, my emergency proclamation dated March 13, 2020, shall satisfy the notice and writing requirements of the emergency provisions found in sections 41-16-23 and 41-16-53 of the competitive bid law. I hereby authorize state agencies and local awarding authorities to enter into contracts for goods and services without public advertisement to the extent necessary to respond to COVID-19.  State agencies and local awarding authorities shall maintain accurate and fully itemized records of all expenditures made pursuant to this section.

## V.  Reimbursement for certain state employees

I proclaim that it is fair, reasonable, and appropriate that those State of Alabama employees who are required to perform response services away from their home base of operations be reimbursed for the actual expenses they incur while performing these services on behalf of the State of Alabama. Therefore, I authorize the reimbursement of actual and necessary expenses, as prescribed by the Fiscal Policies and Procedures Manual, for state employees who have been, are being, or may be called away from their home base in response to this state of emergency.   All such claims for expense reimbursement must be reasonable and must be certified as such by the employee's agency head or appointing authority.

**FURTHER,** to the extent a provision of this supplemental proclamation conflicts with any provision of state law, such law is hereby suspended for the duration of this state of emergency, and this proclamation shall control.

**FURTHER,** I declare that this proclamation and all subsequent orders, laws, rules, or regulations issued pursuant hereto shall remain in full force and effect for the duration of the public health emergency unless rescinded or extended by proclamation.

**IN WITNESS WHEREOF,** I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this 18th day of March, 2020.

Kay Ivey
Governor

ATTEST:

John H. Merrill
Secretary of State

APA-4
Revised 1/2018

CERTIFICATION OF EMERGENCY RULES
FILED WITH LEGISLATIVE SERVICES AGENCY
OTHNI LATHRAM, DIRECTOR

Pursuant to Code of Alabama 1975, §§41-22-5(b) and
41-22-6(c)(2)a. and b.

I certify that the attached emergency (amendment, new rule, new
chapter, repeal or adoption by reference) is a correct copy as
promulgated and adopted on the  18th day of  March  , 2020 .

AGENCY NAME:  Alabama Secretary of State

RULE NO. AND TITLE:   820-2-3-.06-.01ER Absentee Voting During
State of Emergency

EFFECTIVE DATE OF RULE:  March 18, 2020

EXPIRATION DATE (If less than 120 days):

NATURE OF EMERGENCY:

The Governor of Alabama declared a State of Emergency effective
March 13,2020 and postponed the primary runoff election until
July 14, 2020. This rule allows for voters to cast an absentee
ballot due to the State of Emergency.

STATUTORY AUTHORITY:  Section 17-11-3(e) Code of Alabama

SUBJECT OF RULE TO BE ADOPTED ON PERMANENT BASIS ____ YES  X NO

NAME, ADDRESS, AND TELEPHONE NUMBER OF PERSON TO CONTACT FOR COPY
OF RULE:

Hugh Evans
State Capitol Suite E-201
600 Dexter Avenue, Montgomery, AL 36130
(334)353-7857

REC'D & FILED

MAR 1 8 2020

LEGISLATIVE SVC AGENCY

Secretary of State

MARCH 18, 2020

A-5

Attachment 16

820-2-3-.06-.01ER        <u>Absentee Voting During State of Emergency.</u>

(1)        Pursuant to 17-11-3(e) of the *Code of Alabama*, and without limitation, due to the State of Emergency issued by the Governor of Alabama on March 13, 2020, as amended on March 18, 2020, as well as the National Emergency declared by the President of the United States on March 13, 2020 related to the 2019 Novel Coronavirus known as COVID-19, any qualified voter who determines it is impossible or unreasonable to vote at their voting place for the Primary Runoff Election of 2020 due to the declared states of emergency, shall be eligible to check the box on the absentee ballot application which reads as follows:

"I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

(2)        Any qualified voter of this state who applies and successfully submits an application, with proper identification, for an absentee ballot pursuant to this Emergency Administrative Rule shall be eligible to vote an absentee ballot for the Primary Runoff Election of 2020.

(3)        All Absentee Election Managers and any other election officials of this state are hereby directed and instructed to follow this Emergency Administrative Rule and accept all absentee ballot applications filed hereunder immediately.
**Authors:** David Brewer, Hugh Evans, Clay Helms, Grace Newcombe.
**Statutory Authority:** 17-11-3(e)
**History: New Rule:** Filed, March 18, 2020

 Alabama Secretary of State 

# Secretary of State Shares Guidance on Absentee Voting in Upcoming July 14 Primary Runoff Election

<u>Home</u> › <u>Newsroom</u> › Secretary of State Shares Guidance on Absentee Voting in Upcoming July 14 Primary Runoff Election

FOR IMMEDIATE RELEASE

Monday, March 23, 2020 – MONTGOMERY – Following the postponement of the March 31 Primary Runoff Election to July 14, Secretary of State John H. Merrill reminds Alabamians of the option to vote by absentee ballot.

"Amid coronavirus concerns, it is important to remember that Alabamians who are concerned about contracting or spreading an illness have the opportunity to avoid the polls on Election Day by casting an absentee ballot," shared Secretary Merrill. "Alabamians can access the application <u>online</u> or by visiting or calling their local <u>Absentee Election Manager's office</u>."

Voters are also able to contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. State law allows the Secretary of State to issue absentee voting guidance during declared states of emergency, allowing Secretary Merrill to encourage voters to check the box which reads as follows (in the case none of the boxes are appropriate):

Attachment 17

"I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

"We have worked to provide safe, secure, and free elections for the people of Alabama through offering an extended absentee voting period for the upcoming Primary Runoff Election, and we will continue to see that Alabamians have the opportunity to participate in the electoral process in a way that does not affect their health or well-being," stated Merrill.

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

###

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  - Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993



 Alabama Secretary of State

# Governor Ivey Issues Supplemental State of Emergency

<u>Home</u>  ›  <u>Newsroom</u>  ›  Governor Ivey Issues Supplemental State of Emergency

FOR IMMEDIATE RELEASE

Monday, March 23, 2020 – MONTGOMERY – Please see the link below for the proclamation from Governor Kay Ivey's Office on the Declaration of a Supplemental State of Emergency in response to the potential spread of the Coronavirus (COVID-19) in the State of Alabama.

The proclamation can be found <u>here.</u>

### ###

<u>Alabama Directory</u>  -  <u>Online Services</u>  -  <u>Alabama.gov</u>  -  <u>Statements & Policies</u>  -  <u>Feeds</u>  -  <u>Contact Us</u>

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993

Attachment 18

 Alabama Secretary of State 

# Governor Ivey Issues State of Emergency Related to Education

<u>Home</u> › <u>Newsroom</u> › Governor Ivey Issues State of Emergency Related to Education

FOR IMMEDIATE RELEASE

Thursday, March 26, 2020 – MONTGOMERY – Please see the link below for the proclamation from Governor Kay Ivey's Office on the Declaration of a Supplemental State of Emergency related to education in response to the potential spread of the Coronavirus (COVID-19) in the State of Alabama.

The proclamation can be found <u>here</u>.

###

Alabama Directory   –   Online Services   –   Alabama.gov   –   Statements & Policies   –   Feeds   – Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   –   Phone: (334) 242-7200   –   Fax: (334) 242-4993

Attachment 19



## STATE OF ALABAMA
# PROCLAMATION
## BY THE GOVERNOR

**WHEREAS**, on March 13, 2020, I declared the existence of a state public health emergency based on the appearance of the 2019 novel coronavirus known as COVID-19 in the State of Alabama;

**WHEREAS** that initial proclamation included provisions designed to assist in preventing the spread of COVID-19 and in mitigating the consequences of COVID-19;

**WHEREAS**, on March 18, 20, and 23 of 2020, I issued supplemental proclamations to further address the occurrence of COVID-19 in the State of Alabama; and

**WHEREAS** new implications of COVID-19 come to light on a continual basis, requiring flexibility and adaptability by all levels of government within the State of Alabama;

**NOW THEREFORE**, I, Kay Ivey, Governor of the State of Alabama, pursuant to the relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1, *et seq.*, do hereby proclaim the existence of conditions that warrant implementation of additional extraordinary measures and relief during the state public health emergency now in effect in order to guard public health and protect human life. I therefore proclaim and direct all of the following:

### I.  Alternative Methods of Instruction for the 2019-2020 School Year

Beginning at the start of school on April 6, 2020, all public K-12 schools shall implement a plan to complete the 2019-2020 school year using alternate methods of instruction as established by the State Superintendent of Education. Local school districts shall make staffing decisions and determinations related to access to school buildings in accordance with all applicable public health orders and the recommendations of the Centers for Disease Control and Prevention and the Alabama Department of Public Health.

### II.  Emergency-services licensure extension

The licensure period applicable to emergency medical services personnel and provider services is hereby extended for the duration of the current state of emergency. *See* Ala. Code § 22-18-4(a). For purposes of this section, the terms "emergency medical services personnel" and "provider service" shall have the same definitions as provided in Alabama Code section 22-18-1.

### III.  Notaries and witnesses

Because person-to-person contact increases the risk of transmitting COVID-19, I find that it would promote the safety and protection of the civilian population to adopt measures that reduce the necessity of in-person meetings. To that end:

A. Notaries in Alabama who are licensed attorneys or operating under the supervision of licensed attorneys may notarize signatures through videoconferencing programs and confirm the signatures of witnesses who

Attachment 20

participate virtually through videoconferencing as though they were physically present at the signing.

B. Any person who witnesses a document through videoconference technology may be considered an "in person" witness, provided that the presence and identity of such witnesses are validated by the notary at the time of the signing by the same identifications required under current law.

C. The official date and time of the notarization shall be the date and time when the notary witnesses the signature via the videoconference technology. All documents must be returned to the notary for certification and execution.

### IV. Electronic transactions for state agencies

Notwithstanding any provision of state law, including Alabama Code sections 8-1A-17 and 8-1A-18, any governmental agency of this state with rulemaking authority reviewable under section 41-22-23 may determine, without promulgating a rule, (A) the extent to which it will create and retain electronic records and (B) the extent to which it will send and accept electronic records and electronic signatures to and from other persons. To the maximum extent possible, the terms used in this section shall have the same meaning as the terms defined in section 8-1A-2 of the Uniform Electronic Transactions Act.

### V. Summonses in lieu of arrest

Because the conditions of jails inherently heighten the possibility of COVID-19 transmission, I find that it would promote the safety and protection of the civilian population to adopt measures that reduce the movement of persons into and out of county and municipal jails in a way that does not jeopardize public safety. To that end:

A. A county or municipality may authorize law enforcement officers to issue a summons and complaint in lieu of custodial arrest for any violation or misdemeanor except as provided below.

B. A county or municipality may not authorize a law enforcement officer to issue a summons and complaint in lieu of arrest in any of the following circumstances:

    1. The person is charged with committing a crime involving violence, threat of violence, or domestic violence, as defined under Article 7 (commencing with Section 13A-6-130) 17 of Chapter 6, Title 13A;

    2. The person is charged with the use or possession of alcohol or a controlled substance and, in the opinion of the law enforcement officer, poses a risk to public safety;

    3. A victim of the crime is a minor;

    4. The person is charged with driving under the influence as codified in section 32-5A-191; or

    5. The person is charged with a crime that would require restitution to the victim.

C. If a county or municipality elects to authorize law enforcement officers to issue a summons and complaint in lieu of custodial arrest, the county or municipality shall set a fee schedule for the summons and complaint that is concurrent with the bail fee and court costs currently associated with a custodial arrest for the same crime.

FURTHER, to the extent a provision in this supplemental proclamation conflicts with any provision of state law, that law is hereby suspended for the duration of this state of emergency, and this proclamation shall control.

**FURTHER**, I declare that this proclamation and all subsequent orders, laws, rules, or regulations issued pursuant hereto shall remain in full force and effect for the duration of the public health emergency unless rescinded or extended by proclamation.



IN WITNESS, WHEREOF, I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this 26th day of March, 2020.

Kay Ivey
Governor

ATTEST:

John H. Merrill
Secretary of State