FILED

2020 May-22  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

**Elrod, Jeff**

| | |
|---|---|
| **From:** | Elrod, Jeff |
| **Sent:** | Monday, March 30, 2020 5:05 PM |
| **To:** | BOR -- All Counties |
| **Subject:** | Update on Photo ID Policies |

Dear Registrars:

We are aware that several courthouses may be closed or have amended hours of operation right now. As mentioned in earlier messages, the work of the registrars' office will continue as usual. This includes issuing photo IDs. The issuance of photo IDs must continue during this time, regardless of the courthouse being open or not. If a qualified voter needs a photo ID, then you should issue the photo ID. If your courthouse is closed, please make an appointment with the individual in need of the ID and escort them into the building.

Please remember that your office must be open, you may stagger your time as needed.

If you have any questions, please let me know.

Thanks,


Jeff Elrod
*Supervisor of Voter Registration*
*Office of Secretary of State John H. Merrill*
*600 Dexter Avenue, Montgomery, AL 36130*
*(334) 353-7818-office*
*(334) 324-6246-cell*



Attachment 21

 Alabama Secretary of State    

# 100 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

Home  ›  Newsroom  ›  100 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

FOR IMMEDIATE RELEASE

Tuesday, March 31, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 100 days left to apply for an absentee ballot.

 Alabama Secretary of State    

## Official Website of the Alabama Secretary of State

Attachment 22

# John H. Merrill

## 100 Days Left to Apply for Absentee Ballot for the Primary Runoff Election

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded online or requested by visiting or calling the local Absentee Election Manager's office.

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

> "I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close

of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

### 

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  - Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993

 Alabama Secretary of State



# Governor Ivey Issues Supplemental State of Emergency

Home  ›  Newsroom  ›  Governor Ivey Issues Supplemental State of Emergency

FOR IMMEDIATE RELEASE

Thursday, April 2, 2020 – MONTGOMERY – Please see the link below for the proclamation from Governor Kay Ivey's Office on the Declaration of a Supplemental State of Emergency in response to the potential spread of the Coronavirus (COVID-19) in the State of Alabama.

The proclamation can be found here.

###

Alabama Directory  –  Online Services  –  Alabama.gov  –  Statements & Policies  –  Feeds  – Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  –  Phone: (334) 242-7200  –  Fax: (334) 242-4993

Attachment 23



# STATE OF ALABAMA
# PROCLAMATION
## BY THE GOVERNOR

**WHEREAS,** on March 13, 2020, I declared the existence of a state public health emergency based on the appearance of the 2019 novel coronavirus known as COVID-19 in the State of Alabama;

**WHEREAS** that initial proclamation included provisions designed to assist in preventing the spread of COVID-19 and in mitigating the consequences of COVID-19;

**WHEREAS,** on March 18, 20, 23, and 26 of 2020, I issued supplemental proclamations to further address the occurrence of COVID-19 in the State of Alabama; and

**WHEREAS** new implications of COVID-19 come to light on a continual basis, requiring flexibility and adaptability by all levels of government within the State of Alabama;

**NOW THEREFORE,** I, Kay Ivey, Governor of the State of Alabama, pursuant to the relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1, *et seq.*, do hereby proclaim the existence of conditions that warrant implementation of additional extraordinary measures and relief during the state public health emergency now in effect in order to guard public health and protect human life. I therefore proclaim and direct all of the following:

### I. Cutting red tape for health care providers

Because of an anticipated "surge" of COVID-19 patients requiring treatment by health care facilities and providers, I find that it would promote the safety and protection of the civilian population to adopt measures that expand the capacity of the health care workforce. To that end:

A. **Expanded scope of practice for certain health care professionals.**

1. Certified Registered Nurse Practitioners, Certified Nurse Midwives, Certified Registered Nurse Anesthetists, physician assistants, and anesthesia assistants may practice in a licensed health care facility as follows during the period of the public health emergency I declared on March 13, 2020:

   a. Certified Registered Nurse Practitioners and Certified Nurse Midwives who possess an active, unencumbered Certificate of Qualification to engage in advanced practice nursing pursuant to Ala. Code § 34-21-84—or who possess an active, unencumbered registered nurse license and equivalent advanced practice approval issued by the appropriate licensing board of another state, the District of Columbia, a territory of the United States, or a province of Canada—are authorized to practice to the full scope of their practice as determined by their education, training, and current national certification(s) from a national certifying agency recognized by the

Attachment 24

Alabama Board of Nursing in the clinical specialty consistent with the educational preparation and appropriate to the area of practice.

b. Certified Registered Nurse Anesthetists who possess an active, unencumbered Certificate of Qualification to engage in advanced practice nursing pursuant to Ala. Code § 34-21-84—or who possess an active, unencumbered registered nurse license and equivalent advanced practice approval issued by the appropriate licensing board of another state, the District of Columbia, a territory of the United States, or a province of Canada—are authorized to practice to the full scope of their practice as determined by their education, training, and current national certification(s) by the National Board of Certification and Recertification for Nurse Anesthetists or other certifying body approved by the Board of Nursing.

c. Certified Registered Nurse Anesthetists practicing under this subsection are authorized to determine, prepare, monitor, or administer such legend and controlled medications as are necessary for the performance of anesthesia-related services, airway management services (whether or not associated with the provision of anesthesia), and other acute care services within the scope of their practice as determined by their education, training, and current national certification(s) by the National Board of Certification and Recertification for Nurse Anesthetists or other certifying body approved by the Board of Nursing.

d. The chief of the medical staff or medical director of a licensed health care facility, or his or her designee, may serve as the collaborating physician for an unlimited number of Certified Registered Nurse Practitioners and Certified Nurse Midwives, provide direction to an unlimited number of Certified Registered Nurse Anesthetists, and supervise an unlimited number of physician assistants and anesthesia assistants.

e. Certified Registered Nurse Practitioners and Certified Nurse Midwives under collaborative practice with, and physician assistants practicing under a registration with the chief of the medical staff or medical director, or his or her designee shall be authorized to perform all skills as authorized under the licensed health care facility's protocols and to prescribe all drugs listed in the licensed health care facility's protocols and formulary as may be necessary to provide health care to patients; provided that the Certified Registered Nurse Practitioner, Certified Nurse Midwife, or physician assistant must possess an active registration from the United States Drug Enforcement Administration and a Qualified Alabama Controlled Substances Certificate to prescribe controlled substances.

f. Certified Registered Nurse Anesthetists practicing under the direction of, and anesthesia assistants practicing under a registration with, the chief of the medical staff or medical director, or his or her designee shall be authorized to perform all skills as authorized under the licensed health care facility's protocols as may be necessary to provide health care to patients.

g. The licensed healthcare facility implementing these arrangements shall be charged with keeping accurate records thereof.

2. Physicians practicing outside of a licensed health care facility shall have temporary emergency approval for collaboration agreements with Certified

Registered Nurse Practitioners and Certified Nurse Midwives, and registration agreements with anesthesia assistants and physician assistants, not to exceed a cumulative three hundred and sixty hours (nine full-time equivalents or "FTEs") per week, unless further expansion of this FTE limit is deemed necessary to address the public health emergency and is authorized by emergency rules promulgated by both the Board of Medical Examiners and the Board of Nursing. Emergency collaborations and registration agreements between physicians and Certified Registered Nurse Practitioners, Certified Nurse Midwives, anesthesia assistants, and physician assistants practicing outside of a licensed health care facility shall be limited to the applicable standard protocol and formulary approved by the Alabama Board of Nursing and the Board of Medical Examiners, except that practitioners who have previously been approved for additional skills or drugs shall retain those authorizations.

3. Emergency collaboration and registration agreements shall be deemed approved upon submission to the Alabama Board of Nursing and the State Board of Medical Examiners.

4. Certified Registered Nurse Practitioners and Certified Nurse Midwives practicing pursuant to an existing Alabama collaborative practice agreement or an Alabama emergency collaboration are authorized to provide all services within their scope of practice via telehealth services. Advanced Practice Registered Nurses licensed or approved as such in another state, territory, the District of Columbia, or a province of Canada who currently provide services to Alabama residents at practice sites physically located in another state, territory, the District of Columbia or a province of Canada may, during the period of this declared public health emergency, provide telehealth services incident to continuity of care for their existing Alabama patients without obtaining an emergency collaboration in Alabama.

B. **Practice by out-of-state health care practitioners.** The Board of Pharmacy, the Board of Nursing, the Medical Licensure Commission, and the State Board of Medical Examiners shall adopt emergency rules within three business days of the issuance of this proclamation to allow expedited licensures and/or temporary permits for the practice of pharmacy, nursing, and medicine in Alabama by individuals in possession of active, unencumbered licenses in other states, if not already authorized by rule.

C. **Expedited reinstatement of medical licenses.** Notwithstanding the procedure governing the reinstatement of medical licenses found in Alabama Code section 34-24-337, the Alabama State Board of Medical Examiners and the Medical Licensure Commission of Alabama shall adopt a joint emergency rule within three business days of the issuance of this proclamation to provide for the expedited reinstatement of medical licenses to qualified physicians who desire to provide health care to people in Alabama suffering from and affected by the COVID-19 pandemic. This rule shall allow for the expedited reinstatement of medical licenses for a time period to be determined by the Board of Medical Examiners and the Medical Licensure Commission to individuals who maintained good standing while they practiced in Alabama, who have no disciplinary history in Alabama or elsewhere, and who, in the judgment of the Board of Medical Examiners and Medical Licensure Commission, are competent to practice medicine with reasonable skill and safety to patients.

## II. Expanding capacity of health care facilities

Because the increasing number of patients requiring treatment for COVID-19 is placing a strain on the resources of healthcare facilities and pharmacies, I find that it would promote the safety and protection of the civilian population to adopt measures to

expedite permitting and provide temporary relief from certain laws and rules concerning the State's healthcare infrastructure. To that end:

A. The State Health Planning and Development Agency and, as appropriate, the Statewide Health Coordinating Council and the Certificate of Need Review Board, is hereby authorized and directed to promulgate emergency rules to provide for temporary waivers to the Certificate of Need process to permit new services, facilities, and other resources needed for the treatment of patients affected by the appearance of COVID-19, or to free up bed and treatment space at existing health care facilities to permit such needed treatment.

B. The Alabama Board of Pharmacy shall adopt emergency rules to allow expedited temporary pharmacy permits.

### III. Notaries and witnesses

My supplemental emergency proclamation issued March 26, 2020, is hereby amended to address the remote notarization of documents by unsupervised, non-attorney notaries and to enhance record-keeping requirements. Specifically, the relevant section of that supplemental proclamation is amended to read as follows:

\*   \*   \*

Because person-to-person contact increases the risk of transmitting COVID-19, I find that it would promote the safety and protection of the civilian population to adopt measures that reduce the necessity of in-person meetings. To that end:

A. Notaries appointed in Alabama may notarize signatures through videoconferencing programs, and confirm the signatures of witnesses who participate virtually through videoconferencing, as though they were physically present at the signing—provided that they maintain a recording of the audio-visual communication for a period of five years following the date the recording is noted in the notary's logbook.

B. Any person who witnesses a document through videoconference technology may be considered an "in person" witness, provided that the presence and identity of such witnesses are validated by the notary at the time of the signing by the same identifications required under current law.

C. The official date and time of the notarization shall be the date and time when the notary witnesses the signature via the videoconference technology. All documents must be returned to the notary for certification and execution.

D. The provisions of this section shall take effect tomorrow, April 3, 2020. Any notarizations previously performed under section III of my supplemental proclamation dated March 26, 2020, are valid.

### IV.  Public meetings

Because person-to-person contact increases the risk of transmitting COVID-19, I find that it would promote the safety and protection of the civilian population to adopt measures that reduce the necessity of in-person meetings. To that end:

A. Notwithstanding any provision of state law, any governmental entity or quasi-governmental entity created pursuant to a state statute or municipal ordinance need not meet in person to establish a quorum if the entity complies with the Open Meetings Act procedures established by section III of the supplemental emergency proclamation I issued on March 18, 2020.

B. Notwithstanding any provision of state law, any meeting or public hearing of an entity described in subsection A that is scheduled by law to occur during this state

public health emergency may be postponed by the chair or other person responsible for setting it. The chair or other person shall provide notice of the postponement in a manner consistent with the provisions of section 36-25A-3 of the Open Meetings Act and shall reschedule the meeting or public hearing as soon as practicable.

### V.  Remote shareholder meetings

Because person-to-person contact increases the risk of transmitting COVID-19, I find that it would promote the safety and protection of the civilian population to adopt measures that reduce the necessity of in-person meetings. To that end:

A.  Notwithstanding any other provision of law, corporations governed by Chapter 2 of Title 10A of the Code of Alabama (1975) and Chapter 2A of Title 10A of the Code of Alabama (1975), may provide an alternate means of meeting for eligible stockholders via remote participation pursuant to guidelines and procedures adopted by the corporation's board of directors.

B.  Stockholders remotely participating in a stockholders' meeting shall be deemed present and may vote at that meeting if:

    1.  The corporation has implemented reasonable measures to verify membership of each person participating; and

    2.  The corporation has provided stockholders participating remotely a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to communicate, and to read or hear the proceedings of the meeting, substantially concurrently with the proceedings.

C.  Any guidelines and procedures adopted under this section must provide for pre-meeting notice to the stockholders that describes the means of remote communication to be used during  the meeting and the notice must include the record date for determining the stockholders entitled to vote at the meeting, if that date is different from the record date for determining stockholders entitled to notice of the meeting.

D.  The corporation shall make the list of stockholders entitled to vote available at the meeting, and any stockholder, or the stockholder's agent or attorney, is entitled to inspect the list at any time during the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting.

### VI.  Slowing COVID-19 transmission in jails

Because the conditions of jails inherently heighten the possibility of COVID-19 transmission, I find that it would promote the safety and protection of the civilian population to allow local officials to reduce the number of local inmates being held in county jails in a way that does not jeopardize public safety. To that end:

A.  With the exception of alleged probation and parole violations based upon new criminal charges, any alleged probation or parole violator who has been in the custody of a jail for more than 20 days without a probation or parole hearing shall be released.  If the hearing is not held within the specified time, the sheriff shall release the alleged probation or parole violator unless he or she is being held for other criminal charges.

B.  For technical violations punishable by no more than 45 days as set out in Alabama Code section 15-22-54(e) or section 15-22-32(b), credit TO SATISFY ANY SUCH VIOLATION shall be given for all time served in county and municipal jails after entering custody for the violation at issue.

C. Nothing in this section shall be construed to preclude the use of communications technology in the conduct of probation or parole revocation hearings.

**FURTHER,** to the extent a provision in this supplemental proclamation conflicts with any provision of state law, that law is hereby suspended for the duration of this state of emergency, and this proclamation shall control.

**FURTHER,** I declare that this proclamation and all subsequent orders, laws, rules, or regulations issued pursuant hereto shall remain in full force and effect for the duration of the public health emergency unless rescinded or extended by proclamation.



IN WITNESS, WHEREOF, I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this 2nd day of April, 2020.

_Kay Ivey_

Kay Ivey
Governor

ATTEST:

_John H. Merrill_

John H. Merrill
Secretary of State

 

# Alabama Secretary of State

# Update on Governor's State of Emergency and State Health Officer's Order

Home > Newsroom > Update on Governor's State of Emergency and State Health Officer's Order

FOR IMMEDIATE RELEASE

Friday, April 3, 2020 – MONTGOMERY – Please see the link below for the proclamation from Governor Kay Ivey's Office on the Declaration of a Supplemental State of Emergency in response to the potential spread of the Coronavirus (COVID-19) in the State of Alabama.

The proclamation can be found here

Additionally, the Order issued by State Health Officer Dr. Scott Harris can be found here.

### ###

Alabama Directory  –  Online Services  –  Alabama.gov  –  Statements & Policies  –  Feeds  – Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993

Attachment 25

## ORDER OF THE STATE HEALTH OFFICER
## SUSPENDING CERTAIN PUBLIC GATHERINGS
## DUE TO RISK OF INFECTION BY COVID-19

### (APPLICABLE STATEWIDE)

### AMENDED APRIL 3, 2020

**WHEREAS** Coronavirus Disease 2019 (COVID-19) has been detected in Alabama; and

**WHEREAS** the appearance of COVID-19 in the State poses the potential of widespread exposure to an infectious agent that poses significant risk of substantial harm to a large number of people; and

**WHEREAS** the State Board of Health has designated COVID-19 to be a disease of epidemic potential, a threat to the health and welfare of the public, or otherwise of public health importance; and

**WHEREAS,** on March 13, 2020, on recommendation of the State Health Officer, Kay Ivey, Governor of the State of Alabama, declared a state public health emergency exists in the State of Alabama; and

**WHEREAS,** on March 16, 2020, the Jefferson County Health Officer, in response to a rapidly growing number of cases of COVID-19 being detected in Jefferson County, issued an order suspending certain public gatherings in that county; and

**WHEREAS,** on March 17, 2020, the State Health Officer issued a similar order for counties surrounding Jefferson, including Blount, St. Clair, Shelby, Tuscaloosa, and Walker Counties, and

**WHEREAS,** on March 19, 2020, the State Health Officer issued an order, and on March 20, 2020, and March 27, 2020, amended orders, of statewide application suspending certain public gatherings; and

**WHEREAS** further social distancing measures are necessary to be implemented on a statewide basis to prevent the spread of COVID-19; and

**WHEREAS** Ala. Code § 22-2-2(4) authorizes the State Health Officer, on behalf of the State Board of Health, to direct that conditions prejudicial to health in public places within the State be abated;

**NOW THEREFORE, THESE PREMISES CONSIDERED**, it is ordered that the following Stay at Home order be implemented statewide:

1. Effective Saturday, April 4, 2020, at 5:00 P.M., every person is ordered to stay at his or her place of residence except as necessary to perform any of the following "essential activities":

1

a. **To obtain necessary supplies.** A person may leave his or her place of residence to obtain the following supplies for himself or herself, for other household members, including pets, or for a loved one or friend who cannot or should not leave home or cannot care for himself or herself:

    (i)    Food and other consumer goods necessary to maintain a person's daily routine or to maintain the safety, sanitation, and routine operation of a home or residence;

    (ii)    Supplies needed to work from home;

    (iii)    Pharmaceutical prescriptions or other medical supplies;

    (iv)    Fuel for automobiles or other vehicles or other vehicle supplies;

    (v)    Materials for distance learning or other education-related purposes; and

    (vi)    Any other supplies necessary to maintain a person's or pet's daily routine or to maintain the safety, sanitation, and routine operation of a home or residence.

b. **To obtain or provide necessary services.** A person may leave his or her place of residence to obtain or provide the following services for himself or herself, for other household members, including pets, or for a loved one or friend who cannot or should not leave home or cannot care for himself or herself:

    (i)    Dental, medical, or surgical procedures allowed under paragraph 14 of this Order;

    (ii)    Government-funded services or benefits;

    (iii)    Automobile repair services;

    (iv)    Services vital to the treatment or care of people with physical, intellectual, or developmental disabilities, or people with substance-use disorders;

    (v)    Services related to any public or private distance learning activities and education continuity, including all services under education continuity plans approved by the State Superintendent of Education; and

    (vi)    Any other services necessary to maintain a person's or pet's health and safety or to preserve the person's ability to perform an essential activity as defined in this paragraph.

c. **To attend religious services.** A person may leave his or her place of residence to attend an event that is a religious worship service, wedding, or funeral in either of the following circumstances:

    (i)    The event involves fewer than 10 people and the people maintain a consistent six-foot distance from one another; or

2

(ii)    The event is a "drive-in" worship service that adheres to the following rules:

    1.    All participants shall remain in their vehicles for the entirety of the service;

    2.    The participants in each vehicle all share the same place of residence; and

    3.    Participants do not come within six feet of participants in other vehicles.

d.   **To take care of others.** A person may leave his or her place of residence to care for a family member, friend, or pet in another household, or to donate blood, or to transport family members, friends, or pets as allowed by this Order.

e.   **To work.** A person may leave his or her place of residence to perform work at "essential businesses and operations" as defined in paragraph 2 below or to perform essential work-related activities as follows:

(i)    Work-related activities to maintain the value of a business, establishment, corporation or other organization, such as managing inventory, ensuring security, and processing payroll and employee benefits;

(ii)    Work-related activities to enable people to work or shop remotely from their residences or to allow people to buy products through drive-by, curbside, or door-to-door delivery; or

(iii)    Work-related activities that do not require any regular interaction within six feet of another person.

f.   **To engage in outdoor activity.** A person may leave his or her place of residence to participate in outdoor activity that involves fewer than 10 people so long as the person maintains a consistent six-foot distance from other persons.

g.   **To seek shelter.** A person may leave his or her place of residence to seek shelter if required by his or her employment by an "essential service of business" or if his or her residence is unsafe or at imminent risk of becoming unsafe. A person may also leave his or her place of residence to seek help from providers of basic necessities to economically disadvantaged people, such as food pantries.

h.   **To travel as required by law.** A person may leave his or her place of residence to travel as required by law enforcement or court order, including the transportation of children required by a custody agreement.

i.   **To see family member**s. A person may leave his or her place of residence to visit the residence of other persons who are related to him or her.

Anyone leaving his or her home or place of residence as authorized in this order shall take reasonable steps to maintain six feet of separation from other persons.

3

2. For the purposes of this Order, "essential businesses and operations" means and includes:

a. **Government operations,** including public safety and first responders, law enforcement, fire prevention and response, courts and court personnel, military, emergency management personnel, corrections, probation and parole, child protection, child welfare, EMTs, 911 call-center employees, all workers and vendors that support law enforcement and emergency management operations and services, and other federal, state, tribal, or local officials or employees;

b. **Health-care providers and caregivers**, including physicians, dentists, mental health workers, nurses, chiropractors, physical therapists, veterinarians, hospitals/clinics, medical practices, research and laboratory operations, hospice, health care facilities, clinical staff, nursing homes, residential health care facilities, adult day care centers, blood banks, congregate-care facilities, assisted living facilities, elder care, medical wholesale and distribution, home health workers and aides, medical supply and equipment manufacturers and providers, medical waste disposal, hazardous waste disposal, other ancillary healthcare services;

c. **Infrastructure Operations,** including electric, natural gas, and water utilities, nuclear facilities and other generating facilities, utility poles and components, fuel pipelines and transmission systems, petroleum producers, telecommunications, electronic security and life safety services, wireless communication companies, communications sales and customer support, telecommunication and data centers, cybersecurity operations; businesses and other operations concerned with flood control, aviation, and the maintenance, operation, or construction of dams, airports, ports, roads and highways, and mass transit; automotive sales and repair, vehicle rental and taxi services, network providers (such as Uber and Lyft), freight and passenger rail, motor carriers, pipelines, and other transportation infrastructure and businesses, water and waste water systems, transportation companies such as airlines and bus lines, hazardous waste disposal, hotels and commercial lodging services, and RV parks;

d. **Manufacturing facilities,** including food processing and production; companies that produce pharmaceuticals, food additives, medical equipment, medical devices and supplies, technology, biotechnology, chemical products, telecommunications products; automotive production and suppliers, airplane, ship, and space vehicle or rocket manufacturers; companies involved in healthcare, energy, steel and steel products, fuel and petroleum exploration and production, lubricants, greases and engine oils, mining, national defense, sanitary and cleaning products, household products, personal care products, products used by any other Essential Business or Operation;

e. **Agricultural operations and farms**, including food cultivation, livestock, cattle, poultry and seafood operations, transportation of agricultural products, livestock auctions, feedlots, dealers and brokers of livestock, farmer's markets, feed stores, repairers and suppliers of agricultural equipment, gas, diesel and petroleum suppliers, companies involved with aquaculture, horticulture, and chemicals, including pesticide, herbicide,

4

and fertilizer producers and distributors, forest products businesses, including those involved in forestry operations, logging, manufacture of lumber and paper products; meat processing facilities, rendering facilities and transporters, feed processing facilities, veterinary services;

f.  **Essential retailers**, defined as all supermarkets, food and beverage stores, including liquor stores and warehouse clubs, food providers, convenience stores, office-supply stores, bookstores, computer stores, pharmacies, health care supply stores, hardware stores, home improvement stores, building materials stores, stores that sell electrical, plumbing, and heating materials, gun stores, gas stations; auto, farm equipment, bicycle, motorcycle, and boat supply and repair stores, and businesses that ship or deliver groceries, food, and goods directly to residences;

g.  **Restaurants and bars**;

h.  **Essential personal services**, defined as trash collection, mail and shipping services, home repair, automotive sales and repair; warehouse, distribution and fulfillment centers, kennels, animal shelters, laundromats/laundry service, drycleaners, childcare facilities, public transportation, and providers of business services including security and payroll; funeral, cemetery, and related services;

i.  **Media operations**, including newspapers, digital news sites, television, radio and other media services;

j.  **Education operations**, including educators supporting public and private K-12 schools, colleges and universities or other educational institutions, for purposes of facilitating distance learning and education continuity plans approved by the State Superintendent of Education, performing critical research or other essential functions, including public schools preparing and transporting distance-learning materials and meals to eligible students and colleges providing lodging for students (all in compliance with paragraph 12 below);

k.  **Financial services**, including banks and related financial institutions, credit unions, payday lenders, businesses that process credit card and other financial transactions, and other services related to financial markets;

l.  **Professional Services**, including legal services, accounting services, insurance services, real estate services (including appraisal and title services);

m.  **Providers of basic necessities to economically disadvantaged populations** including businesses, religious and secular non-profit organizations, food banks, homeless shelters and congregate-care facilities;

n.  **Construction and construction-related services**, including building and construction, lumber, building materials and hardware businesses, electricians, plumbers, other construction tradesmen and tradeswomen, exterminators; cleaning and janitorial, HVACR and water heating businesses; painting, moving and relocating services, other

skilled trades, and other related construction firms and professionals for maintaining essential infrastructure;

o.  **Essential public services**, defined as services necessary to maintain the safety, sanitation and essential operations of residences and essential businesses and essential business operations, including law enforcement, fire prevention and response, firearm and ammunition manufacturers and retailers, building code enforcement, security, emergency management and response, building cleaning including disinfection, automotive sales and repair, mortuaries and cemeteries;

p.  **Military or defense operations**, including employers and personnel who support the essential products and services required to meet national security commitments, including personnel working for companies and their subcontractors, who perform under contract to the Department of Defense providing materials and services to the Department of Defense and government-owned/contractor-operated and government-owned/government-operated facilities.

q.  **Essential services or product providers**, defined as vendors that provide services or products, including logistics, transportation, and technology support, child care programs and services, medical waste disposal, hazardous waste disposal, services needed to ensure the continuing operation of an essential business or operation, operation of government agencies, and to provide for the health, safety and welfare of the public;

r.  **Religious entities**, including religious and faith-based facilities, entities and groups;

s.  **Federally-designated critical infrastructure**, defined as workers and related industries identified by the U.S. Department of Homeland Security, Cybersecurity & Infrastructure Security Agency (CISA) in its "Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response," https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19, as may be amended;

t.  **Other state-designated essential businesses and operations**, defined as businesses and operations deemed essential by the Alabama Department of Public Health or the Alabama Emergency Management Agency; and

u.  **Support operations for essential businesses and operations**, defined as employees, contractors, agents, suppliers, or vendors of an essential business or operation as defined in this paragraph.

3. Operators of "essential businesses and operations" as defined in paragraph 2 may, but need not, issue credentials to their employees verifying their status as an employee of an essential business or operation. The decision to provide any such credentials is left to the discretion of the essential business or operation.

4. "Essential businesses and operations" as defined in paragraph 2 shall take all reasonable steps, for employees and customers, to (a) avoid gatherings of 10 persons or more and (b) maintain a consistent six-foot distance between persons.

5. Effective March 28, 2020, at 5:00 P.M., the following businesses, venues, and activities shall be closed to non-employees or not take place:

a.  **Entertainment venues** as follows:

  (i)  Night clubs

  (ii)  Bowling alleys

  (iii)  Arcades

  (iv)  Concert venues

  (v)  Theaters, auditoriums, and performing arts centers

  (vi)  Tourist attractions (including museums and planetariums)

  (vii)  Racetracks

  (viii)  Indoor children's play areas

  (ix)  Adult entertainment venues

  (x)  Adult novelty stores

  (xi)  Casinos

  (xii)  Bingo halls

  (xiii)  Venues operated by social clubs

b.  **Athletic facilities** and activities as follows:

  (i)  Fitness centers and commercial gyms

  (ii)  Spas and public or commercial swimming pools

  (iii)  Yoga, barre, and spin facilities

  (iv)  Spectator sports

  (v)  Sports that involve interaction with another person of closer than 6 feet

  (vi)  Activities that require use of shared sporting apparatus and equipment

7

(vii)   Activities on commercial or public playground equipment

c.  **Close-contact service providers** as follows:

(i)   Barber shops

(ii)   Hair salons

(iii)   Waxing salons

(iv)   Threading salons

(v)   Nail salons and spas

(vi)   Body art facilities and tattoo services

(vii)   Tanning salons

(viii)   Massage therapy establishments and services

6. Effective Saturday, April 4, 2020, at 5:00 P.M., all "essential retailers" as defined in paragraph 2, including grocery stores, pharmacies, and "big box" stores, shall comply with the following rules in addition to any other applicable provisions of this Order:

a.  **Emergency maximum occupancy rate.** Occupancy shall be limited to no more than 50 percent of the normal occupancy load as determined by the fire marshal. This "emergency maximum occupancy rate" shall be posted in a conspicuous place, and enough staff shall be posted at the store entrances and exits to enforce this requirement.

b.  **Social distancing.** An employee of the essential retailer place may not knowingly allow customers or patrons to congregate within six feet of one another.

c.  **Sanitation.** The essential retailer shall take reasonable steps to comply with guidelines on sanitation from the Centers for Disease Control and Prevention and the Alabama Department of Public Health.

7. Notwithstanding any other provision of this Order, a business may continue to operate through curbside pickup, delivery, remotely, or any other method that does not involve a customer entering its building, provided that the business takes all reasonable steps to ensure a consistent six-foot distance between persons.

8. Effective March 28, 2020, at 5:00 P.M., all non-work related gatherings of 10 persons or more, or non-work related gatherings of any size that cannot maintain a consistent six-foot distance between persons, are prohibited.

9. Effective immediately, any person who has tested positive for COVID-19—other than institutionalized persons—shall be quarantined to their place of residence for a period of 14 days

8

after receiving positive test results. Any person quarantined pursuant to this provision shall not leave their place of residence for any reason other than to seek necessary medical treatment. Any person requiring assistance while under quarantine may contact Alabama Voluntary Organizations Active in Disaster (VOAD), http://alvoad.communityos.org/cms/. While under quarantine, the person must shall take precautions as directed by his or her health care provider or the Department of Public Health to prevent the spread of the disease to others.

10. Effective March 28, 2020, at 5:00 P.M., all beaches shall be closed. For purposes of this section, the term "beach" means the sandy shoreline area abutting the Gulf of Mexico, whether privately or publicly owned, including beach access points.

11. Effective, March 20, 2020, all regular programs at Senior Citizen Centers shall be ended except that Senior Citizen Centers and their partners are urged to assure that their clients continue to receive needed meals via curbside pick-up or delivery.

12. Effective March 20, 2020, the following shall be closed:

a.       In-person instruction or classes at all schools, public and private, including but not limited to: elementary, secondary, postsecondary, technical, or specialty schools, and colleges and universities.

(i) This order is not intended to prevent any employers from making continued necessary staffing decisions. Employers are authorized to advise employees to work from home or maintain flexible work schedules. If working from home is not feasible, the employee should practice social distancing, maintaining consistent six-foot distance between persons, for the duration of this order and follow public health guidelines.

(ii) This order shall not apply to daytime special activities programs provided by local boards of education for children, ages 6 through 12 as of March 13, 2020, of first responders (including EMS and fire services) and licensed health-care providers and their essential employees; and essential employees of the following categories of employers: state and local governments, law enforcement, hospitals, nursing home/long-term care facilities, (including assisted living and specialty-care assisted living facilities), end-stage renal disease treatment centers, pharmacies, and grocery stores. In these special activities programs, 12 or more children shall not be allowed in any one room at the same time, and operators of these programs are encouraged to use enhanced sanitation practices consistent with guidance from the CDC and the Alabama Department of Public Health.

b.       Facilities providing child day care, including any child day care facility described in Ala. Code § 38-7-2, at which 12 or more children are in a room or other enclosed space at the same time. Center employees are encouraged to use enhanced sanitation and social-distancing practices consistent with guidance from the Centers for Disease Control and Prevention and the Alabama Department of Public Health. This Order does not change the Minimum Standards for Day Care promulgated by the Alabama Department of Human Resources, except that 12 or more children shall not be allowed in a room or other enclosed space at the same time.

9

13. Effective March 20, 2020, all Hospitals and Nursing Home/Long Term Care Facilities (including Assisted Living and Specialty Care Assisted Living Facilities) shall prohibit visitation of all visitors, as defined by the facility, and non-essential health care personnel, except for certain compassionate care situations such as maternity and end-of-life.

14. Effective March 28, 2020 at 5:00 P.M., all dental, medical, or surgical procedures shall be postponed until further notice, subject to the following exceptions:

    a.      Dental, medical, or surgical procedures necessary to treat an emergency medical condition. For purposes of this order, "emergency medical condition" is defined as a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain, psychiatric disturbances, and/or symptoms of substance abuse) such that the absence of immediate medical attention could reasonably be expected by a person's licensed medical provider to result in placing the health of the person in serious jeopardy or causing serious impairment to bodily functions or serious dysfunction of bodily organs.

    b.      Dental, medical, or surgical procedures necessary to avoid serious harm from an underlying condition or disease, or necessary as part of a patient's ongoing and active treatment.

15. Effective March 19, 2020, at 5:00 P.M., all restaurants, bars, breweries, or similar establishments shall not permit on-premises consumption of food or drink.

    a.      Such establishments may continue to offer food for take-out or delivery provided the social distancing protocols, including maintaining a consistent six-foot distance between persons, are followed.

    b.      Such establishments are strongly encouraged to offer online ordering and curbside pick-up of food.

    c.      Hospital food service areas are excluded from this order provided they have their own social distancing plan.

16. This Order shall remain in full force and effect until 5:00 P.M. on April 30, 2020. Prior to 5:00 P.M. on April 30, 2020, a determination shall be made whether to extend this Order—or, if circumstances permit, to relax this Order.

17. This Order supersedes and preempts all orders previously issued by the State Health Officer and Jefferson and Mobile County Health Officers concerning COVID-19 mitigation measures, and this Order shall remain in full force and effect until rescinded by order of the State Health Officer or its expiration. After the date this order is issued, the Jefferson and Mobile County Health Officers are authorized, after approval by the State Health Officer, to implement more stringent measures as local circumstances require.

This Order also supersedes and preempts any county and municipal orders or ordinances, whenever adopted, that purport to impose less stringent COVID-19-related curfew or quarantine measures.

10

Done on this 3rd day of April, 2020.

_____
Scott Harris, M.D., M.P.H.
State Health Officer

11



 Alabama Secretary of State

# State Health Officer Dr. Scott Harris Issues Stay-at-Home Order

Home  ›  Newsroom  ›  State Health Officer Dr. Scott Harris Issues Stay-at-Home Order

FOR IMMEDIATE RELEASE

---

Friday, April 3, 2020 – MONTGOMERY – Today, State Health Officer Dr. Scott Harris issued a Stay-at-Home Order in response to COVID-19.

The order can be found here.

### ###

Attachment 27

 Alabama Secretary of State



# Stay-at-Home Order from State Health Officer Becomes Effective Today at 5:00 P.M.

Home > Newsroom > Stay-at-Home Order from State Health Officer Becomes Effective Today at 5:00 P.M.

View   Edit   Delete   Clone

FOR IMMEDIATE RELEASE

Saturday, April 4, 2020 – MONTGOMERY – Please be reminded that the stay-at-home order issued yesterday by State Health Officer Dr. Scott Harris will become effective today at 5:00 P.M.

The order can be found here.

### #

Attachment 28

 **Alabama Secretary of State**                    

# 93 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

<u>Home</u>  >  <u>Newsroom</u>  >  93 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

FOR IMMEDIATE RELEASE

Tuesday, April 7, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 93 days left to apply for an absentee ballot.

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded <u>online</u> or requested by visiting or calling the local <u>Absentee Election Manager's office</u>.

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

> "I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

### ###

Alabama Directory   -   Online Services   -   Alabama.gov   -   Statements & Policies   -   Feeds   -   Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   -   Phone: (334) 242-7200   -   Fax: (334) 242-4993

 **Alabama Secretary of State**    

# Governor Ivey Issues State of Emergency

Home  ›  Newsroom  ›  Governor Ivey Issues State of Emergency

FOR IMMEDIATE RELEASE

Sunday, April 12, 2020 – MONTGOMERY -- Please see the link below for the Proclamation of a State of Emergency issued today by Governor Kay Ivey.

The Proclamation can be found here.

### ###

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  -  Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993

Attachment 30



# STATE OF ALABAMA

# PROCLAMATION

## BY THE GOVERNOR

**WHEREAS** the Alabama Emergency Management Act of 1955, as amended, confers upon the Governor the power to proclaim a state of emergency when a natural disaster of major proportions has occurred or is reasonably anticipated in the immediate future, *see* Ala. Code § 31-9-8 (1975);

**WHEREAS** the National Weather Service has forecast a severe weather event for the State of Alabama for today and tomorrow, with significant potential for strong winds, flooding, hail, and tornadoes;

**WHEREAS** this severe weather is expected to cause significant damage to public and private property and seriously disrupt essential utility services and systems;

**WHEREAS** this severe weather event poses a danger to the health and safety of the people of Alabama and a high risk of physical injury or death;

**WHEREAS,** due to the outbreak of the 2019 novel coronavirus known as COVID-19, a state public health emergency is currently in effect that has strained state and local resources and that has required extraordinary measures to prevent the spread and mitigate the consequences of COVID-19;

**WHEREAS** those extraordinary measures include emergency proclamations issued by me, as Governor of Alabama, on March 13, 18, 20, 23 and 26 and April 2 and 3 of 2020, the Order of the State Health Officer Suspending Certain Public Gatherings Due to Risk of Infection by COVID-19, and various local government orders related to COVID-19 ( collectively "the COVID-19 Orders"); and

**WHEREAS** this severe weather event, coupled with the COVID-19 public health emergency, poses extraordinary conditions of disaster and of extreme peril to the safety of persons and property within the State, and it is anticipated that these conditions, by reason of their magnitude, are, or are likely to be, beyond the control of the services, personnel, equipment, and facilities of any single county, city and county, or city, and will require combined forces to combat, *see* Ala. Code § 31-9-3;

**NOW THEREFORE,** I, Kay Ivey, Governor of the State of Alabama, pursuant to the relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1 *et seq.*, do hereby proclaim that a state of emergency exists in the State of Alabama, effective at 4:00 p.m. CDT on Sunday, April 12, 2020. I direct the activation of the Alabama Emergency Operations Plan (EOP) and all appropriate annexes for purposes of the State's response to this severe weather event. The Alabama Emergency Management Agency State Emergency Operations Center shall be activated for purposes of responding to this incident, as shall be all affected or potentially affected Alabama Emergency Management Divisions.

FURTHER, I hereby proclaim and direct all of the following:

### I. Applicability of COVID-19 Orders

Because this severe weather event will occur during the State's response to the COVID-19-related public health emergency, I find that it would further promote the safety and protection of the people of Alabama to clarify the applicability of the COVID-19 Orders as they relate to this severe weather event. To that end:

A. Any provision of the COVID-19 Orders is suspended to the extent that its application or enforcement would endanger any person affected by this severe weather event or impede the ability of any individuals, governmental entities, organizations, or businesses responding to this severe weather event to preserve human life, to prevent or mitigate human suffering, or to protect or repair critical infrastructure as defined by the U.S. Department of Homeland Security, Cybersecurity & Infrastructure Security Agency.

B. Except as provided in this section, nothing in this proclamation shall be construed to modify, alter, or amend any provision of the COVID-19 Orders, which shall remain in full force and effect according to their terms.

C. All persons responding to this severe weather event are encouraged to remain vigilant against the spread of COVID-19 and to comply with the COVID-19 Orders to the greatest extent possible, even when excused from compliance under this section. Shelters and community safe rooms should remain open and accessible to all individuals seeking refuge from this severe weather while implementing reasonable practices and procedures to prevent the spread of COVID-19 among those seeking shelter.

### II. Activation of the Alabama National Guard and other state agencies

I hereby direct the Alabama National Guard to prepare to be activated on order of the Governor to respond to this severe weather event, and I direct the appropriate state agencies to exercise their statutory and regulatory authority to assist the affected communities and entities in responding to and recovering from this event. I also direct the Alabama Emergency Management Agency to make the appropriate assessment of damages from this event and seek the necessary state and federal assistance for the affected areas.

### III. Price gouging

In accordance with sections 8-31-1 through 8-31-6 of the Code of Alabama, all persons are hereby placed on notice that it is unlawful for any person within the State of Alabama to impose unconscionable prices (i.e., to engage in "price gouging") for the sale or rental of any commodity or rental facility during the period of a declared state of emergency.

### IV. Waiver of federal motor-carrier regulations

Pursuant to 49 C.F.R. § 390.23, this declaration of a state of emergency facilitates a waiver of certain regulations of the U.S. Department of Transportation-Federal Motor Carrier Safety Administration (FMSCA), including 49 C.F.R. Part 395 (Hours of Service for Drivers), as it relates to the provision of emergency- or disaster-related materials, supplies, goods, and services for this severe weather event. The waiver for this event shall terminate at the earliest of (1) the conclusion of the motor carrier's or driver's direct assistance in providing emergency relief; (2) 30 days from the initial declaration of emergency; (3) the issuance of a proclamation terminating this state of emergency; or (4) any other time dictated by the FMCSA's regulations. Motor carriers that have an out-of-

service order in effect may not take advantage of the relief from regulation that this declaration provides under 49 C.F.R. § 390.23.

### V. Transportation of emergency equipment, supplies, etc.

I instruct the appropriate agencies to take necessary steps and issue the appropriate documents to expedite the movement of vehicles, or vehicles and loads, that are transporting emergency equipment, services and supplies, storm-related debris, building and construction materials, or temporary emergency buildings and their components, subject to the following rules:

A. Documents issued under authority of this proclamation shall be subject to approval and clearance by the Alabama Department of Transportation and the Alabama Law Enforcement Agency and shall cover designated state routes.

B. The director of the Alabama Department of Transportation, or his designee, may issue waivers for vehicles or combinations of vehicles and loads, whether those loads are divisible or non-divisible, with weights, dimensions, or combinations thereof exceeding the maximum limits specified by law.

C. Transporters are responsible for ensuring that they have proper oversize signs, markings, flags, and escorts as defined in the State of Alabama's rules and regulations.

D. Insurance requirements shall not be waived.

E. Nothing in this proclamation shall be construed to allow any vehicle to exceed the weight limits posted for bridges and like structures, nor shall anything in this proclamation be construed to relieve any vehicle or the carrier, owner, or driver of any vehicle from compliance with any restrictions other than those specified in this proclamation, or from any statute, rule, order, or other legal requirement not specifically waived herein.

### VI. State government office closings

State government offices may be closed at the direction of the Governor. State agency heads will receive instructions from the Governor's Office or the State Personnel Director if closures are authorized.

### VII. Actual expense reimbursement

I find that it is fair, reasonable, and appropriate that those State of Alabama employees who are required to perform disaster recovery and response services away from their home base of operations for this event be reimbursed for the actual expenses they incur while performing these services on behalf of the State of Alabama. Therefore, I authorize the reimbursement of actual and necessary expenses, as prescribed by the Fiscal Policies and Procedures Manual, for state employees who have been, are being, or may be called away from their home base in response to this state of emergency. All such claims for expense reimbursement must be reasonable and must be certified as such by the employee's agency head or appointing authority. To the extent that this order conflicts with any provision of state law, such law is hereby suspended for the duration of this state of emergency, and this order shall control.

FURTHER, I declare that this proclamation, and all subsequent orders, laws, rules, or regulations issued pursuant hereto, shall remain in full force and effect for the duration of this state of emergency, except as otherwise expressly specified.



IN WITNESS, WHEREOF, I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this the 12th day of April, 2020.

*Kay Ivey*

Kay Ivey
Governor

ATTEST:

*John H. Merrill*

John H. Merrill
Secretary of State

 Alabama Secretary of State    

# 86 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

Home  >  Newsroom  >  86 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

FOR IMMEDIATE RELEASE

Tuesday, April 14, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 86 days left to apply for an absentee ballot.

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded online or requested by visiting or calling the local Absentee Election Manager's office.

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

"I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

Attachment 32

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

###

Alabama Directory    –    Online Services    –    Alabama.gov    –    Statements & Policies    –    Feeds    –    Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616    –    Phone: (334) 242-7200    –    Fax: (334) 242-4993



 Alabama Secretary of State

# 79 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

[Home](#) › [Newsroom](#) › 79 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

FOR IMMEDIATE RELEASE

Tuesday, April 21, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 79 days left to apply for an absentee ballot.

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded online or requested by visiting or calling the local Absentee Election Manager's office.

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

> "I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close

Attachment 33

of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

### ###

Alabama Directory  –  Online Services  –  Alabama.gov  –  Statements & Policies  –  Feeds  –  Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  –  Phone: (334) 242-7200  –  Fax: (334) 242-4993

 Alabama Secretary of State

# Alabama Counties Are Now Able to Apply for COVID-19 Related Election Expense Reimbursement

Home  ›  Newsroom  ›  Alabama Counties Are Now Able to Apply for COVID-19 Related Election Expense Reimbursement

FOR IMMEDIATE RELEASE

Wednesday, April 22, 2020 – MONTGOMERY – Today, Alabama received $6,473,612 from the coronavirus stimulus package recently appropriated by Congress. The Alabama Secretary of State's Office will match 20% ($1,294,722) of this funding to prepare for and respond to election activities on July 14 as well as November 3.

In order to keep polling places safe and sanitary, the Office of the Secretary of State intends to reimburse counties for various preparation and election expenses including, but not limited to, masks, gloves, disinfectant spray, hand sanitizer, alcohol wipes and professional cleaning services to return the polling places back to their sanitary pre-election condition.

"Protecting the health and well-being of our voters is of paramount importance. We will continue to maintain close communication with the local election officials in all 67 of Alabama's counties to safeguard the opportunity for voters to appear at the polls in-person on Election Day," stated Secretary of State John H. Merrill.

Funds will be set aside to reimburse Absentee Election Managers for the added work completed due to the lengthened absentee voting period as well as to compensate poll workers with additional pay.

Attachment 34

"Poll workers and Absentee Election Managers are being tasked with an increased workload during these trying times, and it is important that they are compensated accordingly," continued Merrill. "We greatly appreciate their commitment and dedication to ensuring the electoral process continues in a safe and healthy manner."

Reports of state spending will be submitted to the U.S. Election Assistance Commission for public inspection. All resources must be expended for these purposes no later than December 31, 2020.

### ###

Alabama Directory - Online Services - Alabama.gov - Statements & Policies - Feeds - Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616 - Phone: (334) 242-7200 - Fax: (334) 242-4993

**Evans2, Hugh**

| | |
|---|---|
| From: | Jim Barton <jbarton104@gmail.com> |
| Sent: | Wednesday, April 22, 2020 10:59 AM |
| To: | Evans2, Hugh |
| Cc: | Brewer, David; Helms, Clay; Bonner, Jo; Phillip Kinney |
| Subject: | Re: Run-off elections |

Mr. Evans,

I hope you are well. I'm checking in with you on the Run-off election issues discussed last week. There has been some communication between the APJA and Sonny Brasfield with ACA to discuss options. However, at this point there are many concerns in preparing for the election.
The APJA needs a decision about the request to modify the emergency proclamation ASAP – it impacts them in a variety of ways.  If the Governor is going to modify the proclamation the judges need to ID "super" polls (voting centers), advertise the same, send post cards to thousands of citizens to advise them of temporary poll relocation.  These are just a few of the issues faced by the Probate Judges.  As you know these things take time and they require additional funds.  If the Governor is not going to amend the emergency proclamation – they will need to know that ASAP as well – so that they can work with County Commissions and County Administration to start working on finding a solution to the poll problem/issue.
Any assistance or additional information will be greatly appreciated.

Thank you,
Jim Barton


On Fri, Apr 17, 2020 at 11:33 AM Evans2, Hugh <hugh.evans2@sos.alabama.gov> wrote:

Mr. Barton, David Brewer has forwarded you email of today's date for a response.


Our team has discussed the issues you raise in that email, and we have also talked to both the Governor's legal office and the Association of County Commissions.


I believe everyone is aware of the situation and the issues involved, and are working together to find the best solution. We will keep you informed.

---

From: Brewer, David
Sent: Friday, April 17, 2020 11:28 AM
To: Jim Barton <jbarton104@gmail.com>
Cc: phillip@bartonkinney.com; Evans2, Hugh <hugh.evans2@sos.alabama.gov>; Helms, Clay

1

Attachment 35

<Clay.Helms@sos.alabama.gov>
**Subject:** RE: Run-off elections


Jim:


We have been reviewing similar issues of recent.  I have asked our General Counsel to respond to you so we stay consistent with our review.  Hugh Evans, our General Counsel, will be responding to you today.  Thank you,


DAVID A. Z. BREWER

Deputy Secretary of State & Chief of Staff

Office of the Honorable John H. Merrill

Secretary of State, State of Alabama

600 Dexter Avenue, Suite S-105

Montgomery, Alabama 36130

(334) 242-7207 Office

(334) 324-6195 Cell

---

**From:** Jim Barton <jbarton104@gmail.com>
**Sent:** Friday, April 17, 2020 7:36 AM
**To:** Brewer, David <David.Brewer@sos.alabama.gov>
**Cc:** phillip@bartonkinney.com
**Subject:** Run-off elections


David,


I hope you are well.

I sent the following to Jo Bonner and William Filmore in the Governor's office.  I've been advised that you have been contacted by Chris Reader and can assist us with our concerns.

Please let me know what your thoughts are on the following.

With the upcoming Run-off election set for 7/14, the Probate Judges foresee two issues with the current Election Code as to how elections are handled and the current CDC guidelines for Covid-19.  First,

current law [17-13-3(A)] requires that all poll workers used in the Primary must also be used for the Run-off.  With the current CDC guidelines relating to poll operations (attached)  Judge Davis doesn't see any way to implement those guidelines in most of Mobile County's polls. (I have not checked, but I am certain this issue will not be unique to Mobile).  Further, the voter turnout (though unpredictable) will be less in the Run-off as compared to the Primary election.  Judge Davis' office has received a lot of calls from poll workers (most of whom are over 70 years old) expressing concern about serving in the Run-off election.  Second, most of Mobile County's polls are not suitable for use if the CDC guidelines for Covid-19 are utilized.  The Election Code provides for use of a "voting center" for multiple precincts.  The Election Code [17-6-4(C)] requires  a local enabling act for the Voting Center Concept to be used. If the counties are allowed to use the Voting Center Concept they could combine several of the smaller precincts in with those with much larger footprints.  Such action would also require fewer Poll workers and thus would allow for implementation of the CDC guidelines.  As a remedy, under current circumstances, we would like to discuss the feasibility of Governor Ivey amending her Emergency Proclamation or issuing a new one that would allow the County Commissions to utilize the Voting Center Concept and reduce the number of polling places and workers for this Run-off to allow for implementation of the CDC guidelines. Your assistance in this matter will be greatly appreciated.

https://www.cdc.gov/coronavirus/2019-ncov/community/election-polling-locations.html

Thank you,

Jim Barton

251 656-0445

Sent from my iPhone

3

 Alabama Secretary of State 

# 72 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

<u>Home</u>  >  <u>Newsroom</u>  >  72 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

View    Edit    Delete    Clone

FOR IMMEDIATE RELEASE

Tuesday, April 28, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 72 days left to apply for an absentee ballot.

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded <u>online</u> or requested by visiting or calling the local <u>Absentee Election Manager's office</u>.

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

> "I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

Attachment 36

Case 2:20-cv-00619-AKK   Document 84-2   Filed 05/23/20   Page 44 of 79

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

###

Alabama Directory  -  Online Services  -  Alabama.gov  -  Statements & Policies  -  Feeds  -  Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616  –  Phone: (334) 242-7200  -  Fax: (334) 242-4993

**Don Davis**
*Judge of Probate*

**C. Mark Erwin**
*Chief Clerk/Administrator*

**W. Rushing Payne, Jr.**
*Chief of Staff/Chief Deputy Clerk*



Judicial Division - (251) 574-6001
Recording Division - (251) 574-6040
Records Division - (251) 574-6070
Elections Division - (251) 574-6080
Accounts Division - (251) 574-6101
Facsimile - (251) 574-6003

# PROBATE COURT OF MOBILE COUNTY, ALABAMA

May 4, 2020

**VIA ELECTRONIC MAIL AND UNITED STATES CERTIFIED MAIL**

The Honorable John H. Merrill
Secretary of State
State of Alabama
Alabama State Capitol, Suite S-102
600 Dexter Avenue
Montgomery, AL 36130

      Re:    Upcoming Alabama Primary Runoff Election in Mobile County, Alabama Scheduled
             For July 14, 2020

Dear Secretary Merrill:

      You will recall that in Alabama, our judges of probate serve as the chief election officers of their respective counties. However, notwithstanding the moniker, Alabama's judges of probate do not have total control or oversight of elections. For example, county commissions determine the election precincts, election poll locations, number of election officials utilized and number of voting machines utilized.[1] Alabama's county commissions also provide the funding for elections, some of which is reimbursed by the State following the conclusion of an election.

      Mobile County has 88 election precincts (geographic areas), which were determined by the Mobile County Commission. Each election precinct has a poll (also determined by the Mobile County Commission), at which registered voters residing within the precinct are to vote. The number of registered voters residing within a precinct varies precinct-by-precinct. The size of the locations utilized as polls are not uniform either. Many privately-owned facilities are utilized as election polls. The number of election officials assigned to a poll also varies poll-by-poll, primarily based on the number of registered voters residing within a precinct. Overall, Mobile County utilizes approximately 1,700 election officials in a county-wide election at this time.

      The Alabama Election Code provides that primary runoff elections are to be held at the same places as the first primary and the same election officers utilized.[2] Alabama law also specifies that

---

    [1]*Ala. Code* §§ 17-6-2 and 3 and 17-8-1 (1975).

    [2]*Ala. Code* § 17-13-3 (1975).

Attachment 37

The Honorable John Merrill
May 4, 2020
Page 2

an election poll shall not be changed within three (3) months before an election is to be held.[3]

At least 75 percent of the election officials that served in Mobile County's 2020 Alabama Primary Election held on March 3, 2020, were 65 years or older in age. According to information provided by the United States Centers for Disease Control & Prevention ("CDC"), these persons are considered to have a higher risk of contracting COVID-19. These persons have been urged by the CDC and Governor Kay Ivey to stay at home and avoid contact with other persons.

Many of these election officials have contacted my office and expressed concern about serving as an election official in the upcoming Alabama Primary Runoff Election scheduled for July 14, 2020. We have also received notice from some of the owners of the privately- owned facilities Mobile County customarily uses for election polls that their facilities will not be available for use in the upcoming Alabama Primary Runoff Election because of the COVID-19 pandemic. Additionally, this office has fielded numerous calls from citizens who are concerned about going to an election poll on July 14, 2020, as a result of the COVID-19 pandemic.

It is Mobile County's intention and plan to utilize the CDC's recommended guidelines for election polls in terms of personal protective equipment and social distancing of election officials and voters. We have represented this to our election officials and the general public. We are in the process of procuring the necessary supplies to accomplish such.

In mid March 2020, I verbally expressed concern to the Mobile County Commission about our ability to properly conduct the July 14, 2020 Alabama Primary Election in accordance with all applicable election laws (federal and state) and the CDC recommended guidelines. I formally expressed these concerns in writing to the Mobile County Commission on April 16, 2020. Members of Governor Ivey's staff were notified on April 16, 2020, by electronic mail of this concern and on March 17, 2020, members of your staff confirmed by electronic mail that they were aware of the concern that had been shared with Governor Ivey's office by a representative of the Court.

Mobile County conducted an assessment of the facilities it used in the March 3, 2020 Alabama Primary Election. This assessment reflects that 46 of Mobile County's 88 poll locations *cannot* accommodate the same number of *election officials* who worked at the *same facilities[4]* used in the Primary Election. Accordingly, these election polls could not accommodate any voters. Additionally, two (2) facilities utilized in the Primary Election are not available for the Primary Runoff Election. Of the remaining 40 poll locations, ten (10) poll sites have less than 400 square

---

[3]*Ala. Code* § 17-6-4(d) (1975).

[4]At ten (10) of these locations there are adjacent larger rooms that we may be able to utilize for the Runoff Election that would accommodate the same number of election officials who worked at these polls in the Primary Election.

PROBATE COURT OF MOBILE COUNTY, ALABAMA
Post Office Box 7 • Mobile, Alabama 36601
email: probatecourt@probate.mobilecountyal.gov • website: www.probate.mobilecountyal.gov

The Honorable John Merrill
May 4, 2020
Page 3

feet of space in excess of what is needed to accommodate the same number of election officials who worked at the same facility in the Primary Election. Additionally, several of the last category of poll locations have permanent fixtures and equipment that impede the ability to use the entire square footage of the facility. The assessment further reflected that in many of the election polls that can accommodate the same number of election officials who worked at these polls on March 3, 2020, these polls could only accommodate a handful of voters within the election poll at the same time if compliance with the CDC's social distancing guidelines is maintained.[5]

Contemporaneously herewith, I have formally notified Governor Kay Ivey, Alabama Attorney General Steve Marshall, the United States Department of Justice, and the United States Attorney for the Southern District of Alabama of the aforesaid problems, with copies to other elected officials, chairpersons of the two (2) state political parties, and the candidates who are on Mobile County's Primary Runoff ballots.

We are approximately 9 weeks out from the Alabama Primary Runoff Election. I am at a loss to determine how I will be able to discharge my legal responsibilities relating to the Runoff Election that is compliant with state and federal election law and also compliant with the CDC's recommended social distancing guidelines relating to the COVID-19 pandemic.

I respectfully request that you provide instruction as to how I should approach this upcoming election and fulfill my legal duties and responsibilities as Mobile County's chief election officer.

Respectfully yours,

Don Davis
Judge of Probate and Chief Election Officer

cc:     The Honorable Kay Ivey
        The Honorable Steve Marshall
        Members of the Mobile County Commission
        Members of the Mobile County Legislative Delegation
        The Honorable Sam Cochran

---

[5]For example: Precinct Number 66 (Creekwood Church of Christ) has 7,606 voters assigned to it. The room utilized at this poll for elections has 5,227 square feet of space, of which 4320 would be needed to accommodate assigned election officials per the CDC COVID-19 pandemic social distancing guidelines. If the guidelines are utilized and all of the same election officials are utilized, only six (6) voters could be inside the poll at one time to participate in the Runoff Election.

PROBATE COURT OF MOBILE COUNTY, ALABAMA
Post Office Box 7 • Mobile, Alabama 36601
email: probatecourt@probate.mobilecountyal.gov • website: www.probate.mobilecountyal.gov

The Honorable John Merrill
May 4, 2020
Page 4

      The Honorable Jo Jo Schwarzauer
      The Honorable Eric S. Dreiband
      The Honorable Richard W. Moore
      Mr. Jeff Sessions
      Mr. Tommy Tuberville
      Mr. Bill Hightower
      Mr. James Averhart
      Ms. Kiani Al Gardner
      Mr. Fred Bell
      Ms. Tonya Smith Chesnut
      Mr. Ty Burden
      Ms. Sherry Dillihay-McDade
      Mrs. Terry Lathan
      Mr. Christopher J. England

 **Alabama Secretary of State** 

# How to Apply for an Absentee Ballot for the July 14, 2020 Primary Runoff Election

Home  >  Newsroom  >  How to Apply for an Absentee Ballot for the July 14, 2020 Primary Runoff Election

FOR IMMEDIATE RELEASE

_____

Tuesday, May 5, 2020 – MONTGOMERY – This week, the Office of the Secretary of State launched a multi-media campaign to educate voters across the state about ways they can participate in the upcoming July 14, 2020 Primary Runoff Election.

The ad will be aired on TV and radio stations across the state as well as various digital sites.

"There is no freedom more integral to this Republic than the right to vote and participate in the democratic process," stated Secretary of State John H. Merrill. "As your 53rd Secretary of State, I have worked to make it easy to vote and hard to cheat. We will continue to see that this is the case during the coronavirus outbreak."

Amid coronavirus concerns and the declared states of emergency, Secretary Merrill has encouraged anyone who is concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot. As of today, May 5, there are 65 days left to apply for an absentee ballot application.

The following video walks voters through applying for an absentee ballot:

How to Apply for Absentee Ballot for the July 14, 2020 Primary Runoff Election

Attachment 38

"We have made a concerted effort to see that Alabamians are able to freely participate in the electoral process without having to compromise their health or well-being. Voters who are interested in appearing at the polls in-person on Election Day can restassured knowing our office has taken extensive measures to keep the polling places safe and secure for voters, poll workers and anyone else involved in the elections process," added Merrill.

Absentee ballot applications can be downloaded <u>online</u> or requested by visiting or calling the local <u>Absentee Election Manager's office</u>. Voters may also contact the Secretary of State's Election Division at (334) 242-7210 to request an absentee ballot application.

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

For questions or concerns, please contact the Office of the Secretary of State at (334) 242-7200.

### ###

<u>Alabama Directory</u>  -  <u>Online Services</u>  -  <u>Alabama.gov</u>  -  <u>Statements & Policies</u>  -  <u>Feeds</u>  -
<u>Contact Us</u>

P.O. Box 5616 Montgomery, AL 36103-5616  -  Phone: (334) 242-7200  -  Fax: (334) 242-4993



# 2020 CARES Act Funds

Coronavirus Aid, Relief, and Economic Security Act

Attachment 39

On March 27, 2020 President Trump signed the Coronavirus Aid, Relief, and Economic Act (CARES Act) into law in response to the COVID-19 pandemic. The CARES Act included $400 million in new Help America Vote Act (HAVA) Emergency funds made available to states through the U.S. Election Assistance (EAC). EAC allocated $6,473,612 to the State of Alabama for it to prevent, prepare and respond to election activities related to the July 14 Primary Runoff Election and the November 3 General Election.

Alabama is required to match this funding by 20% ($1,294,722).  While some states are considering or requiring local jurisdictions to match what they are allocated, Secretary of State John Merrill has ordered the entire match to be paid from Secretary of State's funds.  Secretary Merrill understands the pressure being placed on Alabama's counties at this time and does not want them to have to worry about finding the funds to be eligible for CARES Act funding.  With the $6,473,612 allotment from EAC and the $1,294,722 match from the Alabama Secretary of State's Office the total funding available to Alabama is $7,768,334.

# 3 Ways the Money Will be Allocated

- Absentee Election Manager reimbursement for their days worked from March 4, 2020 to May 19, 2020

- An additional $25.00 supplemental pay for duly appointed poll workers who work on election day

- Reimburse County Commissions for personal protective equipment, masks, gloves, disinfectant spray, cleaning supplies, hand sanitizer, alcohol wipes and professional cleaning services

# Absentee Election Manager Reimbursement

- The Secretary of State will reimburse counties, from CARES Act funds, for their AEM's days worked from March 4, 2020 until May 19, 2020

- To receive this reimbursement, a county will be required to attach the AEM Attendance Report to document the days worked in their COVID-19 Application to the Secretary of State

- The days worked from May 20, 2020 until July 21, 2020 will fall under the normal rules where the State Comptroller's Office reimburses counties for the AEM's 46 days worked during the 63 day calendar period

# Supplemental Poll Workers' Pay

- The Secretary of State's Office will reimburse the county to pay each duly appointed poll worker who works on election day an additional $25.00 (AEMs are not eligible this supplemental pay)

- This supplemental pay will be available for both the July 14 election and the November 3 election

- To receive this reimbursement, the county will be required to attach a list of all county's poll workers to their COVID-19 Application submitted to the Secretary of State

# PPE, Cleaning Supplies, & Cleaning Services

- The Secretary of State's office will reimburse counties for personal protective equipment (PPE), masks, gloves, disinfectant spray, cleaning supplies, hand sanitizer, alcohol wipes, and professional cleaning services to prepare and return polling places to a safe and sanitary condition

- Items must be approved for use by the CDC, the EPA, or other governmental authority

- This is not an all-inclusive list and the Secretary of State will only consider reasonable requests

- For reimbursement, receipts or quotes will be required to be attached to the county's COVID-19 Application

# Applying to be Reimbursed Through the CARES Act

- Only a County Commission will be eligible to submit for reimbursement from the CARES Act funds for their county to the Secretary of State

- County Commissions serve as the legislative bodies for their respective counties responsible for general purchasing and procurement for all agencies, offices, and departments of the county government.

- Due to county commissions general purchasing and procurement responsibilities, they ensure that all requested items or services comply with state and local law purchasing requirements

- Therefore, county commissions are the only public entities in Alabama eligible to request reimbursement from CARES Act funding

# Application for Election Expenses Related to COVID-19

- The application is available on the Secretary of State website (www.sos.Alabama.gov)

- A County Commission can only submit a COVID-19 Application twice, one for the July 14 election and one for the November 3 election

- The deadline for the July 14 election will be June 12, 2020

- The deadline for the November 3 election will be October 2, 2020

- Any items approved for COVID-19 funding, through CARES Act funds, <u>CANNOT</u> be requested by the county of its *Claim for Reimbursement of Election Expense* form submitted to the State Comptroller's Office

# Application for Election Expenses Related to COVID-19(cont'd)

- All items being requested for reimbursement should be listed separately on the application to allow for more efficient approvals

- If additional pages are required to list all items please print as many copies of the "Items Requested for Funding" page of the application as needed

- All applications require the signature of the appropriate election official requesting funds, ex. Sheriff, Judge of Probate, AEM, and also by the Chair/President of the county's County Commission

- The signature of the Chair/President of the County Commission must be notarized

# Approval and Disbursement Process for Funds

- Counties will submit applications by June 12 and October 2 for the corresponding elections

- The Secretary of State's Office will then review all applications received for completeness, reasonableness, and correctness

- The Secretary of State's Office will then notify the County Commission via email if the reimbursement is approved or denied

- After notification to a county the Secretary of State's Office will then process the requests and disburse each county their reimbursement via a mailed check

For complete transparency, the Secretary of State's Office will be reporting to the United States Election Assistance Commission how the funding was allocated and expended in Alabama. Please ensure that all requests made for the CARES Funds are reasonable requests.

  Alabama Secretary of State ☰

# Governor Ivey Shares New Information on Runoff Election, Businesses and More

<u>Home</u>  ›  <u>Newsroom</u>  ›  Governor Ivey Shares New Information on Runoff Election, Businesses and More

FOR IMMEDIATE RELEASE

Friday, May 8, 2020 – MONTGOMERY – Governor Ivey addressed the July 14 Primary Runoff Election, liability protections for businesses and health care providers, the extension of the State of Emergency and more in today's supplemental States of Emergency.

Read more below:

<u>Eighth Supplemental State of Emergency</u>

<u>Ninth Supplemental State of Emergency</u>

### ###

<u>Alabama Directory</u>  –  <u>Online Services</u>  –  <u>Alabama.gov</u>  –  <u>Statements & Policies</u>  –  <u>Feeds</u>  – <u>Contact Us</u>

P.O. Box 5616 Montgomery, AL 36103-5616  –  Phone: (334) 242-7200  –  Fax: (334) 242-4993

Attachment 40



# STATE OF ALABAMA
# PROCLAMATION
## BY THE GOVERNOR

**WHEREAS**, on March 13, 2020, I declared the existence of a state public health emergency based on the appearance of the 2019 novel coronavirus known as COVID-19 in the State of Alabama as the result of the national epidemic and international pandemic;

**WHEREAS** my March 13, 2020, proclamation included provisions designed to assist in the delivery of patient care should COVID-19 cases overwhelm health care providers in Alabama;

**WHEREAS** my March 13, 2020, proclamation included certain liability protections for health care facilities, health care professionals, and allied professions and occupations providing services in response to this pandemic pursuant to the Alabama Emergency Management Act of 1955, as amended, *see* Ala. Code § 31-9-16;

**WHEREAS** the health threat posed by COVID-19 is severe and potentially lethal to many citizens of Alabama;

**WHEREAS**, in accordance with Ala. Code § 31-9-6 and § 31-9-8, I have concluded that it is necessary to promote and secure the safety and protection of the civilian population by ensuring that Alabama's health care providers have adequate protections and our health care system has adequate capacity to provide health care for the people of this State;

**WHEREAS** I have also issued supplemental proclamations to further address the occurrence of COVID-19 and its consequences in the State of Alabama and its threats to, and adverse impacts on, public health, safety, welfare, and economic security;

**WHEREAS** the Centers for Disease Control and Prevention ("CDC") has recommended safety practices, including social distancing and avoiding group gatherings;

**WHEREAS** the Alabama State Health Officer, on March 17, 2020, issued an order suspending public gatherings due to risk of infection by COVID-19, which has been amended and which continues to be amended, and which has been supplemented by informal "guidelines" for various activities and establishments;

**WHEREAS** the various practices put into place to slow the spread of COVID-19 have been helpful from a public health perspective, but they have also required the closure of numerous businesses and resulted in damage to the economy of the State and the Nation and caused economic hardship to working people and their families;

**WHEREAS** studies have shown that mortality rates increase significantly during periods of high unemployment;

**WHEREAS** encouraging businesses to reopen in a responsible manner will both improve public health and preserve the economic well-being of the citizens of Alabama by reducing unemployment and raising wages;

Attachment 41

WHEREAS, after consulting with the President of the United States, I determined that businesses should begin to reopen in May 2020 while following applicable public health guidance to protect employees, customers, and members of the public;

WHEREAS, on April 28, 2020, the Alabama State Health Officer, with my support, issued an order to begin the process of allowing businesses and the economy in Alabama to reopen consistent with preserving the public health;

WHEREAS many aspects of this public health emergency remain uncertain and new impacts and repercussions of COVID-19 are continually coming to light and thus require flexibility and adaptability by all levels of government;

WHEREAS, as a result of this continuing uncertainty, businesses have been reluctant to reopen—or, where partially open, to fully reopen—for fear of lawsuits and the risk of the associated expense and liability;

WHEREAS my office has worked with representatives of business and industry to obtain information on concerns and challenges associated with re-starting the economy of this State; and

WHEREAS my office has also worked with representatives of Alabama trial attorneys to obtain information on concerns and challenges faced by people who have been, or who may be, harmed in the course of the re-opening process;

NOW THEREFORE, I, Kay Ivey, Governor of the State of Alabama, pursuant to the relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1, *et seq.* (hereinafter, the "Alabama Emergency Management Act"), do hereby proclaim the existence of conditions that warrant implementation of additional extraordinary measures and relief during the state health emergency now in effect in order to guard public health and protect human life. I therefore proclaim and direct all of the following:

## I. Liability protections for businesses and health care providers

A. **Findings.** I further find and declare that to preserve the lives and property of the people of this State it is necessary:

1. That businesses remain open and reopen in a manner consistent with applicable public health guidance and they are hereby authorized to do so;

2. That COVID-19 cases have put, and will continue to put, a significant strain on the health care facilities, health care providers, and health care resources of this State and that COVID-19 cases have undermined, and will continue to undermine, the ability to deliver patient care or obtain certain equipment or materials in the traditional, normal, or customary manner;

3. That COVID-19 has affected, and will continue to affect, our health care system in unique and potentially devastating ways, and our health care facilities, health care professionals, and their supporting workers need protection to respond to this pandemic and to do what they can do to continue to provide treatment and services for the people of Alabama;

4. That any university or public institution of higher education in the State of Alabama is hereby authorized, during the time period covered by the public health emergency declared on March 13, 2020, to design, manufacture, and distribute any PPE for use by healthcare providers and others in order to alleviate the shortage of PPE resulting from the COVID-19 pandemic;

5. That likewise, such institutions are authorized to design, manufacture, and distribute COVID-19 testing materials, provided they do so under the

direction of the Alabama Department of Public Health and in accordance with that Department's specifications;

6. That reasonable protections from the risk and expense of lawsuits, be provided to businesses and health care providers that comply with or reasonably attempt to comply with applicable public health guidance will encourage businesses to re-open and repair the damage to the economy of the State and the tax revenues of the State and of local governments; and

7. That providing such a safe harbor to businesses and healthcare providers that operate reasonably consistent with applicable public health guidance will help ameliorate the social harms of a closed economy and the spread of COVID-19.

B. **Definitions.** For purposes of this supplemental proclamation, the following terms shall have the following meanings:

1. "**Applicable public health guidance**" means any emergency proclamation or order issued by the Governor of Alabama, or any order or guidelines document issued by the Alabama State Health Officer, concerning the proper means of preventing the spread of COVID-19.

2. "**Business, health care provider, or other covered entity**" means an individual, partnership, association, corporation, health care provider, other business entity or organization, or any agency or instrumentality of the State of Alabama, including any university or public institution of higher education in the State of Alabama, whether any such individual or entity is for profit or not for profit, including its directors, officers, trustees, managers, members, employees, volunteers, and agents.

3. "**COVID-19**" means the COVID-19 virus and any mutations thereof.

4. "**Covered COVID-19 response activity**" means any or all of the following activities by a business, health care provider or other covered entity:

   a. Any testing, distribution of testing materials, monitoring, collecting, reporting, tracking, tracing, investigating, or disclosing exposures or other information in connection with COVID-19 during the ongoing state of emergency;

   b. Any performance or provision of health care services or treatment by a health care provider that resulted from, was negatively affected by, was negatively impacted by a lack of resources caused by, or was done in response to the COVID-19 pandemic or the State's response thereto;

   c. Any design, manufacture, distribution, allowance, use, or non-use of precautionary equipment or supplies such as PPE in connection with COVID-19 during the ongoing state of emergency;

   d. Any design or manufacture of testing materials done under the direction of ADPH and in accordance with ADPH's specifications.

5. "**COVID-19 transmission**" means any actual, alleged, or feared exposure to or contraction of a COVID-19 infection while a business, health care provider or other covered entity is engaged in any business activity, whether on the premises of the business, health care provider, or other covered entity or otherwise during the ongoing state of emergency.

6. **"COVID-19 testing materials"** means materials necessary for the collecting, handling, transporting, and testing of clinical specimens from persons for COVID-19.

7. **"Health care services or treatment"** means those services and treatment defined by Alabama law and Alabama Code §§ 6-5-540 *et seq.*

8. **"Health care provider"** means any health care facility, professional, or person as defined in the Alabama Code and includes, but is not limited to:

   a. Any health care provider as that term is defined in Alabama Code § 6-5-542(1) or any of the providers defined in § 6-5-481(1)-(8);

   b. Any health care facility licensed or approved in the State of Alabama, including, but not limited to, any facility licensed or approved by the Alabama Department of Public Health or mental health facility certified by the Alabama Department of Mental Health, including any health care facility or pharmacy operating and providing services pursuant to the provisions outlined in my Emergency Executive Order dated April 2, 2020 and any support personnel of such facility or pharmacy;

   c. Any medical or health care professional, individual or entity, holding a license, registration, permit, certification, or approval (including a temporary emergency license, registration, permit, certification, or approval) to practice a health care profession or occupation in Alabama, including under the Public Readiness and Emergency Preparedness Act and any declaration of the Department of Health and Human Services in accordance with that Act, under any of my COVID-19-related emergency proclamations, under any rule or regulation promulgated by a licensing board or agency pursuant to such emergency proclamations, or otherwise in response to the COVID-19 pandemic and including any support personnel of any such individual or entity.

9. **"PPE"** means personal protective equipment.

10. **"Serious physical injury"** means a death or an injury that requires either in-patient hospitalization of at least 48 hours, permanent impairment of a bodily function, or permanent damage to a body structure.

C. **Emergency protections.**

1. **Liability protections.** A business, health care provider, or other covered entity shall not be liable for the death or injury to persons or for damage to property in any way arising from any act or omission related to, or in connection with, COVID-19 transmission or a covered COVID-19 response activity, unless a claimant shows by clear and convincing evidence that the claimant's alleged death, injury, or damage was caused by the business, health care provider, or other covered entity's wanton, reckless, willful, or intentional misconduct.

2. **Limitations on damages.** In those instances where liability is established under Section I.C.1 and the acts or omissions do not result in serious physical injury, a business, health care provider, or other covered entity's liability shall be limited to actual economic compensatory damages, and in no event shall the business, health care provider, or other covered entity be liable for non-economic or punitive damages.  A party asserting a wrongful death claim under Section I.C.1 is only entitled to an award of punitive damages.

3. **Accrued causes of action**. For any cause of action relating to COVID-19 transmission or a covered COVID-19 response activity where the cause of action accrued before the issuance of this proclamation and for which a court holds that the provisions of Section I.C.1 and I.C.2 do not apply, the following shall apply:

    a. **Standard of Care.** As a matter of law, a business, health care provider, or other covered entity shall not be liable for negligence, premises liability, or for any non-wanton, non-willful, or non-intentional civil cause of action with respect to any individual or entity relating to or in connection with COVID-19 transmission or any covered COVID-19 response activity unless the claimant proves by clear and convincing evidence that the business, health care provider, or other covered entity did not reasonably attempt to comply with the then applicable public health guidance.

    b. **Adjustment of remedies.** Notwithstanding any other provision of law, a business, health care provider, or other covered entity shall not be liable for damages from mental anguish or emotional distress or for punitive damages but could be liable for economic compensatory damages in a cause of action that does not involve serious physical injury. This subsection shall not prohibit the awarding of punitive damages for wrongful death claims, but no other damages shall be allowed for such claims.

D. **Preservation of existing defenses.**

1. **General preservation of existing defenses.** Nothing in this proclamation shall be construed to preempt, remove, displace, repeal, or limit in any way any defense or right that exists under law that would be applicable to any business, health care provider, or other covered entity sued after the effective date of this proclamation. The immunity provided by this proclamation is in addition to and cumulative of other defenses and rights that exist under law.

2. **Specific preservation of previous proclamations concerning health care providers.** If the liability protections contained in this proclamation are adjudged not to cover a health care provider for any reason, then nothing in this proclamation shall be construed to limit, impair, or supersede my proclamation dated March 13, 2020, or any other State law presently governing legal standards or procedures, including judicial decisional law, in any civil action against a health care provider. In addition, for cases where the health care services or treatment provided by the health care provider do not result from or are not affected by the COVID-19 pandemic or do not result from, are not affected by, or are not in support of the State's response to the COVID-19 pandemic, my previous emergency proclamations and existing Alabama law and standards shall govern the action as outlined in Alabama Code §§ 6-5-540 *et seq.*

E. **General provisions.**

1. **No effect on existing benefits.** Nothing in this proclamation shall be construed to affect the right of any person to receive benefits to which he or she would otherwise be entitled under the Alabama Emergency Management Act or the Workers' Compensation Act.

2. **Construction.** Notwithstanding any other provision of law, the provisions of this proclamation shall be construed *in pari materia* with the Alabama Emergency Management Act and with any subsequently enacted law granting protections from lawsuits to covered entities.

3. **Severability**. The provisions of this proclamation are severable.  If any provision of this proclamation is declared invalid or unconstitutional, its remaining provisions shall continue in effect.  Without limiting the generality of the foregoing, if a court holds that the standard of care in Section I.C.1 (wanton, reckless, willful, or intentional misconduct) is invalid, the following shall apply in place of that standard of care: (1) failure to comply with or reasonably attempt to comply with applicable public health guidance; or (2) willful misconduct, gross negligence, or bad faith.

4. **Effectiveness**. The provisions of this proclamation shall become effective upon my signature and its filing with the Secretary of State and shall be retroactive and effective for acts or omissions occurring from March 13, 2020, until the State COVID-19 public health emergency is terminated.

    **FURTHER,** the provisions of this proclamation shall have the full force and effect of law, and all inconsistent laws, or any provisions thereof, are hereby suspended.



IN WITNESS, WHEREOF, I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this 8th day of May, 2020.

_Kay Ivey_
Kay Ivey
Governor

ATTEST:

_John H. Merrill_
John H. Merrill
Secretary of State



# STATE OF ALABAMA
# P R O C L A M A T I O N
## BY THE GOVERNOR

**WHEREAS**, on March 13, 2020, I declared the existence of a state public health emergency based on the appearance of the 2019 novel coronavirus known as COVID-19 in the State of Alabama;

**WHEREAS** that initial proclamation included provisions designed to assist in preventing the spread of COVID-19 and in mitigating the consequences of COVID-19;

**WHEREAS**, on March 18, 20, 23, and 26 and April 2, 3, and 13 of 2020, I issued supplemental proclamations to further address the occurrence of COVID-19 in the State of Alabama; and

**WHEREAS** new implications of COVID-19 come to light on a continual basis, requiring flexibility and adaptability by all levels of government within the State of Alabama;

**NOW THEREFORE**, I, Kay Ivey, Governor of the State of Alabama, pursuant to the relevant provisions of the Alabama Emergency Management Act of 1955, as amended, Ala. Code §§ 31-9-1, *et seq.*, do hereby proclaim the existence of conditions that warrant implementation of additional extraordinary measures and relief during the state public health emergency now in effect in order to guard public health and protect human life. I therefore proclaim and direct all of the following:

### I. Rural Electric Cooperatives

I find that the State's electric cooperatives provide essential services that are necessary to protect the safety and security of the citizens of Alabama. To continue providing those services during the COVID-19 pandemic, the cooperatives may need access to working capital and operating loans and lines of credit financing, including access to emergency loans. Therefore, the procedural requirements of Ala. Code Sections 41-4-16, 37-6-2, and 37-7-12 and Ala. Admin. Code rule 355-2-1-.02 relating to publication of notice in newspapers, the holding of public hearings, and the filing of a petition with the Department of Finance five days before a public hearing are hereby suspended for the duration of this order. All other requirements of these laws remain in full force and effect, including the requirement to obtain the consent of the Finance Director before incurring debt, except that, in the case of an emergency loan from a government agency which was approved by that agency after April 3, 2020 and made before the effective date of this order, the electric cooperative shall have the ability to obtain the Department's ratifying consent to such debt as long as the petition is filed within ten days of the date of this order.

### II. Administration of the July 14, 2020 Runoff Election

I find that the government response to COVID-19 requires a careful balance between concerns for the public health and safety, for the administration of the July 14, 2020 Runoff Election that best meets the needs of Alabama's counties, and for the right of the public to exercise the right to vote.  To that end:

Attachment 42

A. Notwithstanding the provisions of Ala. Code § 17-13-3, or any other law to the contrary, and only for the July 14, 2020 Primary Runoff Election, a judge of probate may determine if fewer precinct election officials or poll workers than the total number of election officials or poll workers who worked the primary election are necessary to conduct the election. If fewer workers are necessary, the judge of probate may conduct the election with the total number of workers he or she deems necessary to conduct the election.

B. Notwithstanding the provisions of Ala. Code § 17-8-9, or any other law to the contrary, and only for the July 14, 2020 Primary Runoff Election, a judge of probate may conduct a school of instruction for precinct election officials or poll workers via online video or recorded telephone call.

C. For the July 14, 2020 Primary Runoff Election, all precinct election officials or poll workers shall be entitled to all compensation provided for at Ala. Code § 17-8-12. All judges of probate shall ensure that all precinct election officials or poll workers are adequately prepared to conduct the election.

D. Any expenses and costs incurred by a county, and due to the above, shall be reimbursed in accordance with Ala. Code § 17-16-1, *et seq.*.

### III. Protection Against Evictions

My supplemental emergency proclamation issued April 3, 2020, is hereby amended to specify that the protection against evictions applies only to evictions based on nonpayment. Specifically, the relevant section of that supplemental proclamation is amended to read as follows:

\* \* \*

Because COVID-19 mitigation efforts require people to remain at their place of residence, I find that it would promote the safety and protection of the civilian population to grant temporary relief from residential evictions and foreclosures due to nonpayment. To that end: All state, county, and local law enforcement officers are hereby directed to cease enforcement of any order that would result in the displacement of a person from his or her place of residence for reasons related to the nonpayment of their lease, mortgage, or other payment obligation. Nothing in this section shall be construed as relieving any individual of the obligation to pay rent, to make mortgage payments, or to comply with any other obligation that an individual may have under a rental agreement or mortgage.

### IV. Extension of Emergency

Pursuant to Ala. Code § 31-9-8, a State of Emergency proclamation expires sixty days from the issuance of such proclamation unless extended by proclamation of the Governor. Due to the continuing impact of the 2019 novel coronavirus known as COVID-19 on the State of Alabama, the conditions of disaster and extreme peril to the safety of persons and property within the State of Alabama continue to exist. Therefore, I hereby extend the State of Emergency issued on March 13, 2020, for another sixty days unless sooner terminated.

**FURTHER**, to the extent a provision in this supplemental proclamation conflicts with any provision of state law, that law is hereby suspended for the duration of this state of emergency, and this proclamation shall control.

**FURTHER**, I declare that this proclamation and all subsequent orders, laws, rules, or regulations issued pursuant hereto shall remain in full force and effect for the duration of the public health emergency unless rescinded or extended by proclamation.



IN WITNESS, WHEREOF, I have hereunto set my hand and caused the Great Seal to be affixed by the Secretary of State at the State Capitol in the City of Montgomery on this 8th day of May, 2020.

Kay Ivey

Kay Ivey
Governor

ATTEST:

John H. Merrill

John H. Merrill
Secretary of State

 

Alabama Secretary of State

# 58 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

<u>Home</u>  >  <u>Newsroom</u>  >  58 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

FOR IMMEDIATE RELEASE

Tuesday, May 12, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 58 days left to apply for an absentee ballot.

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded <u>online</u> or requested by visiting or calling the local <u>Absentee Election Manager's office</u>

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

> "I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close

Attachment 43

Case 2:20-cv-00619-ANR    Document 34-2    Filed 05/22/20    Page 74 of 79

of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

The following video walks voters through applying for an absentee ballot:

How to Apply for an Absentee Ballot for the July 14, 2020 Primary Runoff Election

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

###

Alabama Directory   -   Online Services   -   Alabama.gov   -   Statements & Policies   -   Feeds   -   Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   -   Phone: (334) 242-7200   -   Fax: (334) 242-4993



ALABAMA STATE CAPITOL
600 DEXTER AVENUE
SUITE S-105
MONTGOMERY, AL 36130

(334) 242-7200
FAX (334) 242-4993
WWW.SOS.ALABAMA.GOV
JOHN.MERRILL@SOS.ALABAMA.GOV

# JOHN H. MERRILL
## SECRETARY OF STATE

May 14, 2020

Dear Absentee Election Managers:

As you know, an Alabama voter may apply for an absentee ballot by marking on the absentee ballot application one of the two reasons that read *"I have a physical illness or infirmity which prevents my attendance at the polls."* Secretary Merrill promulgated Emergency Administrative Rule 820-2-3-.06-.01ER (see enclosed) that states any voter who determines it is impossible or unreasonable to vote at their polling place for the Primary Runoff Election of 2020 due to the declared states of emergency shall be eligible to check the box on the absentee ballot application that:

*"I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"*

However, the absentee ballot affidavit envelope does not contain the same exact language in its list of reasons for voting an absentee ballot. On the affidavit envelope (see enclosed), the language reads *"I am physically incapacitated and will not be able to vote in person on election day."*

You may receive questions from voters as to which reason to select on the affidavit envelope if the voter applied for an absentee ballot due to physical illness or infirmity, especially since voters concerned about COVID-19 are permitted by emergency rule to select the first "physical illness or infirmity" reason in applying for an absentee ballot.

Please advise these voters that they should mark on the affidavit envelope the reason that reads *"I am physically incapacitated and will not be able to vote in person on election day"* if they are voting absentee in accordance with the emergency administrative rule.

If you have any questions about this message, please do not hesitate to contact Clay Helms, Director of Elections, at 334-353-7177 or Clay.Helms@sos.alabama.gov.

Sincerely,

John H. Merrill
Secretary of State

Attachment 44

    

Alabama Secretary of State

# 51 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

Home  >  Newsroom  >  51 Days Left to Apply for an Absentee Ballot for Primary Runoff Election

**FOR IMMEDIATE RELEASE**

Tuesday, May 19, 2020 – MONTGOMERY – Ahead of the July 14 Primary Runoff Election, Secretary Merrill reminds Alabama voters that there are 51 days left to apply for an absentee ballot.

In order to protect the safety and well-being of our voters, Secretary Merrill encourages those who are concerned about contracting or spreading the coronavirus to apply for and cast an absentee ballot.

Absentee ballot applications can be downloaded online or requested by visiting or calling the local Absentee Election Manager's office.

Voters may also contact the Secretary of State's Office at (334) 242-7210 to request an absentee ballot application.

Due to the declared states of emergency, any qualified voter who determines it is impossible or unreasonable to vote at their polling place shall be eligible to check the box on the absentee ballot application that is most applicable to that individual. In the case none of the boxes are appropriate, voters can check the box which reads as follows:

> "I have a physical illness or infirmity which prevents my attendance at the polls. [ID REQUIRED]"

For the July 14 Primary Runoff Election, the deadline to register to vote is Monday, June 29, the deadline to submit an absentee ballot application is Thursday, July 9, the deadline to return an absentee ballot to the Absentee Election Manager is the close

Attachment 45

of business Monday, July 13, and the last day to postmark an absentee ballot is Monday, July 13.

Voters who are eligible to vote pursuant to the Uniformed and Overseas Absentee Voting Act will have until Tuesday, July 14 to postmark an absentee ballot.

The following video walks voters through applying for an absentee ballot:

How to Apply for an Absentee Ballot for the July 14, 2020 Primary Runoff Election

To learn more about testing locations and options related to the coronavirus, please call 1-888-264-2256 or visit CDC.gov.

### #

Alabama Directory   –   Online Services   –   Alabama.gov   –   Statements & Policies   –   Feeds   –   Contact Us

P.O. Box 5616 Montgomery, AL 36103-5616   –   Phone: (334) 242-7200   –   Fax: (334) 242-4993

Precincts and Polling Locations in the State of Alabama

| County | Precincts | Polling Places |
|---|---|---|
| Autauga | 18 | 18 |
| Baldwin | 50 | 50 |
| Barbour | 21 | 17 |
| Bibb | 14 | 8 |
| Blount | 25 | 25 |
| Bullock | 16 | 16 |
| Butler | 22 | 22 |
| Calhoun | 44 | 44 |
| Chambers | 36 | 16 |
| Cherokee | 20 | 23 |
| Chilton | 18 | 18 |
| Choctaw | 30 | 30 |
| Clarke | 50 | 27 |
| Clay | 25 | 17 |
| Cleburne | 14 | 14 |
| Coffee | 29 | 29 |
| Colbert | 16 | 34 |
| Conecuh | 28 | 28 |
| Coosa | 21 | 12 |
| Covington | 22 | 24 |
| Crenshaw | 18 | 18 |
| Cullman | 50 | 50 |
| Dale | 16 | 19 |
| Dallas | 30 | 29 |
| DeKalb | 47 | 43 |
| Elmore | 30 | 30 |
| Escambia | 29 | 29 |
| Etowah | 31 | 32 |
| Fayette | 27 | 27 |
| Franklin | 20 | 24 |
| Geneva | 42 | 24 |
| Greene | 15 | 15 |
| Hale | 40 | 14 |
| Henry | 29 | 14 |
| Houston | 85 | 24 |
| Jackson | 39 | 39 |
| Jefferson | 173 | 173 |
| Lamar | 25 | 22 |
| Lauderdale | 34 | 31 |
| Lawrence | 39 | 32 |
| Lee | 23 | 23 |
| Limestone | 25 | 25 |
| Lowndes | 15 | 12 |
| Macon | 14 | 14 |
| Madison | 73 | 73 |
| Marengo | 19 | 19 |

Attachment 46

Precincts and Polling Locations in the State of Alabama

| | | |
|---|---|---|
| Marion | 23 | 19 |
| Marshall | 45 | 22 |
| Mobile | 88 | 88 |
| Monroe | 79 | 29 |
| Montgomery | 49 | 49 |
| Morgan | 40 | 40 |
| Perry | 15 | 15 |
| Pickens | 25 | 19 |
| Pike | 34 | 29 |
| Randolph | 14 | 25 |
| Russell | 24 | 21 |
| Shelby | 43 | 43 |
| St. Clair | 30 | 30 |
| Sumter | 24 | 14 |
| Talladega | 26 | 26 |
| Tallapoosa | 28 | 26 |
| Tuscaloosa | 54 | 54 |
| Walker | 46 | 46 |
| Washington | 19 | 19 |
| Wilcox | 36 | 21 |
| Winston | 18 | 18 |
| **TOTAL** | **2267** | **1980** |