# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA

PEOPLE FIRST OF ALABAMA, et al.,
*Plaintiffs*,

v.

John MERRILL, et al.,
*Defendants*.

Case No. 2:20-cv-619-AKK

## AMICUS BRIEF OF HONEST ELECTIONS PROJECT IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

Table of Authorities .................................................................................................................. iii

Interest of Amicus Curiae ......................................................................................................... 1

Introduction & Summary of Argument .................................................................................. 1

Argument .................................................................................................................................... 3

    I. Plaintiffs' constitutional claims fail because COVID-19 cannot make a valid election law invalid. ................................................................................................... 3

    II. Plaintiffs' constitutional claims fail because the challenged laws impose only reasonable, nondiscriminatory voting requirements on all Alabama voters. ........ 8

Conclusion ................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*ACORN v. Blanco*, No. 2:06-cv-611 (E.D. La. Apr. 21, 2006) ......................................... 8

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...................................................................... 3, 5

*Arizonans for Fair Elections v. Hobbs*, 2020 WL 1905747 (D. Ariz. Apr. 17, 2020) ....... 2, 6

*Bethea v. Deal*, 2016 WL 6123241 (S.D. Ga. Oct. 19, 2016) ...................................... 6, 7, 8

*Burdick v. Takushi*, 504 U.S. 428 (1992) ................................................................. 3, 4, 5, 10

*Clingman v. Beaver*, 544 U.S. 581 (2005) ........................................................................ 10, 12

*Coalition for Good Governance v. Raffensperger*, 2020 WL 2509092 (N.D. Ga. May 14, 2020) ..................................................................................................................................... 7

*Common Cause/Ga. v. Billups*, 554 F.3d 1340 (11th Cir. 2009) ....................................... 4, 9

*Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181 (2008) ................................................passim

*Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1638374 (W.D. Wis. Apr. 2, 2020) ....... 2

*Democratic Nat'l Comm. v. Bostelmann*, No. 20-1538 (7th Cir. Apr. 3, 2020) .................. 2, 8

*Democratic Nat'l Comm. v. Reagan*, 2018 WL 10455189 (D. Ariz. May 25, 2018) .............. 6

*Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004) ............................................................... 4, 5

*League of Women Voters of Ohio v. LaRose*, No. 2:20-cv-1638 (S.D. Ohio Apr. 3, 2020) .. 5, 6

*Mays v. LaRose*, 951 F.3d 775 (6th Cir. 2020) ....................................................................... 5

*Mays v. Thurston*, 2020 WL 1531359 (E.D. Ark. Mar. 30, 2020) ....................................... 7

*McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802 (1969) ................................. 5

*Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016) ............................ 10

*Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 141 P.3d 1235 (Nev. 2006) ................. 4

*Norman v. Reed*, 502 U.S. 279 (1992) ..................................................................................... 4

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020) ....................... 2

*Storer v. Brown*, 415 U.S. 724 (1974) .................................................................................... 4

*Taylor v. Milwaukee Election Comm'n*, 2020 WL 1695454 (E.D. Wis. Apr. 6, 2020) .......... 8

*Timmons v. Twin Cities Area New Party*, 520 U.S. 351 (1997) ....................................... 4, 10

*Washington v. Davis*, 426 U.S. 229 (1976) ........................................................................... 11

*Williams v. DeSantis*, No. 1:20-cv-67 (N.D. Fla. Mar. 17, 2020) ......................................... 8

**Other Authorities**

Michael T. Morley, *Election Emergencies: Voting in the Wake of Natural Disasters and Terrorist Attacks*, 67 Emory L.J. 545 (2018) ................................................................. 7, 8

## INTEREST OF AMICUS CURIAE[*]

The Honest Elections Project is an independent, nonpartisan organization devoted to supporting the right of every lawful voter to participate in free and honest elections. Through public engagement, advocacy, and public-interest litigation, the Project defends the fair, reasonable measures that States put in place to protect the integrity of the voting process. The Project supports commonsense voting rules and opposes efforts to reshape elections for partisan gain. As part of its mission in this challenging time, the Project seeks to ensure that elections are carried out both safely and lawfully. Lawsuits that challenge duly enacted election rules during the COVID-19 pandemic drain precious resources, distract state officials, create voter confusion, and undermine the integrity of elections. The Project thus has a significant interest in this important case.

## INTRODUCTION & SUMMARY OF ARGUMENT

Plaintiffs are not the first to ask a federal court to rewrite state election laws in light of the COIVD-19 pandemic. Political parties and advocacy groups have filed dozens of lawsuits across the country, seeking to drastically increase voting by mail and to remove safeguards on absentee voting—changes they pushed in the political process long before COVID-19, but largely failed to get. Recognizing that the Constitution does not now *require* these changes, most federal courts have rejected these lawsuits. The first

---

[*] No party's counsel authored this brief in whole or in part, and no one other than amicus and its counsel contributed money to fund the brief's preparation or submission.

court that didn't saw its decision swiftly stayed by the Seventh Circuit and further stayed by the U.S. Supreme Court. *See Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1638374, at *12-20 (W.D. Wis. Apr. 2, 2020), *stayed in part*, No. 20-1538 (7th Cir. Apr. 3, 2020), *stayed*, *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020). The majority of courts recognize a basic truth: While "Plaintiffs are correct that the COVID-19 pandemic constitutes an extraordinary circumstance that has resulted in profound dislocations, it is also a profound thing for a federal court to rewrite state election laws." *Arizonans for Fair Elections v. Hobbs*, 2020 WL 1905747, at *3 (D. Ariz. Apr. 17, 2020) (cleaned up).

Like the plaintiffs in the cases decided so far, Plaintiffs here ask the Court to alter how the State conducts in-person voting (by requiring it to institute curbside voting) and how the State deters fraud and abuse in absentee voting (by removing the signature-witnessing requirement and the proof-of-ID requirement). None of Plaintiffs' challenges is likely to succeed on the merits. But this brief will focus on Plaintiffs' constitutional challenges. Those challenges suffer from two major legal defects.

*First*, Plaintiffs' constitutional claims all rely on the faulty premise that COVID-19 somehow *made* Alabama's laws unconstitutional. That's impossible, as COVID-19 is a virus—not state action. It is not something that Defendants created, caused, or can control. Even if this "act of God" factored into the constitutional analysis, the bottom line would not change. Burdens on the right to vote are evaluated under the *Anderson-Burdick* balancing test. During a pandemic, the State's interests in avoiding last-minute

changes, conserving precious resources, and safeguarding the integrity of elections outweigh any added burdens on voters. If the challenged laws were constitutional before COVID-19, as Plaintiffs appear to concede, then they are constitutional during it too.

*Second*, Plaintiffs' constitutional claims ask this Court to invalidate the challenged laws—which require nothing more from all Alabama voters than the "usual burdens of voting"—because of their alleged impacts on specific voters. *Crawford v. Marion Cty. Elec. Bd.*, 553 U.S. 181, 198 (2008) (opinion of Stevens, J.). But that theory cannot be reconciled with myriad Supreme Court cases holding that constitutional challenges to neutral, nondiscriminatory laws rise or fall based on the law's impact on voters *categorically*, not individually. Plaintiffs' speculation that the challenged laws might prevent some small, theoretical group of idiosyncratic voters from voting in July and November is no basis to grant their sweeping relief.

Plaintiffs' motion for a preliminary injunction should be denied.

## ARGUMENT

### I. Plaintiffs' constitutional claims fail because COVID-19 cannot make a valid election law invalid.

Plaintiffs argue that every law they challenge violates the right to vote. *See* Doc. 20-1 ("Mot.") 12-17, 23-28. These claims invoke the balancing test from the U.S. Supreme Court's decisions in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under *Anderson-Burdick*, States can conduct "*substantial* regulation of elections." *Burdick*, 504 U.S. at 432 (emphasis added; quoting *Storer v.*

3

*Brown*, 415 U.S. 724 (1974)). The *Anderson-Burdick* test is a "flexible standard" that "reject[s] the contention that any law imposing a burden on the right to vote is subject to strict scrutiny." *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1354 (11th Cir. 2009); *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 141 P.3d 1235, 1241 (Nev. 2006) (citing *Burdick*, 504 U.S. at 433). Contrary to Plaintiffs' repeated claims of "disenfranchisement," Mot. 2, 11, 14, 24, an election law is not invalid because it prevents some people from voting. *Every* election law "is going to exclude, either de jure or de facto, some people from voting; the constitutional question is whether the restriction and resulting exclusion are *reasonable* given the interest the restriction serves. *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004) (emphasis added).

Under *Anderson-Burdick*, Plaintiffs must satisfy a two-step inquiry, bearing a heavy burden at both steps. First, Plaintiffs must prove that the challenged law imposes a cognizable burden on the right to vote and then quantify the severity of that burden. *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Common Cause/Ga.*, 554 F.3d at 1354. Second, Plaintiffs must show that the burden outweighs the State's interests. *Timmons*, 520 U.S. at 358. Only when an election law "subject[s]" voting rights "to 'severe' restrictions" does a court apply strict scrutiny and assess whether the law "'is narrowly drawn to advance a state interest of compelling importance.'" *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)). In contrast, mine-run election laws that "impose[] only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters" are "'generally'" justified by "'the

4

State's important regulatory interests.'" *Burdick*, 504 U.S. at 433 (quoting *Anderson*, 460 U.S. at 788). After all, there is no constitutional right to be free from "the usual burdens of voting." *Crawford*, 553 U.S. at 198.

Here, Plaintiffs do not contest that, in normal times, the challenged laws would survive *Anderson-Burdick* review. Nor could they. The Constitution guarantees only one viable method of voting, so Plaintiffs cannot complain about restrictions on absentee voting (because in-person voting remains available) or the lack of curbside voting (because absentee voting and voting indoors remain available). *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807 (1969); *Mays v. LaRose*, 951 F.3d 775, 784-87 (6th Cir. 2020); *Griffin*, 385 F.3d at 1130; *see* Doc. 57 at 16-17, 24, *League of Women Voters of Ohio v. LaRose*, No. 2:20-cv-1638 (S.D. Ohio Apr. 3, 2020) (denying relief because COVID-19 does not cause "a broad, categorical denial of the right to vote" given the various options for voting). It is "obvious that a federal court is not going to decree weekend voting, multi-day voting, all-mail voting, or Internet voting (and would it then have to buy everyone a laptop, or a Palm Pilot or Blackberry, and Internet access?)"—let alone curbside voting. *Griffin*, 385 F.3d at 1130.

Even if the challenged laws did burden the right to vote, those burdens would not "represent a significant increase over the usual burdens of voting." *Crawford*, 553 U.S. at 198. Finding two witnesses or a notary, providing copies of a photo ID, or walking from a parked car to the inside of a polling place are ordinary burdens of voting—certainly no worse than the burdens of obtaining and presenting a photo ID

5

(gathering documents, traveling to the DMV, waiting in line, remembering to bring it to the polls, etc.). *Id.*; *Democratic Nat'l Comm. v. Reagan*, 2018 WL 10455189, at *3 (D. Ariz. May 25, 2018). The challenged laws also further Alabama's important interests in deterring fraud, promoting public confidence in elections, and creating orderly, uniform procedures at the polling place. *Crawford*, 553 U.S. at 194-97; Doc. 57 at 19, *League of Women Voters*, No. 2:20-cv-1638 (S.D. Ohio). Alabama "has a strong interest in the continued adherence to such requirements, even during challenging times." *Arizonans for Fair Elections*, 2020 WL 1905747, at *16.

Instead of arguing that the challenged laws are always unconstitutional, Plaintiffs argue that the laws are *temporarily* unconstitutional due to COVID-19. *See, e.g.*, Mot. 1 ("In these extraordinary circumstances"); Mot. 3, 13, 24-25 ("in the current crisis"); Mot. 2 ("during the pandemic"). Yet our nation's struggle with COVID-19, as unprecedented as it is, does not change the constitutional analysis. That's true for two main reasons.

**First**, an otherwise constitutional law cannot become unconstitutional due to non-state action like a virus, which Defendants neither created nor caused. While COVID-19 has dramatically changed Alabamians' everyday lives, "these circumstances are not impediments created *by the State*." *Bethea v. Deal*, 2016 WL 6123241, at *2 (S.D. Ga. Oct. 19, 2016) (emphasis added). States like Alabama have acted to protect the "right to vote during this global pandemic" by "suspending the normal prerequisites" for absentee voting and imposing "social distancing and other protections" on in-

6

person voting. *Mays v. Thurston*, N2020 WL 1531359, at *2 (E.D. Ark. Mar. 30, 2020). "Any injury caused by Plaintiffs' failing to take advantage of these available avenues to exercise their rights to vote are not caused by or fairly traceable to the actions of the State, but rather are caused by the global pandemic." *Id.* As another court in this Circuit put it, "COVID-19 … is not the result of any act or failure to act by the Government. And that fact is important" because "[a]ll of the election cases cited by Plaintiffs in which injunctive relief was granted involved a burden on the right to vote that was created by the Government. Not so here." *Coalition for Good Governance v. Raffensperger*, 2020 WL 2509092, at *3 n.2 (N.D. Ga. May 14, 2020); *accord Bethea*, 2016 WL 6123241, at *2-3.

**Second**, even if non-state action like COVID-19 factored into the *Anderson-Burdick* analysis, the ultimate outcome of that analysis would not change. COVID-19 affects *both* sides of the balance—the interests of the State and the burdens on the individual. True, COVID-19 has complicated many public activities, including voting. But "States" also have "important interests … in the wake of election emergencies": they must "focus their resources on recovering from the emergency, ensuring the accuracy of voter registrations they have received, relocating polling places as needed, ensuring adequate staffing for the voting period, and otherwise minimizing the likelihood of errors or delays in voting." Michael T. Morley, *Election Emergencies: Voting in the Wake of Natural Disasters and Terrorist Attacks*, 67 Emory L.J. 545, 593 (2018). An

7

"election emergency" should thus "seldom warrant" changes to election laws by judicial fiat. *Id.*

Courts agree. *See, e.g.*, Doc. 12, *Williams v. DeSantis*, No. 1:20-cv-67 (N.D. Fla. Mar. 17, 2020) (declining to intervene in Florida's primary election in the face of COVID-19); *Bethea*, 2016 WL 6123241 (declining to extend Georgia's voter-registration deadline in the wake of Hurricane Matthew); Doc. 58, *ACORN v. Blanco*, No. 2:06-cv-611 (E.D. La. Apr. 21, 2006) (denying request "to extend the deadline for counting absentee ballots received by mail" in New Orleans in the wake of Hurricane Katrina). As the Seventh Circuit recently explained, States maintain their "substantial interest in combatting voter fraud" during a pandemic, and questions about how to "accommodate voters' interests while also striving to ensure their safety" are best left to election officials, who are "better positioned … to accommodate the many intersecting interests in play in the present circumstances." Doc. 30, *Bostelmann*, No. 20-1538 (7th Cir.). Federal courts do "not have the authority 'to act as the state's chief health official' by making the decision" how best to protect "the health and safety of the community." *Taylor v. Milwaukee Election Comm'n*, 2020 WL 1695454, at *9 (E.D. Wis. Apr. 6, 2020).

**II.    Plaintiffs' constitutional claims fail because the challenged laws impose only reasonable, nondiscriminatory voting requirements on all Alabama voters.**

All of Plaintiffs' right-to-vote claims fail for another reason. When describing the burdens that the challenged laws impose on voters, Plaintiffs do not identify burdens

that affect *all* voters in Alabama. They instead identify burdens that affect, at most, a few small groups. The "Witness Requirement" only possibly affects individuals who cannot vote in person, who cannot find two people to witness their absentee ballot, and who cannot find someone to notarize their ballot. The "Photo ID Requirement" only possibly affects individuals who cannot vote in person, are not older than 65, are not disabled, and cannot make a copy of their ID with reasonable effort. And the "Curbside Voting Prohibition" only possibly affects voters who cannot vote absentee and who can travel to the polling place but not go inside to vote.

While voters who satisfy all these conditions might theoretically exist, their numbers must be vanishingly small. The State has determined that, like going to the grocery store, in-person voting can be done safely with increased sanitization and social distancing. And there is no reason why witnesses and notaries cannot maintain social distancing—via the mail, online videoconferencing technology, or simply witnessing the signature from 6 feet away. And anyone who has access (or knows someone with access) to a printer, smartphone, copy machine, Kinkos, etc. can make a copy of their ID. The individual Plaintiffs do not allege that all of these options are unavailable for them. And Plaintiffs make no effort to "quantify" with "admissible and reliable evidence" the number of people who cannot use these various options. *Crawford*, 553 U.S. at 200; *Common Cause/Ga.*, 554 F.3d at 1354.

Plaintiff's strategy of "[z]eroing in on the abnormal burden experienced by a small group of voters is problematic at best, and prohibited at worst." *Ne. Ohio Coal. for*

9

*the Homeless v. Husted*, 837 F.3d 612, 631 (6th Cir. 2016). Although the Eleventh Circuit has not squarely considered the question, this Court should hold that idiosyncratic burdens on small groups of voters are simply irrelevant under *Anderson-Burdick*.

When assessing a burden's severity, courts should look at the burden's impact "categorically" upon all voters, without "consider[ing] the peculiar circumstances of individual voters." *Crawford*, 553 U.S. at 206 (Scalia, J., concurring in the judgment). That conclusion follows from numerous Supreme Court cases. For example, in holding that Hawaii's ban on write-in voting "impose[d] only a limited burden on voters' rights to make free choices and to associate politically through the vote," the Court looked at the ban's effect on Hawaii's voters generally, rather than on the plaintiff specifically. *Burdick*, 504 U.S. at 439, 436-37. In rejecting the New Party's challenge to Minnesota's ban on fusion candidates, the Court examined the ban's effect on "minor political parties" generally, not on the New Party specifically. *Timmons*, 520 U.S. at 361-62. And in rejecting voters' challenge to Oklahoma's semi-closed primary election, the Court emphasized that "Oklahoma's semiclosed primary system does not severely burden the associational rights of the state's citizenry" *generally*—irrespective of its effect on the individual plaintiffs specifically. *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). In short, each of those precedents "refute[s] the view that individual impacts are relevant to determining the severity of the burden" that "a generally applicable, nondiscriminatory voting regulation" imposes. *Crawford*, 553 U.S. at 205 (Scalia, J., concurring in the judgment).

That the Court's precedents require assessing burdens categorically should be no surprise; the Equal Protection Clause itself compels the categorical approach. In fact, "weighing the burden of a nondiscriminatory law upon each voter and concomitantly requiring exceptions for vulnerable voters would effectively turn back decades of equal-protection jurisprudence." *Id.* at 207. "A voter complaining about such a law's effect on him has no valid equal-protection claim because, without proof of discriminatory intent, a generally applicable law with disparate impact is not unconstitutional." *Id.* (citing *Washington v. Davis*, 426 U.S. 229, 248 (1976)). In short, the "Fourteenth Amendment does not regard neutral laws as invidious ones, *even when their burdens fall disproportionately on a protected class.*" *Id.*

A plaintiff hoping to avoid the categorical rule—and instead litigate a claim based on idiosyncratic burdens—cannot denigrate the categorical rule by contending that it merely comes from Justice Scalia's concurrence for three Justices in *Crawford*. To be sure, Justice Scalia's opinion puts the finest point on the categorical rule. But he did not conjure it from thin air. Rather, Justice Scalia states the rule after painstakingly analyzing and synthesizing a host of prior majority opinions—all of which remain good law today. *See* 553 U.S. at 205-08. What is more, Justice Scalia specifically noted that Justice Stevens's three-Justice opinion "neither rejects nor embraces the [categorical] rule of [the Supreme Court's] precedents." *Id.* at 208. Justice Stevens never disputes that conclusion.

In short, the categorical rule applies here. And under it, Plaintiffs fail to state a claim that the challenged laws unduly burden their Fourteenth Amendment rights. Each of these laws epitomizes "a generally applicable, nondiscriminatory voting regulation." *Id.* at 205 (Scalia, J., concurring in the judgment). If they impose any burden at all, those burdens are "[o]rdinary and widespread, ... requiring 'nominal effort' of everyone." *Id.* (quoting *Clingman*, 544 U.S. at 591). Any idiosyncratic effects the laws might have on particular voters thus "are not severe," *Crawford*, 553 U.S. at 205 (Scalia, J., concurring in the judgment), and are amply justified by the State's important interests.

## CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.

                                              Respectfully submitted,

Dated: May 25, 2020                /s/ *Steven M. Brom*
                                              Steven M. Brom (ASB-2541-N74B)
                                              Bryan M. Taylor (ASB-0390-Y81T)
                                              BACHUS BROM & TAYLOR LLC
                                              300 Vestavia Parkway, Suite 3700
                                              Birmingham, AL 35216
                                              Phone: (205) 970-6747
                                              Fax: (205) 970-7775
                                              sbrom@bachusbrom.com
                                              btaylor@bachusbrom.com

                                              Tyler R. Green*
                                              Cameron T. Norris*
                                              CONSOVOY MCCARTHY PLLC
                                              1600 Wilson Boulevard, Suite 700
                                              Arlington, VA 22209
                                              (703) 243-9423
                                              tyler@consovoymccarthy.com
                                              cam@consovoymccarthy.com
                                              **Pro Hac Vice* Motions forthcoming*

                                              *Counsel for Honest Elections Project*

## CERTIFICATE OF COMPLIANCE

This brief is 12 pages, less than half the number of pages that this Court allowed for the parties' memoranda of law. *See* Doc. 17; *cf.* Fed. R. App. P. 29(a)(5) (allowing amicus briefs to be half the length of parties' principal briefs).

Dated: May 25, 2020
/s/ *Steven M. Brom*
Counsel for Honest Elections Project

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to counsel of record, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Jacqueline Anderson-Smith
Circuit Clerk of Jefferson County, Alabama
Jefferson County Courthouse
716 Richard Arrington, Jr. Blvd. N.
Birmingham, AL 35203

Karen Dunn Burks
Deputy Circuit Clerk
Bessemer Division of Jefferson County, Alabama
1801 3rd Ave N
Bessemer, AL 35020

/s/ *Steven M. Brom*
Steven M. Brom (ASB-2541-N74B)
Bryan M. Taylor (ASB-0390-Y81T
BACHUS BROM & TAYLOR LLC
300 Vestavia Parkway, Suite 3700
Birmingham, AL 35216
Phone: (205) 970-6747
Fax: (205) 970-7775
sbrom@bachusbrom.com
btaylor@bachusbrom.com
Counsel for Honest Elections Project