IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| PEOPLE FIRST OF ALABAMA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN MERRILL, *et al.*, <br><br> Defendants. | Civil Action No.  2:20-cv-619 (AKK) |

**STATEMENT OF INTEREST OF THE UNITED STATES
CONCERNING SECTION 201 OF THE VOTING RIGHTS ACT**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States."  This case presents important questions regarding Section 201 of the Voting Rights Act, 52 U.S.C. § 10501 ("Section 201").  Congress has accorded the Attorney General broad authority to enforce the Voting Rights Act on behalf of the United States.  *See* 52 U.S.C. § 10504.  Accordingly, the United States has a substantial interest in ensuring the proper interpretation and uniform enforcement of Section 201.  The United States submits this Statement of Interest for the limited purpose of addressing Plaintiffs' Section 201 claim.

Most of Plaintiffs' claims in their preliminary injunction papers are premised on the factual circumstances related to the COVID-19 pandemic.  By contrast,

Plaintiffs' claim under Section 201 is not moored to these same circumstances. Rather, Plaintiffs essentially argue that Alabama's long-standing absentee witness requirement has been void *ab initio* on the supposed grounds that it constitutes a "test or device" prohibited by Section 201. Hence, Plaintiffs argue that this requirement must be enjoined permanently, with no possibility of remediation or cure. Plaintiffs' claim appears to implicate absentee witness requirements on the books in at least eleven other states.

As explained below, Plaintiffs' Section 201 claim cannot form the basis for preliminary injunctive relief because their claim fails as a matter of law. The United States does not express a view on any other claim in this case.

## PROCEDURAL BACKGROUND

Alabama requires all absentee voters to swear or affirm as to their place of residence in Alabama, their date of birth, and their entitlement to vote absentee; that they have not voted nor will vote in person; that they have marked the ballot voluntarily; and that they understand and have complied with ballot instructions. Ala. Code §§ 17-11-7(b), -8. An absentee voter affidavit on the ballot envelope must be signed or marked by the voter, and the voter must "have a notary public (or other officer authorized to acknowledge oaths) or two witnesses witness his or her signature to the affidavit." *Id.* § 17-11-9; *see also id.* § 17-11-10(b) (specifying that witnesses must be "18 years of age or older"); *id.* § 17-11-7(c) (specifying that

2

candidates in contested elections may not serve as a notary or witness). The State rules also provide that absent military and overseas voters under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. §§ 20301-11, are exempted from the state absentee envelope notarization requirement, but must still have two witnesses. Ala. Admin. Code § 820-2-10-.03(4); *see also* Alabama Secretary of State, *Alabama Voter Guide* 11 (2020), *available at* https://www.sos.alabama.gov/sites/default/files/voter-pdfs/2020/VoterGuide2020.pdf. An absentee ballot may not be counted unless its ballot envelope was properly signed and witnessed. Ala. Code § 17-11-10(b).

On May 1, Plaintiffs sued Alabama officials alleging, among other claims, that the witness requirement to the State's absentee voter oath violates Section 201. Compl. ¶¶ 10, 166-173 (ECF No. 1). Among other relief, Plaintiffs seek a declaration that the witness requirement violates Section 201 and an injunction prohibiting enforcement. Compl. ¶¶ A, B-1, B-4.

On May 13, Plaintiffs moved for a preliminary injunction. Mot. for Prelim. Inj. (ECF No. 15). On May 15, this Court granted the Plaintiffs' request to strike and replace their brief in support of their motion. Order (ECF No. 21). As relevant here, Plaintiffs argue that the witness requirement violates Section 201 because, in their view, it requires an absentee voter to "prove his qualifications by . . . voucher,"

3

within the meaning of the Voting Rights Act. Pls.' Rev. Br. 20-21 (ECF No. 20-1) (quoting 52 U.S.C. § 10501(b)(4)).

## STATUTORY BACKGROUND

Section 201 of the Voting Rights Act, 52 U.S.C. § 10501 (formerly codified at 42 U.S.C. § 1973aa), establishes that "[n]o citizen shall be denied, because of his failure to comply with any test or device, the right to vote in any Federal, State, or local election conducted in any State or political subdivision of a State." 52 U.S.C. § 10501(a). The term "test or device" encompasses

> any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) *prove his qualifications by the voucher of registered voters or members of any other class*.

*Id.* § 10501(b) (emphasis added). Section 14(c)(1) of the Voting Rights Act defines the terms "vote" and "voting" to include "all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, . . . casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast." *Id.* § 10310(c)(1).

Section 201's nationwide ban on tests and devices is an extension of the earlier ban limited to jurisdictions subject to preclearance and other special provisions of the Voting Rights Act. As originally enacted, the Voting Rights Act applied special provisions to jurisdictions that had maintained a "test or device" on November 1,

4

1964, and had either less than fifty percent voter registration on that date or less than fifty percent turnout in the 1964 presidential election.  Voting Rights Act of 1965, Pub. L. No. 89-110, § 4(b), 79 Stat. 437, 438 (1965) (current version at 52 U.S.C. § 10303(b)).  The 1965 definition of "test or device" mirrors the definition in Section 201.  *Compare* Voting Rights Act of 1965 § 4(c), 79 Stat. at 438-39 (current version at 52 U.S.C. § 10303(c)), *with* 52 U.S.C. 10501(b).  Section 4(a) of the Voting Rights Act of 1965 suspended tests and devices in jurisdictions subject to the special provisions for an initial period of five years (that was later extended).  *See* 79 Stat. at 438 (current version at 52 U.S.C. § 10303(a)).  In 1970, Congress enacted Section 201, which at first extended the ban on tests or devices nationwide until 1975.  *See* Voting Rights Act Amendments of 1970, Pub. L. No. 91-285, § 6, 84 Stat. 314, 315 (1970); *see also Oregon v. Mitchell*, 400 U.S. 112, 131-34 (1970).  In 1975, Congress made Section 201 permanent nationwide.  *See* Voting Rights Act Amendments of 1975, Pub. L. No. 94-73, § 102, 89 Stat. 400, 400 (1975).

The 1965 prohibition on voucher requirements, which also appears in the provision of Section 201 invoked by Plaintiffs, addressed procedures under which "registered voters must vouch for new applicants in areas where practically no Negroes are registered and where whites cannot be found to vouch for Negroes."  S. Rep. No. 89-162, pt. 3, at 16 (1965), *as reprinted in* 1965 U.S.C.C.A.N. 2508, 2553; *see also* H.R. Rep. No. 89-439, at 15 (1965), *as reprinted in* 1965 U.S.C.C.A.N.

2437, 2446.[1] Before passage of the Voting Rights Act of 1965, the United States had successfully challenged such requirements in protracted litigation. *See, e.g.*, *United States v. Logue*, 344 F.2d 290, 291-93 (5th Cir. 1965) (per curiam) (enjoining requirement that applicants put forward a registered voter to "affirm that he is acquainted with the applicant, knows that the applicant is a bona fide resident of the county, and is aware of no reason why the applicant would be disqualified from registering"); *United States v. Ward*, 349 F.2d 795, 799-802 (5th Cir. 1965) (enjoining requirement that two registered voters establish the identity of an applicant); *United States v. Manning*, 205 F. Supp. 172, 173-74 (W.D. La. 1962) (same). And Congress noted these cases when it prohibited voucher requirements. *See* S. Rep. No. 89-162, pt. 3, at 46 app'x G, *as reprinted in* 1965 U.S.C.CA.N. at 2549-50; *Hearings on H.R. 6400 before the House Subcommittee No. 5 of the Committee on the Judiciary*, 89th Cong., 1st Sess., at 33-34 tbls. B-2(a), B-3(a) (1965) (materials provided by the Department of Justice); *see also Davis v. Gallinghouse*, 246 F. Supp. 208, 217 (E.D. La. 1965) ("Congress undoubtedly meant this ban on 'vouching' to hit at the requirement in some states that identity be proven

---

[1] *See also* S. Rep. No. 89-162, at 12, *as reprinted in* 1965 U.S.C.C.A.N. at 2449-50 ("The voucher requirement has similarly been used to effect discrimination. Registrars have required Negroes, but not whites, to produce supporting witnesses to vouch for them . . . . Registrars have required Negroes to produce whites to vouch for them . . . , and registrars have helped whites, but not Negroes, in obtaining supporting witnesses . . . ."); H.R. Rep. No. 89-439, at 21, *as reprinted in* 1965 U.S.C.C.A.N. at 2452 (finding that practices such as voucher requirements kept many black voters "from ever reaching the poll tax stage").

by the voucher of two registered voters, which, where all or a large majority of the registered voters are white, minimizes the possibility of a Negro registering."). Section 201 simply expanded this voucher-requirement ban so that it applied nationwide.

Section 201 serves an important role in prohibiting the covered practices within its scope, namely, those that parallel the historical, racially discriminatory voting practices described above. And courts consistently have rejected claims that would extend the ban on tests and devices, including voucher requirements, beyond the statute's proper focus. Soon after the Voting Rights Act's passage, a district court declined to stretch the prohibition to reach documentary proof of residency requirements, under the theory that "voucher of . . . members of any other class," 52 U.S.C. § 10303(c)(4), might include "the class of people who issue driver's licenses, library cards, rent receipts, postmarked envelopes, etc." *Davis*, 246 F. Supp. at 217. More recently, a judge of this Court concluded that an allowance for voters who do not have identification at the polls to vote if "positively identified by two election officials," Ala. Code § 17-9-30(f), is not a prohibited voucher requirement because it is not a "requirement" at all; rather, it is a fail-safe to extend the franchise to those lacking requisite identification, *Greater Birmingham Ministries v. Alabama*, 161 F. Supp. 3d 1104, 1115-16 (N.D. Ala. 2016). *See also Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d 1253, 1281-83 (N.D. Ala. 2017), *appeal pending*, No.

18-10151 (11th Cir. argued July 28, 2018); *cf. Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 629 (6th Cir. 2016) (holding that a "requirement that absentee and provisional voters accurately complete address and birthdate fields . . . bears no similarity to" the tests and devices prohibited by Section 201).

## ARGUMENT

Alabama's witness requirement for absentee ballot envelopes does not violate Section 201.  It does not violate the first three provisions of Section 201 in that it is not a literacy test, it is not an educational requirement, and it is not a moral character requirement.  Nor, contrary to Plaintiffs' position, is it a voucher requirement prohibited by Section 201's fourth and final provision.

To begin with, Plaintiffs' argument is not supported by Section 201's plain text.  As relevant here, Section 201 prohibits any requirement that a voter "prove his qualifications by the voucher of registered voters or members of any other class." This provision is inapplicable here in two respects.  First, the witness requirement does not—and is not intended to—"prove [a voter's] qualifications."  It merely mandates that two persons over age 18 confirm that they observed the voter's signing of the affidavit on the ballot envelope.  *See* Ala. Code § 17-11-7(b); *see also id.* § 17-11-10(b) ("The provision for witnessing of the voter's affidavit signature or mark in Section 17-11-7 goes to the integrity and sanctity of the ballot and election.").  The witnesses need not attest to the voter's qualifications or to the contents of the ballot

8

envelope affidavit. *See* Ala. Code Ann. § 17-11-7(b); *see also* Ala. Const. art. VIII, § 177 (listing voter qualifications). Simply put, a witness "does not attest to the validity of the statements made in the document itself." *Butler v. Encyclopedia Britannica, Inc.*, 41 F.3d 285, 293-94 (7th Cir. 1994).[2] In these respects, the witness requirement fundamentally differs from a voucher requirement, which mandates that a voter must proffer an individual who can independently establish the voter's identity or qualifications. *See, e.g.*, *Ward*, 349 F.2d at 799 (noting that registrar told black voters "that they would need two electors to identify them" and would not accept "any other form of identification"). Because the witness requirement is not a test or device whereby the absentee voter must "prove his qualifications" to register or vote via another's voucher, it is not prohibited by Section 201.[3]

---

[2] The evidentiary hearsay rule illustrates the difference between witnessing and vouching. Witness testimony that recounts an out-of-court statement is not hearsay so long as it is not offered for the truth of the matter asserted, *i.e.*, does not purport to vouch for the third-party declarant. *See* Fed. R. Evid. 801(c); *Anderson v. United States*, 417 U.S. 211, 220-21 (1974). Similarly, a prosecutor may not vouch for a witness's credibility when recounting earlier testimony by asserting that the witness testified truthfully. *See, e.g.*, *United States v. Young*, 470 U.S. 1, 18-19 (1985).

[3] Plaintiffs err by suggesting that Alabama requires all witnesses to "vouch for a voter's identity by 'certify[ing] that the [voter] is known (or made known) to [the witness] to be the identical party he or she claims to be.'" Pls.' Rev. Br. 20-21 (quoting Ala. Code § 17-11-7) (alterations in original). First, by its terms, the certification in state law applies to notaries only, *see* Ala. Code § 17-11-7(b), based on the notary practice of ensuring "that the signer's documents are for their true identity," Alabama Secretary of State, *Notaries Public: The Handbook* 4 (1st ed. 2019), *available at* https://www.sos.alabama.gov/sites/default/files/notaries-public/notaryPublicHandbook.pdf. *See also* Exhibit 1 (State of Alabama, *Affidavit of Absentee Voter* (undated)). It does not apply to non-notary witnesses, who by definition are not publicly commissioned officials authorized to certify a voter's identity. *See* Ala. Code § 36-20-70. Alabama's absentee voting statutes do not force voters to get absentee ballot envelopes notarized; rather, notarization is one option. The statutes provide the alternative that a voter can

The witness requirement also falls outside Section 201's scope because it does not force a voter to obtain "the voucher of registered voters or members of any other class." 52 U.S.C. § 10501(b)(4). Section 201 targeted the practice of conditioning African-American registration or voting on the acquiescence of white registered voters or another group that could withhold the franchise. *See, e.g.*, *Ward*, 349 F.2d at 799 (noting that registrar imposing voucher requirement "did not expect that any white persons would identify these Negroes"). Alabama voters, however, may choose any adults as their witnesses, except for candidates in contested elections.

---

obtain the signature of two witnesses, which is clearly not a voucher requirement under Section 201. *See Greater Birmingham Ministries v. Merrill*, 284 F. Supp. 3d at 1281-83 (concluding that an allowance for voters who do not have identification at the polls to vote if positively identified by two election officials is not a voucher requirement). And in any case, mere notarization is not a voucher requirement that violates Section 201. "[B]oth the Congress and the Supreme Court have viewed the prohibition against vouchers as an attack on a specific, racially discriminatory voting registration requirement," namely "the so-called 'supporting witness' requirement which had commonly been used to disenfranchise black voters in the South." *Howlette v. City of Richmond*, 485 F. Supp. 17, 23-24 (E.D. Va.), *aff'd*, 580 F.2d 704 (4th Cir. 1978) (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 312-13 (1966)) (describing prohibited tests and devices designed to disenfranchise African American citizens). A "notary merely administers an oath" and does not vouch for the voter's qualifications. *Id.* at 24; *see also Notaries Public: The Handbook*, at 3 (noting that a notary is "expected to follow written rules without the exercise of significant personal discretion"). We note that at a time when Alabama required absentee ballot envelopes to be completed before an officer, such as an officer authorized to administer oaths— that is, before the State afforded voters the expanded option of relying on two non-notary witnesses—the Department of Justice declined to interpose an objection under Section 5 of the Voting Rights Act or otherwise seek to block the statute as a test or device under Section 4. Indeed, the Department interposed no objection to state statutes from Alabama that included the notary/officer requirement for absentee ballots/applications at the same time as it objected to other state statutes as tests or devices. *See* Exhibit 2 (Letter of Sept. 18, 1969 from MacDonald Gallion to John Mitchell (Alabama submission letter for 20 Alabama acts); Letter of Nov. 13, 1969 from Jerris Leonard to MacDonald Gallion (Department determination letter for 20 Alabama acts including Act 795 of 1965 and Act 176 of 1967 relating to absentee voting)).

Thus, unlike the prohibited forms of "vouching" that led to Section 201's enactment, Alabama's witness requirement does not limit the pool of potential witnesses to registered voters or any other relevant class. *See* Ala. Code §§ 17-11-7(b), -10(b)-(c). Thus, Section 201's plain text does not prohibit a flexible, straightforward witness requirement such as Alabama's.[4]

Subsequent federal legislation further confirms that Section 201 does not address absentee ballot witness requirements. In 2009, Congress enacted the Military and Overseas Voter Empowerment (MOVE) Act amendments to UOCAVA, which in part prohibits States from rejecting absentee ballots cast by members of the uniformed services, their family members, and U.S. citizens residing outside the country because those ballots did not meet state notarization mandates. *See* 52 U.S.C. § 20302(i)(1). But if Section 201 already prohibited witness requirements nationwide, that MOVE Act mandate would have been entirely unnecessary. Congress can be presumed not to enact redundant legislation. *See, e.g.*, *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation."); *see also, e.g., Corely v. United*

---

[4] Plaintiffs' brief elides this aspect of Section 201 by suggesting that the Voting Rights Act bars any requirement that a voter "'prove his qualifications by the voucher' of another person." Pls.' Rev. Br. 20. Not so. Apart from the fact that a voter's witnesses are not required to vouch for the voter's qualifications, Alabama's witness requirement lets a voter choose her witnesses. That the witnesses must be at least 18 years of age does not create a prohibited class; it merely ensures that witnesses' signatures have legal import. *See, e.g.*, Ala. Code § 26-1-1(a), (e)-(f) (establishing that persons under 18 years of age retain all "disabilities of minority").

*States*, 556 U.S. 303, 314 (2009) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks and citation omitted)).

Plaintiffs are incorrect to suggest that the Department of Justice has employed the Voting Rights Act broadly to block "witness requirements in the absentee voting process." Compl. ¶ 168. At least twelve states currently require the signature of a notary or witness with a returned absentee ballot. *See* Ala. Code § 17-11-7; Alaska Stat. § 15.20.203(b)(2); La. Stat. Ann. § 18:1306(E)(2); Minn. Stat. § 203B.07(3); Miss. Code Ann. § 23-15-627; Mo. Rev. Stat. § 115.283; N.C. Gen. Stat. § 163-321(a)(5); Okla. Stat. tit. 26, § 14-108; R.I. Gen. Laws § 17-20-23(c); S.C. Code §§ 7-15-220, -380; Va. Code Ann. § 24.2-706; Wis. Stat. § 6.87(4)(b). *See generally* National Conference of State Legislatures, *Verification of Absentee Ballots*, *at* https://www.ncsl.org/research/elections-and-campaigns/verification-of-absentee-ballots.aspx (Jan. 21, 2020). Yet, based on a diligent search, the United States is unaware of any challenge brought by the Attorney General—or a private plaintiff for that matter—to any such requirements as a prohibited test or device under Section 201 of the Voting Rights Act (or the time-limited and geographically-limited ban on tests and devices in Section 4(a) of the Voting Rights Act) before last month. *See Thomas v. Andino*, Civil Action No. 3:20-cv-1552 (D.S.C. filed Apr. 22, 2020).

Plaintiffs note that the Attorney General interposed an objection under Section 5 of the Voting Rights Act, 52 U.S.C. § 10304, to Florida legislation that would have imposed a witness requirement on absentee ballots, Compl. ¶ 168 n.116. But that objection does not support their claim. The objection letter stated that, although Florida had met its burden of establishing lack of discriminatory purpose, it had not met its burden of establishing lack of retrogressive effect under Section 5, as to the measure at issue there—a more restrictive absentee witness requirement than the one at issue here.[5] And, as the Florida objection letter makes clear, the objection was not interposed based on any conclusion that the witness requirement was a prohibited test or device within the meaning of Section 4(a) or 201 of the Voting Rights Act. *See* Letter of Aug. 14, 1998 from Bill Lann Lee to Robert A. Butterworth, *available at* https://www.justice.gov/sites/default/files/crt/legacy/2014/05/30/FL-1030.pdf.[6]

---

[5] The Florida absentee witness requirement would have required the absentee voter to provide the signature of a witness who is a registered voter in Florida, the signing of an oath promising that the witness has not witnessed more than five absentee ballots, the voter identification number of the witness, and the county where the witness is registered (or in lieu thereof, notarization of the absentee voter's signature). *See id.*

[6] Similarly, none of the other Section 5 preclearance objections and cases on which Plaintiffs rely concern voucher requirements. *See* Letter of Mar. 13, 1970 from Jerris Leonard to MacDonald Gallion (objecting to a de facto literacy requirement for absentee voters in Alabama), *available at* https://www.justice.gov/crt/case-document/file/1277176/download; *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th Cir. 2014) (addressing voter registration list maintenance); *Lodge v. Buxton*, 639 F.2d 1358, 1363 (5th Cir. Unit B 1981) (noting in challenge to at-large elections that "[c]ases involving literacy tests or poll taxes, or property ownership requirements are, by comparison, easy to decide" because the "most obvious purpose for the creation or maintenance of such systems is clearly discrimination"), *aff'd sub nom. Rogers v. Lodge*, 458 U.S. 613, 625 (1982).

In fact, Alabama submitted various amendments to its statutes relating to the witness requirement for absentee voting to the Attorney General for review under Section 5 of the Voting Rights Act during the time the State was covered by the preclearance requirement, and the Attorney General interposed no objection to those amendments.[7]  Indeed, the Department has found no record that it interposed an objection under Section 5 to any Alabama statutes imposing the absentee witness requirement, or that the Department otherwise sought to block the absentee witness requirement in Alabama as a prohibited test or device.  *See generally* U.S. Dep't of Justice, *Voting Determination Letters for Alabama*, at https://www.justice.gov/crt/voting-determination-letters-alabama (cataloging objections).[8]  On the other hand, when the Department identified an Alabama statute

---

[7] Exhibit 3 contains Section 5 preclearance letters related to various amendments to Sections 17-11-7 to 17-11-10 of the Alabama Code and the predecessor statutes.  *See* Letter of Nov. 13, 1969 from Jerris Leonard to MacDonald Gallion (Act 795 of 1965 and Act 176 of 1967); Letter of Oct. 24, 1975 from J. Stanley Pottinger to C. Lawson Little (Act 117 of 1965); Letter of Dec. 16, 1975 from J. Stanley Pottinger to William T. Stephens (Act 1147 of 1975); Letter of Aug. 18, 1978 from Gerald W. Jones to Eugenia D.B. Hofammann (Act 616 of 1978); Letter of July 24, 1980 from Gerald W. Jones to Don Siegelman (Act 80-732); Letter of Aug. 29, 1994 from Steven H. Rosenbaum to Lynda Knight Oswald (Act 94-320); Letter of Feb. 4, 1997 from Elizabeth Johnson to Lynda K. Oswald (Act 96-885); Letter of Aug. 18, 1999 from Joseph D. Rich to Lynda K. Woodall (Act 99-388); Letter of Mar.15, 2002 from Joseph D. Rich to Charles B. Campbell (Act 2001-1097); Letter of Nov. 17, 2003 from Joseph D. Rich to Charles B. Campbell (Act 2003-313); Letter of Mar. 3, 2004 from Joseph D. Rich to Charles B. Campbell (Act 2003-400); Letter of June 2, 2006 from John Tanner to Misty S. Fairbanks (Act 2006-354); Letter of Oct. 29, 2007 from John Tanner to Misty S. Fairbanks (Act 2006-570).

[8] Alabama was among the states first covered by the special provisions of the Voting Rights Act in 1965, based on determinations by the Attorney General and Director of the Census.  *See* Determination of the Attorney General Pursuant to Section 4(b)(1) of the Voting Rights Act of 1965, 30 Fed. Reg. 9897 (Aug. 6, 1965); Determination of the Director of the Census Pursuant to

that imposed a limitation on absentee voter assistance as a de facto literacy requirement, the Department interposed an objection on the ground that the provision, "if enforced, would violate the provisions of Section 4 of the Voting Rights Act." Letter of Mar. 13, 1970 from Jerris Leonard to MacDonald Gallion, *available at* https://www.justice.gov/crt/case-document/file/1277176/download. Hence, the Department blocked various state statutes that it viewed as constituting tests or devices, and it did not do so with regard to Alabama's absentee witness requirement.

## CONCLUSION

The United States expresses no view on the other claims Plaintiffs advance in support of their motion for a preliminary injunction based on factual circumstances related to COVID-19.

However, Plaintiffs' Section 201 claim does not depend on conditions related to COVID-19, and instead argues that Alabama's long-standing absentee witness requirement statutes were void *ab initio* and must be enjoined permanently, with no

---

Section 4(b)(2) of the Voting Rights Act of 1965, 30 Fed. Reg. 9897 (Aug. 6, 1965). The legislative record indicated that, as of November 1, 1964, Alabama had employed every form of test or device subsequently prohibited by the Voting Rights Act of 1965. *See, e.g.*, Ala. Code, tit. 17, § 32 (1965) (literacy test and good character requirement); *see also* S. Rep. 89-162, pt. 3, at 4-5, 7-12, 42 & nn.1-2, *as reprinted in* 1965 U.S.C.C.A.N. at 2542-50; H.R. Rep. 89-439, at 12, *as reprinted in* 1965 U.S.C.C.A.N. at 2443. Alabama ceased to be covered by these special provisions of the Voting Rights Act when the Supreme Court concluded that the coverage formula in Section 4 of the Act was unconstitutional. *See Shelby Cty. v. Holder*, 570 U.S. 529 (2013).

possibility of remediation or cure.  By implication, Plaintiffs' Section 201 argument, if accepted, would appear to bar absentee witness requirements on the books in a number of other states.  Plaintiffs' Section 201 claim against Alabama's absentee witness requirement fails as a matter of law.  Accordingly, this claim cannot support Plaintiffs' request for preliminary injunctive relief.

Date:  May 25, 2020

|  |  |
|---|---|
|  | Respectfully submitted, |
| JAY E. TOWN<br>United States Attorney<br>Northern District of Alabama | ERIC S. DREIBAND<br>Assistant Attorney General<br>Civil Rights Division<br><br>ELLIOTT M. DAVIS<br>Special Counsel<br><br>*/s/ T. Christian Herren, Jr.*<br>T. CHRISTIAN HERREN, JR.<br>  (ASB-6671-R63T)<br>RICHARD A. DELLHEIM<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>4 Constitution Square - Room 8.923<br>150 M Street, NE<br>Washington, DC 20530 |

## CERTIFICATE OF SERVICE

      I hereby certify that on May 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

                                        */s/ Daniel J. Freeman*
                                        Daniel J. Freeman
                                        Voting Section
                                        Civil Rights Division
                                        U.S. Department of Justice
                                        4 Constitution Square - Room 8.923
                                        150 M Street, NE
                                        Washington, DC 20530