# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PEOPLE FIRST OF ALABAMA, et al., | |
| Plaintiffs, | Case No.: 2:20-cv-00619-AKK |
| v. | |
| JOHN MERRILL, et al., | |
| Defendants. | |

# PLAINTIFFS' REPLY IN SUPPORT OF THEIR
# MOTION FOR A PRELIMINARY INJUNCTION

It is undisputed that thousands of voters, including Plaintiffs and Plaintiffs' many members, are at greater risk from COVID-19 because of the Challenged Provisions. As COVID-19 infections and deaths are rising at alarming rates, Ex. 68, 69, the chief state health officer is now open to another shutdown. Ex. 70, 71. Given the imminent danger ahead of the July 14 elections, the Court should enjoin: 1) the Witness Requirement; 2) the Photo ID Requirement for those voters most vulnerable to COVID-19; and 3) State Defendants from interfering with probate judges who choose to use curbside voting. Far from asking the Court to "micromanage" a state election, this relief is necessary to satisfy federal law and prevent irreparable harm.

Plaintiffs have standing because they are injured by having to violate social distancing guidance to vote, and Defendants have the authority to remedy that injury. On the merits, risking one's safety to vote is a severe burden, which is not justified by unsupported speculation about voter fraud. Plaintiffs' motion should be granted.

**Plaintiffs Have Standing.** Plaintiffs allege an injury-in-fact because the Challenged Provisions force them to violate social distancing guidance or face disfranchisement. Doc. 1 ¶¶ 7-8, 18-19, 21-36; Doc. 20-1 at 10-11. And voters always have standing to challenge state laws that require them to take some act (like obtain a photo ID or a witness) to vote. *See Common Cause v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009). Nor does it matter whether the injury is common to all voters. So long as "a harm is concrete," injury-in-fact exists even if the harm is

1

"widely shared." *Fed. Elec. Com'n v. Akins*, 524 U.S. 11, 24 (1998). In fact, Plaintiffs and Plaintiffs' members are lawful voters with disabilities that place them at high-risk of serious illness from COVID-19. Doc. 20-1 at 10-11; *see Thomas v. Andino*, 2020 WL 2617329, at *15 (D.S.C. May 25, 2020). And, given the State's social distancing rules, Organizational Plaintiffs are pursuing new efforts, Doc. 1 ¶¶ 31, 35-36, to help voters with (and push the State to ease) the Challenged Provisions' burdens. Accordingly, Plaintiffs and Plaintiffs' members have standing. *Arcia v. Fla. Sec'y of State*, 772 F. 3d 1335, 1342 (11th Cir. 2014); *Billups*, 554 F.3d at 1350-51.

Defendants' claim that it is too "speculative" to know whether Plaintiffs will contract COVID-19 due to the Challenged Provisions, Doc. 36 at 6, misunderstands the nature of Plaintiffs' injury. The injury-in-fact is that Plaintiffs must take steps to satisfy the Challenged Provisions. *See Arcia*, 772 F.3d at 1341; *Billups*, 554 F.3d at 1351-52. The greater risk of getting COVID-19 due to the Challenged Provisions is relevant to the merits since it shows the severity of the burdens during the pandemic. But Plaintiffs' Article III injury is being forced to comply with the Challenged Provisions, which they have standing to challenge even outside of a pandemic.

Plaintiffs' injuries are also traceable to, and redressable by, Defendants. Because the Article III injury is the Challenged Provisions' enforcement (not the pandemic), Defendants are sufficiently connected to such enforcement for purposes of both standing and *Ex Parte Young*. *See* Doc. 36 at 14 n.14 (agreeing that these

2

analyses are coequal).

Defendants rely on *Jacobson v. Florida Secretary of State*, but there the state official had no role at all in enforcing the challenged law. 957 F.3d 1193, 1207-08 (11th Cir. 2020). Where, as here, state officials have some statutory or other role in enforcing a law, an injunction against them satisfies redressability and traceability. *See, e.g.*, *NAACP v. Browning*, 522 F.3d 1153, 1159 & n.9 (11th Cir. 2008); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 & n.3 (11th Cir. 2005).

State Defendants have already altered the Challenged Provisions, Doc. 36 at 1-2, meaning they can provide the requisite relief. In all elections, State Defendants enforce the Challenged Provisions, Ala. Code §§ 17-11-3, 17-11-3.1, 17-11-4, 17-11-50, and related criminal penalties. *Id*. § 17-17-24. They help certify returns. Ala. Code §§ 17-12-2, 17-12-9, 17-12-17, 17-12-18, 17-13-17, 17-13-18. Defendants concede that certifying officials are proper parties. Doc. 36 at 12 n.10. And the Governor's emergency powers allow her to eliminate the Challenged Provisions. Ala. Code § 31-9-8(a)(5); Ala. Op. Att'y Gen. No. 2020-020, 2020 WL 1322057 (Mar. 17, 2020). This establishes standing. *Ga. Latino All. v. Gov.*, 691 F.3d 1250, 1260 n.5 (11th Cir. 2012); *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir. 1988).

Further, the photo ID law directs the Secretary to administer, interpret, and publicize it. Ala. Code § 17-9-30(g)-(p). Absentee election managers ("AEMs") issue regular or provisional absentee ballots depending on whether a voter provides

3

photo ID. Doc. 36 12 n.10. Ordering the Secretary to waive the photo ID law or broaden its exemption and the AEMs to issue regular ballots to voters who do not produce ID would redress the injury. *GBM v. Merrill*, 2017 WL 782776, at *4 (N.D. Ala. Mar. 1, 2017) (Secretary's authority under photo ID law sufficient for standing).

The Secretary also provides "uniform guidance" to election officials, Ala. Code § 17-1-3(a), including guidance related to the Witness Requirement, which election officials follow. Doc. 41 at 4-5; Doc. 36 at 12 n.10. The AEMs give voters "instructions for completing and returning the absentee ballots." Ala. Code § 17-11-9. Ordering the Secretary to instruct election officials and the AEMs to instruct voters that the Witness Requirement is waived redresses Plaintiffs' injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (redressability does not require complete relief). For curbside voting, the State's witness admits that the Secretary has intervened twice to stop local election officials from using it. Doc. 34-1 ¶ 43. An injunction barring any such future interventions would redress Plaintiffs' injuries.

Finally, for the ADA and VRA claims against the State, sovereign immunity has been abrogated; thus, Defendants' *Ex Parte Young* and redressability arguments have "no role to play here." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017); *see NAACP v. Alabama*, 949 F.3d 647, 655 (11th Cir. 2020); *Nat'l Ass'n of the Deaf v. Florida*, 945 F.3d 1339, 1351 (11th Cir. 2020). Defendant Roberson is sued in her official capacity as Circuit Clerk and AEM. Doc. 1 ¶ 40. If she has

resigned from those roles, Doc. 41 at 1-2, her "successor is automatically substituted as a party," which does not moot Plaintiffs' claim. Fed. R. Civ. P. 25(d).

**Plaintiffs Are Likely to Succeed on the Merits.** *First*, Plaintiffs are likely to prevail on their constitutional claims. Under *Anderson-Burdick*, Plaintiffs have identified burdens inflicted by the Challenged Provisions that warrant relief. *Thomas*, 2020 WL 2617329, at *19. As to the Witness Requirement, Defendants fail to address the very real burden on Plaintiffs or Plaintiffs' members who live alone or with one person. Doc. 20-1 at 16. Because Plaintiffs do not encounter two people *simultaneously*, Doc. 20-1 at 10-11, the Witness Requirement forces them to violate social distancing rules to interact with one or more people outside their household.

But COVID-19 is spread easily, Ex. 3 ¶ 6-7, and stays in the air for up to 14 minutes after an infected person talks. Ex. 72 ¶ 2. "Strikingly," Defendants seek to enforce the Witness Requirement for everyone, requiring an "asymptomatic COVID-19 voter [to] unknowingly place potential witnesses at risk" and a symptomatic voter to "find a willing witness." *Thomas*, 2020 WL 2617329, at *24. Defendants speculate that a witness could "watch the signing through a window," Doc. 36 at 20, but even then "many would be dissuaded from exercising their vote both on account of the remaining health risks and required steps to mitigate them." *League of Women Voters v. Bd. of Elec.*, 2020 WL 2158249, at *8 (W.D. Va. May 5, 2020). Defendants suggest that Plaintiffs could ask individuals like a grocer or

5

delivery driver to be a witness. Doc. 34-1 ¶ 41(d)(ii). But such hypothetical witnesses cannot "confirm[ ]" a voter's identity, Doc. 36 at 27, and are essential workers who are at higher risk of contracting and spreading COVID-19. Ex. 51 at 2.

Without any support, Defendants also claim "[m]any voters" could use remote notarization. Doc. 36 at 20. But this can require the payment of an unconstitutional fee to vote and not all voters or notaries have videoconferencing. Doc. 20-1 at 6, 16-17. Even remote notarization still requires a notary and voter to sign the same physical ballot, Doc. 34-1 ¶ 41(d)(i), posing significant logistical issues and risks.

Weighed against these severe burdens, Defendants cannot simply point to election integrity generally and note that "witnesses are required for signatures of many legal documents." Doc. 36 at 20. Because election integrity is protected by many other means, *see* Doc. 20-1 at 18-20, Defendants have not identified a state interest that makes the Witness Requirement "necessary to burden the plaintiff's rights," and, thus, this Requirement fails heightened scrutiny. *Tashjian v. Republican Party,* 479 U.S. 208, 221-22 (1986); *see Thomas*, 2020 WL 2617329, at *21 & n.22.

The Photo ID Requirement likewise severely burdens Plaintiffs' right to vote in the context of the pandemic. *See* Doc. 20-1 at 23-25. Nothing in *Anderson-Burdick* supports Defendants' suggestion that voters should be put in the position of asking someone else to bear the risk of contracting COVID-19 to make a copy of their photo ID. *See* Doc. 36 at 19. And, once again, Defendants' interest in election integrity is

not "necessary to burden" Plaintiffs' rights. *Tashjian,* 479 U.S. at 221-22. Certain voters are already exempt from providing photo ID. Ala. Code § 17-9-30(d). Defendants do not even attempt to argue that the other means in state law that protect election integrity are sufficient for these already exempted voters but insufficient for voters vulnerable to the virus. Thus, the Photo ID Requirement is not "narrowly" drawn to satisfy a compelling state interest. *Tashjian*, 479 U.S. at 217. To cure this violation, the exemption must be construed to include Plaintiffs. Doc. 20-1 at 26-27.

Along with those who cannot satisfy the Photo ID or Witness Requirement, there are some voters, like Plaintiffs' members, for whom absentee voting is not a viable option because they require in-person help. Doc. 20-1 at 28. In asserting that anyone can vote absentee, *see* Doc. 36 at 21, Defendants ignore these voters and the burdens placed on them by Defendants' Curbside Voting Prohibition. Defendants contend that it would not be administratively feasible to require curbside voting at every poll site. Doc. 36 at 26. But Plaintiffs only seek an injunction prohibiting the Secretary from interfering when probate judges choose to deploy curbside voting.

*Second*, Plaintiffs are likely to prevail on their ADA claim. They are registered voters who are eligible to vote absentee and, with accommodations, could vote. Doc. 20-1 at 21-23. This is enough to meet "essential eligibility requirements." 42 U.S.C. § 12131(2). Defendants cannot overcome the ADA claim by simply asserting that the Photo ID and Witness Requirements are "essential." *Compare* Doc. 36 at 23 *with*

*Doe v. Rowe*, 156 F. Supp. 2d 35, 59 (D. Me. 2001) (finding that a state constitution's voting qualification was not "essential"). Rather, the Court must examine these requirements' purpose (*i.e.*, identification) and whether it can be satisfied with a reasonable modification. *See Schaw v. Habitat for Humanity*, 938 F.3d 1259, 1266-67 (11th Cir. 2019). Alabama law already allows certain voters to prove their identity without strictly meeting the Photo ID or Witness Requirements. Ala. Code § 17-9-30(d); Ala. Admin. Code § 820-2-10-.03(4). Contradictorily, Defendants also say that identification is not a qualification. Doc. 36 at 26-27. Thus, these requirements are not "essential," and Plaintiffs' proposed accommodations do not "fundamentally alter" the State's elections. *See, e.g., Martin v. PGA Tour, Inc.*, 994 F. Supp. 1242, 1253 (D. Or. 1998) (finding it relevant that the defendant had denied that plaintiff's accommodation was reasonable, but had offered similar accommodations to others), *aff'd*, 204 F.3d 994 (9th Cir. 2000), *aff'd*, 532 U.S. 661 (2001); *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 852 (7th Cir. 1999); *Doe v. Judicial Nominating Com'n*, 906 F. Supp. 1534, 1544 (S.D. Fla. 1995). And the State's own witness notes that curbside voting is feasible with some conditions. Doc. 34-1 ¶ 46.

Defendants also assert that the Challenged Provisions do not totally bar Plaintiffs from voting. Doc. 36 at 23. But an ADA violation "does not occur only when a disabled person is completely prevented from enjoying a service." *Shotz v. Cates*, 256 F.3d 1077, 1080 (11th Cir. 2001). The ADA forbids rules that are direct

barriers or that "screen out" people with disabilities, 28 C.F.R. § 35.130(b)(8), and otherwise "diminish" their "chances of participation." 1990 U.S.C.C.A.N. 303, 388.

Specifically, the ADA prohibits voting barriers even where one has a "choice" of voting methods. *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016) (ADA challenge to "inaccessible" absentee voting not barred by the availability of "accessible" in-person voting). And Plaintiffs do not merely "fear" COVID-19. Doc. 36 at 24. Rather, the CDC and undisputed expert reports agree that, now and in July, Ex. 1, Ex. 3 ¶ 15, Ex. 67 ¶ 17, Plaintiffs face the real risk that the Challenged Provisions will endanger their lives "by reason of" their disabilities. Doc. 20-1 at 22-23; *see Bragdon v. Abbott*, 524 U.S. 624, 649 (1998); *McAlindin v. San Diego Cty.*, 192 F.3d 1226, 1235 (9th Cir. 1999) (disability led to self-isolation).

*Third*, Plaintiffs are likely to succeed on their as-applied or facial Section 201 claim. This claim does not require a three-judge court, because it is not brought by the Attorney General. *See* 52 U.S.C. § 10504. Where the VRA "does not 'expressly require' a three-judge court," courts do not convene them. *Nick v. Bethel*, 2007 WL 9718147, at *5 (D. Alaska July 31, 2007); *see Thomas,* 2020 WL 2617329, at *29.

Defendants and DOJ also wrongly contend that the Witness Requirement does not entail members of a "class" vouching for a voter's "qualifications" or is not a "requirement." 52 U.S.C. § 10501(b). Per Alabama Code § 17-11-7 and Defendants, a witness must vouch for or "confirm[ ] the identity of a person." Doc. 36 at 27. This

9

is a voting qualification. Ala. Code § 17-11-9; *U.S. v. Ward*, 349 F.2d 795, 798 (5th Cir. 1965). Vouchers are restricted to a "class" of non-candidates over age 18, Ala. Code § 17-11-7(b), (c), which, as applied, has a disparate impact. Doc. 20-1 at 5-6.[1]

The Witness Requirement is in fact a requirement: absentee ballots that fail to meet it are rejected. Ala. Code § 17-11-7. It does not matter that voters might opt to avoid it. The Supreme Court has enjoined a law that gave voters a "choice" between satisfying a literacy test or a then-valid property qualification. *South Carolina v. Katzenbach*, 383 U.S. 301, 319 (1966). DOJ has similarly ruled that literacy tests that applied only to absentee voters violated the VRA. Letter from DOJ to Ala. (Mar. 13, 1970), https://www.justice.gov/crt/case-document/file/1277176/download. And, regardless, the Witness Requirement is surely a requirement as applied in the present crisis since Plaintiffs have no choice but to vote absentee to protect their safety.

Finally, the Witness Requirement's preclearance is irrelevant. Preclearance did "not represent approval of the voting change." *Reno v. Bossier Par.*, 528 U.S. 320, 335 (2000). Thus, precleared laws can still be "attacked." *Id.*; *see* 52 U.S.C. § 10304(a). In fact, DOJ had to preclear a voting law that was not retrogressive, even if it violated another VRA section. *Reno v. Bossier Par.*, 520 U.S. 471, 474 (1997).

Accordingly, the Court should grant Plaintiffs' preliminary injunction motion.

---

[1] In contrast, in *Thomas*, the witness requirement there was not a voucher test only because it did not require a witness to "confirm" or "know" a voter's identity and it did not require a witness to be in any class at all, *i.e.*, candidates and children could be witnesses. 2020 WL 2617329, at *30.

DATED this 1st day of June 2020.   Respectfully submitted,

 /s/ Deuel Ross
Deuel Ross*
Natasha C. Merle*
Liliana Zaragoza*
NAACP LEGAL DEFENSE &
    EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
P: (212) 965-2200
dross@naacpldf.org
nmerle@naacpldf.org
lzaragoza@naacpldf.org

Mahogane D. Reed*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street N.W.Ste.600
Washington, DC 20005
(202) 682-1300
mreed@naacpldf.org

 /s/ William Van Der Pol
William Van Der Pol [ASB-211214F]
Jenny Ryan [ASB–5455-Y84J]
ALABAMA DISABILITIES
 ADVOCACY PROGRAM
Box 870395
Tuscaloosa, AL 35487
P: (205) 348-4928
wvanderpoljr@adap.ua.edu
jrryan2@adap.ua.edu

 /s/ Sara Zampierin
Sara Zampierin (ASB-1695-S34H)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
P: (334) 956-8200
F: (334) 956-8481
sara.zampierin@splcenter.org

 /s/ Caren E. Short
Caren E. Short (ASB-0646-P48N)
Nancy G. Abudu*
SOUTHERN POVERTY LAW CENTER
PO Box 1287
Decatur, GA 30031
P: (404) 521-6700
F: (404) 221-5857
caren.short@splcenter.org
nancy.abudu@splcenter.org

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

  I hereby certify that on June 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to counsel of record. I further certify that I will mail a copy of the forgoing to the following parties:

Jacqueline Anderson-Smith
Circuit Clerk of Jefferson County, Alabama
Jefferson County Courthouse
716 Richard Arrington, Jr. Blvd. N.
Birmingham, AL 35203

Karen Dunn Burks
Deputy Circuit Clerk Bessemer Division of Jefferson County, Alabama
1801 3rd Ave N
Bessemer, AL 35020

             /s/ Deuel Ross
             Deuel Ross
             *Counsel for Plaintiffs*