## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PEOPLE FIRST OF ALABAMA, et al.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action Number** |
| **v.** | ) | **2:20-cv-00619-AKK** |
| | ) | |
| **JOHN MERRILL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

This action is currently before the court on the plaintiffs' motion for partial summary judgment.  Doc. 169.  In particular, the plaintiffs contend that they are entitled to a judgment on their claim that the defendants' de facto ban on curbside voting violates Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.  Id.*  For the reasons explained below, the court finds that questions of fact exist regarding whether the plaintiffs have shown that they are excluded from voting by reason of their disabilities and whether allowing curbside voting is a reasonable modification.

### I.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "Rule 56[] mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Anderson*, 477 U.S. at 255.  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).

## II.

To succeed on their Title II claim, the plaintiffs must establish that (1) they

are "qualified individual[s] with a disability;" (2) who were "'excluded from participation in or denied the benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated against by such entity;'" (3) and that the exclusion, denial of benefits, or discrimination was "'by reason of such disability.'" *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132) (alteration in original omitted).  The defendants dispute only the second and third prongs.[1]  *See* doc. 206.

To establish the second prong of their claim, the plaintiffs do not need to prove that they have been "'completely prevented from enjoying a service, program, or activity' . . . ." *Disabled in Action v. Bd. of Elec. in City of N.Y.*, 752, F.3d 189, 198 (2nd Cir. 2014) (quoting *Shotz*, 256 F.3d at 1080).  Rather, they only need to establish that the service program or activity was not "'readily accessible' . . . ." *See Shotz*, 256 F.3d at 1080 (quoting 28 C.F.R. § 35.150).  The third prong requires a causal connection between the plaintiffs' disabilities and the exclusion or denial of benefits or alleged discrimination.  *See Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1081 n.11 (11th Cir. 2007); *see also Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008) (noting that "the ADA requires only the lesser

---

[1] As to the first prong, the plaintiffs are qualified individuals if they "meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity . . . with or without reasonable modifications to rules, policies, or practices, . . . or the provision of auxiliary aids and services."  *United States v. Georgia*, 546 U.S. 151, 153-54 (2006) (quoting 42 U.S.C. § 12131(2)).

'but for' standard of causation") (citation omitted).

## A.

The plaintiffs assert that voting is not readily accessible to them due to the curbside voting ban in part because "not every polling place in Alabama is accessible to voters with ambulatory disabilities." Doc. 169 at 21. On this record, however, the plaintiffs have not cited evidence showing that specific polling places are in fact inaccessible to voters with ambulatory disabilities. Indeed, none of the individual plaintiffs claim that they have difficulty accessing their polling sites due to ambulatory disabilities. *See* docs. 172-1; 172-2; 172-3; 172-4; 172-5; *see also* doc. 169 at 14-16. And, although the organizational plaintiffs have members who use wheelchairs and who have ambulatory disabilities, the plaintiffs do not cite evidence that those members had difficulty accessing their polling sites. *See* doc. 169 at 16.[2] To be sure, the plaintiffs have offered evidence that probate judges in three counties have allowed curbside voting on several occasions. *See* docs. 169 at 12-13; 170-6 at 11-15; 170-13 at 11-12; 170-15 at 8. However, that evidence does not establish that the regular polling sites in those counties were not readily accessible. Consequently, on the current record, the plaintiffs have not established that some polling sites in Alabama are not readily accessible to voters with ambulatory

---

[2] Scott Douglas, the executive director of Greater Birmingham Ministries, testified that one GBM member had to park "way back in the parking lot" at her polling site and walk with a walker to the front door of the site. Doc. 172-7 at 24. But, standing alone, this testimony is not sufficient to establish that the site was not readily accessible to the member.

disabilities.

## B.

Relying on the court's order granting their motion for a preliminary injunction, the plaintiffs contend that the defendants exclude them from voting based on their disabilities because voting in person "would expose them to significant and unnecessary risk without the availability of curbside voting" during the COVID-19 pandemic. Doc. 169 at 21, 24 (quoting Doc. 58 at 68 n.46) (alteration in original omitted).[3] The plaintiffs further contend that curbside voting is a reasonable accommodation. *Id.* at 24-29. The defendants disagree.[4]

To prevail on their Title II claim, the plaintiffs "must propose a reasonable modification to the challenged public program that will allow them the meaningful access they seek." *Nat'l Fed. of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir.

---

[3] As the court noted, at the preliminary injunction stage, the defendants did not specifically contest the plaintiffs' prima facie case for the claim that the curbside voting ban violated the ADA. *See* doc. 36 at 27-32; 58 at 68, n.46. The defendants, however, now challenge the prima facie case. *See* doc. 206 at 20-24.

[4] In particular, the defendants assert that the plaintiffs are not excluded from voting; that the plaintiffs' difficulties with voting, if any, are not by reason of their disabilities; and that allowing curbside voting is not a reasonable accommodation. Doc. 206 at 21-29. Finally, The defendants contend that curbside voting ban does not violate the ADA because the plaintiffs have viable alternative methods, i.e., by voting absentee. Doc. 206 at 21-22. But, as the court previously noted, the "ADA is not so narrow that the plaintiffs' rights only extend to voting 'at some time and in some way,' . . . [and] [t]he plaintiffs have the right to 'fully participate in Alabama's voting program,' [] including by casting a vote in person." Doc. 58 at 68, n.46 (quoting *Disabled in Action*, 752 F.3d at 199) (alteration in original omitted); *see also* 28 C.F.R. § 35.130(b)(1)(ii) ("A public entity, in providing any [] service, may not, . . . on the basis of disability . . . [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the [] service that is not equal to that afforded others; [or] [p]rovide a qualified individual with a disability with a[] service that is not as effective . . . as that provided to others . . . .").

2016) (citation omitted).[5]  "[T]he burden of establishing the reasonableness of an accommodation is 'not a heavy one' . . . ."  *Id.* (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2nd Cir. 2003).  Nevertheless, the ADA does not require public entities to make modifications "that would impose an undue financial or administrative burden . . . ."  *Lane*, 541 U.S. at 532 (citing 28 C.F.R. §§ 35.50(a)(2), (a)(3)).  Determining whether a proposed modification is reasonable is a "fact-specific" inquiry.  *Lamone*, 813 F.3d at 508 (citation omitted).

The plaintiffs are correct that Alabama law does not expressly prohibit curbside voting,[6] doc. 58 at 21, 49, and election officials in at least two counties have expressed a willingness to undertake reasonable measures to implement curbside voting if they are allowed to do so, *see* docs. 144-1 at 8-9; 162-1 at 8-9.  But, the defendants have presented evidence that curbside voting "would be completely unfeasible for . . . any 2020 election."  Doc. 34-1 at 22.  And, the probate judges from Mobile and Lee Counties testified that it is not feasible to place a voting machine outside, that the process for curbside voting "would take ten or fifteen

---

[5] *See also* 42 U.S.C. § 12131(2); *Nat'l Assoc. of the Deaf v. Florida*, 945 F.3d 1339, 1351 (11th Cir. 2020) (citing *Tennessee v. Lane*, 541 U.S. 509, 532 (2004)).

[6] The plaintiffs suggest that an order mandating curbside voting is a reasonable accommodation. *See* doc. 169 at 24-29.  But, as stated previously, the plaintiffs only seek an order enjoining the defendants from enforcing the ban, rather than an order mandating curbside voting.  Doc. 75 at 78. Moreover, Clay Helms, the Deputy Chief of Staff and the Director of Elections for the Alabama Secretary of State's Office, attests that "implementation of 'curbside' voting would be completely unfeasible for . . . any 2020 election."  Doc. 34-1 at 22.  At the very least, that testimony creates a question of fact regarding if such a modification would be reasonable.

minutes per voter and the traffic jams would be unimaginable," and that they would not implement curbside voting in their counties even if they were allowed to do so. Doc. 210-3 at 27; 210-4 at 35.  Finally, the State defendants contend that an order allowing counties to implement curbside voting would increase the financial and administrative burdens of ensuring that every county complies with all election laws. Doc. 206 at 28.

Taken together and viewed in the light most favorable to them, the defendants' evidence and contentions create a question of fact regarding whether an order enjoining the ban on curbside voting would afford the plaintiffs the relief they seek and whether the order may impose a burden on the State defendants.  As a result, the plaintiffs have not established as a matter of law that allowing curbside voting is a reasonable modification.

### III.

For the foregoing reasons, the plaintiffs' motion for partial summary judgment, doc. 169, is **DENIED**.

**DONE** the 8th day of September, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE