UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PEOPLE FIRST OF ALABAMA, et al.,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **JOHN MERRILL, et al.,** <br><br> **Defendants.** | ) ) ) ) ) ) ) ) ) ) ) **Civil Action Number 2:20-cv-00619-AKK** |

## MEMORANDUM OPINION AND ORDER

This action is currently before the court on the defendants' motions for summary judgment. Docs. 160; 163; 166; 168. In a nutshell, the defendants contend that the plaintiffs lack standing, have not shown that the challenged election laws burden their right to vote, and failed to join necessary parties.[1] For the reasons discussed below, the motions are due to be granted in part.

**I.**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient

---

[1] The court has addressed many of these contentions previously, *see* docs. 58; 161, and will not extensively revisit them here.

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id*. at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id*. at 324 (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party.  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Anderson*, 477 U.S. at 255.  Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).

## II.

The five individual and three organizational plaintiffs challenge three election laws in Alabama: (1) the requirement that a notary or two witnesses sign absentee ballots, Ala. Code § 17-11-10(b); (2) the requirement that absentee voters submit a copy of their photo ID when applying for an absentee ballot, Ala. Code § 17-9-30(b); and (3) the State's de facto ban on curbside voting.[2]  Doc. 75.  According to the plaintiffs, these election laws violate the fundamental right to vote under the First and Fourteenth Amendments, the Americans With Disabilities Act ("ADA"), and Section 2 of the Voting Rights Act ("VRA"), and the witness requirement is an unconstitutional poll tax in violation of the Fourteenth Amendment. *Id.* at 66-77. The plaintiffs seek declaratory relief, and an order enjoining enforcement of the challenged laws for the 2020 general election.

## A.

"[S]tanding 'is a threshold question in every federal case, determining the power of the court to entertain the suit.'" *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1265 (11th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Therefore, the court begins with the defendants' challenge to the plaintiffs' standing.  Docs. 160 at 17, 21-30; 163 at 18-25; 165 at 7-16; 166 at 2; 168.[3]

---

[2] The court dismissed the plaintiffs' claims challenging the excuse requirement for absentee voting. Doc. 161 at 26.  Thus, the defendants' motions for summary judgment are moot as to those claims.

[3] The State defendants argue again that the plaintiffs' alleged injuries cannot be traced to them or redressed by them because the State defendants did not cause the pandemic or the plaintiffs'

3

**1.**

The county circuit clerks, AEMs, and probate judges contend that the plaintiffs' alleged injuries cannot be traced to, or redressed by, them and that the plaintiffs must instead seek relief from Secretary Merrill, the State's chief election official. Docs. 163 at 18; 165 at 7-16; 167 at 8-15. This contention is generally unavailing for the reasons discussed in the court's prior orders—i.e., the alleged injuries with respect to complying with the witness and photo ID requirements are traceable to and redressable by the circuit clerks, AEMs, and probate judges. *See* docs. 58 at 19-26; 161 at 8-12.[4] Similarly, the curbside voting ban is traceable to

---

alleged injuries. *See* doc. 160 at 27-29. As the court has stated previously, the alleged injury is not that the plaintiffs or their members may contract or be exposed to COVID-19, but that they will be forced to comply with the witness and photo ID requirement to vote absentee and be denied a potential opportunity to utilize curbside voting procedures. *See* docs. 75; 58 at 16, 18.

The State defendants also resurrect their argument regarding sovereign immunity. Doc. 160 at 30-31. This argument fails for the reasons explained previously. Docs. 58 at 27-30; 161 at 6-8. And, to the extent that the county officials are also State officials, they are not entitled to sovereign immunity under the *Ex parte Young* doctrine. *See* doc. 58 at 27-28.

[4] The county defendants urge the court to reconsider its analysis of *Jacobson v. Florida Secretary of State*, 957 F.3d 1193 (11th Cir. 2020). Doc. 167 at 10-13. The defendants contend that *Jacobson* does not control standing in this case due to differences in Florida law and the challenged provisions here. *Id.* But, just as with the challenged law in *Jacobson*, Alabama law tasks the county election officials with enforcing the witness and photo ID requirements. *See* 957 F.3d at 1207; Ala. Code §§ 17-10-2(c)(1); 17-11-2; 17-11-9; *see also* docs. 164-2 at 13-15; 164-1 at 2; 167-2 at 9. And, just as in *Jacobson*, the county officials here are not subject to the Secretary of State's direct control or supervision. *See* 957 F.3d at 1207; doc. 34-1 at 1-3. Because the county election officials enforce the witness and photo ID requirements, the plaintiffs' alleged injuries are traceable to and redressable by those officials. Thus, while the court agrees that *Jacobson* did not create a bright-line rule that county election officials are always the proper defendants in a claim challenging an election law, the court respectfully disagrees with the county defendants' contention that *Jacobson* does not apply here. And, as the court previously found, based on *Jacobson*, Secretary Merrill's general "power to prescribe rules and issue directives" about the challenged laws is not sufficient to establish that the plaintiffs' alleged injuries are traceable to or redressable by Secretary Merrill. Doc. 58 at 25 (quoting *Jacobson*, 957 F.3d at 1211).

and redressable by the probate judges. Doc. 161 at 11.[5] But, just as the plaintiffs do not allege that the curbside voting ban is traceable to circuit clerks, *see* docs. 75; 161 at 12,[6] they do not allege the ban is traceable to AEMs, *see* doc. 75; *see also* doc. 209 at 7. Thus, summary judgment is due on the claims challenging the curbside voting ban against any defendant named solely in his or her official capacity as an AEM.

For their part, the State defendants assert that the ban on curbside voting is not traceable to the State itself. Doc. 160 at 29; *see also* doc. 12 at 10. Indeed, no state law expressly prohibits curbside voting, *see* doc. 58 at 21, and the plaintiffs

---

The AEMs also urge the court to reconsider its finding that they have authority to enforce the witness requirement. *See* docs. 163 at 10, 18. The Lee County AEM testified that his office plays no role in enforcing the witness requirement and that an absentee precinct inspector, who is trained by the probate judge, enforces the requirement. Doc. 14-2 at 17-18; *see also* doc. 167-2 at 2. On the other hand, Clay Helms, the Deputy Chief of Staff and the Director of Elections for the Alabama Secretary of State's Office, attests that AEMs receive and count absentee ballots, doc. 34-1 at 2, and Alabama's absentee voting laws provide that AEMs "shall fulfill the duties assigned by this chapter . . . [and] shall have all the powers, duties, and responsibilities of the circuit clerk for the purposes of this chapter" and that voters shall return their sealed absentee ballots to the AEM by mail or in person. Ala. Code §§ 17-11-2; 17-11-9. In light of Helms' testimony and the relevant Alabama law, a question of fact exists regarding whether AEMs do in fact have authority to enforce the witness requirement. Therefore, at this stage in the case, the AEMs have not established that they are not the proper defendants for the claims challenging the witness requirement.

[5] Judge Don Davis, the Probate Judge of Mobile County, contends that any injury caused by the curbside voting ban is not traceable to or redressable by him because he does not have authority under Alabama law to select polling sites or to change the sites selected by the County Commission. *See* docs. 165 at 11-14; 168 at 2. This contention is unavailing because enjoining the curbside voting ban would not necessarily require changes to counties' polling locations.

[6] Because the court dismissed the claims against the county circuit clerks challenging the curbside voting ban, JoJo Schwarzauer's motion for summary judgment, doc. 163, is moot as to the curbside voting claims.

appear to concede that the alleged injuries from the ban are traceable only to Secretary Merrill and the probate judges. *See* doc. 209 at 7. Thus, because the curbside voting ban is not traceable to the State, the State is due summary judgment on this claim.

**2.**

Next, the defendants argue that the individual plaintiffs do not have standing to challenge the disputed election laws because they have not suffered an injury in fact. Docs. 160 at 21-27; 163 at 22-24. But, as the court previously noted, "a voter always has standing to challenge a statute that places a requirement on the exercise of his or her right to vote." Doc. 58 at 15 (relying on *Common Cause v. Billups*, 554 F.3d 1340, 1351-52 (11th Cir. 2009)). Thus, the defendants' general contention is unavailing.

However, JoJo Schwarzauer's (the Mobile County Circuit Clerk and AEM) and Judge Davis's specific challenge to Dr. Eric Peebles' and Sheryl Threadgill-Matthews' standing to assert claims against them is a separate issue from the general rule. Docs. 163 at 20; 168 at 1.[7] Neither of those plaintiffs live or vote in Mobile County, and they concede that they do not assert claims against the Mobile County election officials. Doc. 172-4 at 32; 172-5 at 25-26. Moreover, the plaintiffs have

---

[7] Judge English and James Majors (the Probate Judge and AEM of Lee County), Johnnie Mae King, Judge LaShandra Myrick and Ruby Thomas (the AEM, Probate Judge, and Circuit Clerk of Lowndes County), and Carolyn Davis-Posey and Judge Britney Jones-Alexander (the Circuit Clerk and Probate Judge of Wilcox County) adopt Schwarzauer and Judge Davis's arguments. Doc. 166 at 3.

not shown that an individual plaintiff's alleged injuries are traceable to or redressable by an AEM, circuit clerk, or probate judge in counties where the plaintiff does not vote. *See* doc. 209. Thus, summary judgment is due on Dr. Peebles' and Threadgill-Matthews' claims against Schwarzauer and Judge Davis. Likewise, to the extent any individual plaintiff asserts a claim against county circuit clerks, AEMs, and probate judges in counties where the plaintiff does not vote, summary judgment is due on that claim, if any.

Finally, the plaintiffs concede that Howard Porter, Jr. and Threadgill-Matthews do not challenge the witness requirement, *see* docs. 209 at 14, 17; 214 at 37-38; 172-1 at 7; 172-5 at 18-19, and that Dr. Peebles, Porter, Threadgill-Matthews, and Teresa Bettis do not challenge the photo ID requirement, *see* docs. 160-2 at 19-20; 209 at 11, 15-17; 214 at 40; 172-3 at 30; 172-4 at 19; 172-5 at 19. Therefore, the motions for summary judgment on these plaintiffs' claims related to the witness and/or photo ID requirement are due to be granted.[8]

### 3.

The defendants contend also that the organizational plaintiffs have failed to establish associational or organizational standing. Docs. 160 at 29-30; 163 at 21-22,

---

[8] The defendants contend that Annie Carolyn Thompson also cannot challenge the photo ID requirement because she is exempt from the requirement. Docs. 160 at 9; 163. Indeed, on her absentee ballot application for the July runoff election, Thompson checked the box indicating that she was exempt from the requirement. Doc. 164-6 at 2. But, Thompson testified that she was confused by the application, and that she does not actually qualify for the exemption. Doc. 172-2 at 29-30. Thus, there is at least a question of fact regarding whether the photo ID requirement applies to Thompson.

24-25. An organization has associational standing "'to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of the individual members in the lawsuit.'" *Greater Birmingham Ministries v. Sec'y of State for Ala.*, -- F.3d -- , 2020 WL 4185801, at *10 (11th Cir. 2020) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 33, 343 (1977)). And, an organization has standing to sue on its own behalf "to challenge election laws by showing that [it] will have to divert personnel and time to educating potential voters on compliance with the laws and assisting voters who might be [affected by the laws] on Election Day." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014) (citation omitted).

    Here, the organizational plaintiffs, Black Voters Matter Capacity Building Institute ("BVM"), People First of Alabama, Greater Birmingham Ministries ("GBM"), and the Alabama State Conference of the NAACP, have identified members who are voters impacted by the challenged election laws and who would have standing to sue.[9] *See* doc. 213-1 at 10-19. In addition, the plaintiffs' claims are germane to the organizations' purposes, and the declaratory and injunctive relief

---

[9] The plaintiffs do not specifically allege that BVM has associational standing, *see* doc. 75, and BVM works through partner organization rather than having a formal individual membership network. Doc. 173-9 at 19. Even so, BVM has identified at least three members of its "partner network" who are impacted by the challenged laws. Doc. 173-9 at 19, 42; 213-1 at 18-19.

sought in this action does not require the individual members to participate in this suit. Thus, the organizational plaintiffs have associational standing to assert claims in this case. *See Greater Birmingham Ministries*, 2020 WL 4185801, at *10. Moreover, each of the organizational plaintiffs have testified that they have dedicated or anticipate that they will need to dedicate time and resources to educating members and potential voters about the challenged voting provisions. Docs. 173-9 at 31-32; 172-6 at 20, 44; 172-7 at 15, 17-21, 33; 172-8 at 11-12, 26, 65.[10] Consequently, they also have organizational standing.[11] *See Arcia*, 772 F.3d at 1343.[12]

Schwarzauer and Judge Davis additionally contend that People First and GBM have not specifically identified any members who live in Mobile County. Docs. 163 at 21-22; 168 at 1; *see also* doc. 164-8 at 11-15. To the contrary, GBM

---

[10] The defendants point out that People First did not specifically allege that it has organizational standing to assert claims in this case. *See* doc. 75 at 11-12. But, People First does allege that it "assists its members in accessing . . . full citizenship with equal rights," including by "securing access to full and equal voting rights." *Id.* at 11. And, People First's Executive Director testified that some of its county chapters have educational resources on absentee voting, and she indicated that People First has to create new voter training resources to address the challenged laws during the COVID-19 pandemic. Doc. 172-6 at 20, 44.

[11] The State defendants quibble that the organizations have not quantified the time or money they have spent in response to the challenged provision, but they did not cite any authority suggesting that an organization must do so to establish organizational standing based on a diversion of resources theory. *See* doc. 160- at 29-30.

[12] *See also Common Cause*, 554 F.3d at 1350 (noting that "the NAACP and another organization had standing to challenge a voting requirement [] because the organizations 'reasonably anticipated that they would have to divert personnel and time to educating volunteers and voters on compliance' with the new voting requirements") (quotation and alteration in original omitted).

9

has identified a member in Mobile County who is impacted by the ban on curbside voting. *See* 213-1 at 15. And, even if People First does not specifically identify members in Mobile County impacted by the challenged laws, it still has organizational standing based on evidence that it will need to divert resources to educate its members on the challenged requirements. *See Arcia*, 772 F.3d at 1343; *Common Cause*, 554 F.3d at 1350; doc. 172-6 at 20, 44. Similarly, BVM and the NAACP also have organizational standing to assert claims against Schwarzauer and Judge Davis based on a diversion of resources theory even if, as the Mobile defendants claim, they do not have associational standing. *See* doc. 172-8 at 11-12, 26, 65; 173-9 at 31-32.

### B.

The defendants argue in the alternative that any burden imposed by the challenged elections laws is slight and the plaintiffs have not been excluded from voting. Doc. 160 at 21-27; *see also* doc. 163 at 12-15. A review of the record shows, however, that the plaintiffs produced evidence that the photo ID and witness requirements impose at least some burden on voters who are at risk of severe complications from COVID-19 and who do not have means to copy their IDs or regularly come into contact with at least two other people. *See* docs. 172-2 at 13, 23-25, 29-30; 172-3 at 15, 24-25, 36, 38; 172-4 at 16-19. In addition, the record reflects that the curbside voting ban imposes a burden on voters who would prefer to vote in person during the COVID-19 pandemic. *See* docs. 172-1 at 11, 14, 29;

10

172-2 at 25-26, 28, 31; 172-3 at 32, 35; 172-4 at 13, 16, 20; 172-5 at 31. While the parties may reasonably disagree about the severity of the burden, if any, imposed on voters by the challenged laws and the extent, if at all, these laws prevent voters from voting, the court cannot resolve disputed issues of fact at the summary judgment stage. In other words, the defendants have not established as a matter of law that the burdens imposed by the laws are too minimal to support the plaintiffs' claims, and their motions are due to be denied.

## C.

Next, the county defendants argue that the plaintiffs have failed to join indispensable parties. Docs. 165 at 23-25; 167 at 16-17.[13] These defendants assert that the plaintiffs should have joined as defendants local election officials from all sixty-seven counties because the challenged election laws apply in every county in Alabama. *Id.* And, the county defendants further contend that the court must dismiss this action because the absent election officials are indispensable parties. *See id.* The court respectfully disagrees.

To determine if the absent county officials are indispensable parties, the court must first ascertain whether they are necessary parties under Rule 19(a). Fed. R. Civ. P. 19(b); *Challenge Homes, Inc. v. Greater Naples Care Center, Inc.*, 669 F.2d

---

[13] The defense based on the plaintiffs' alleged failure to join indispensable parties is properly raised in a motion to dismiss under rule 12 rather than in a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(7).

667, 669 (11th Cir. 1982). Under Rule 19(a), a party is necessary and should be joined if feasible if:

> A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If the absent county officials are necessary parties and joinder is not feasible, then the court must consider the factors enumerated in Rule 19(b) to "determine whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed." Fed. R. Civ. P. 19(b).

Here, the county defendants contend that the court cannot afford complete relief to the organizational plaintiffs, who have members all over the state, because the plaintiffs did not join the election officials from every county in Alabama. Doc. 167 at 16. This contention overlooks that the State and Secretary Merrill are defendants in the ADA and VRA claims, and Secretary Merrill is a defendant as to the constitutional claims challenging the curbside voting ban. *See* docs. 75; 161. Thus, if the plaintiffs prove their claims at trial, the court could potentially order state-wide relief. Consequently, the county defendants have not shown that the absent election officials are necessary parties under Rule 19(a)(1)(A). In addition, the county defendants have not shown that the failure to join the absent election

officials leaves them at any risk of inconsistent or multiple obligations. *See* doc. 165 at 24-25; 167 at 16-17.

Finally, the defendants contend that the absent election officials' interests may be impaired if they cannot participate in this action because "if the plaintiffs were to prevail, all local election officials in Alabama would be faced with a federal court order finding that curbside voting is federally required . . . ." Doc. 165 at 24. But, this contention misunderstands the curbside voting claims. As the court previously explained, the plaintiffs seek an order preventing Secretary Merrill from enforcing a de facto ban on curbside voting, not an order mandating the practice. *See* doc. 75 at 78; 58 at 50.

## III.

For the foregoing reasons, the defendants' motions for summary judgment, docs. 160; 163; 166; 168, are **GRANTED** as to the following claims:

1. The claims against the AEMs challenging the curbside voting ban;

2. The claims against the State challenging the curbside voting ban;

3. The claims asserted by the individual plaintiffs against circuit clerks, AEMs, and probate judges in counties where the plaintiffs do not vote;

4. Howard Porter, Jr.'s and Sheryl Threadgill-Matthews' claims challenging the witness requirement; and

5. Dr. Eric Peebles', Porter's, Threadgill-Matthews' and Teresa Bettis's claims challenging the photo ID requirement.

These claims are **DISMISSED WITH PREJUDICE**. The balance of the defendants' motions are **DENIED**.

**DONE** the 8th day of September, 2020.

                                                   _____
                                                   **ABDUL K. KALLON**
                                                   UNITED STATES DISTRICT JUDGE