# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| PEOPLE FIRST OF ALABAMA, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | Civil Action No. 2:20-cv-00619-AKK |
| JOHN H. MERRILL, Secretary of State, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) | |

## **DEFENDANTS' MOTION FOR STAY PENDING APPEAL**

*"[S]ometimes when you start down one path and you get in the middle of that path and you change directions, voters might become confused."*—Benard Simelton, President, Alabama NAACP[1]

The State Defendants (the State of Alabama and Secretary of State John Merrill) and the Mobile County Defendants (Circuit Clerk JoJo Schwarzauer and Probate Judge Don Davis) respectfully move this Court for a stay pending appeal of the permanent injunction the Court entered on September 30, 2020. *See* Docs. 250, 251. Given the time-sensitive nature of this case—the November election is now just 34 days away, and absentee voting has been underway for weeks—Defendants

---

[1] 9/10/2020 Rough Tr. at 124. Like the Court in its Findings of Fact and Conclusions of Law, "[d]ue to the time-sensitive nature of this case, [the State Defendants] cite[] to the Court Reporter's uncertified rough transcript of the trial." Doc. 250 at 2 n.3.

respectfully ask for a prompt ruling on this motion. Defendants intend to seek a stay from the Eleventh Circuit Court of Appeals shortly after 3PM CDT on Friday, October 2, 2020, if this Court has not by then stayed its judgment.

Even though the Court has determined that Plaintiffs have brought successful claims on the merits, the Court should *still* grant a stay pending appeal because the equities favor preserving the status quo during an ongoing election. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (denying injunction because "the balance of equities and the public interest" demanded it, even assuming that "plaintiffs were likely to succeed on the merits of their claims"). Indeed, the Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election," *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (citations omitted), because doing so can itself "result in voter confusion and consequent incentive to remain away from the polls," *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). That is almost certainly why the Supreme Court stayed the preliminary injunction entered in this case just a few months ago. *See Merrill v. People First of Ala.*, No. 19A1063, 2020 WL 360409 (U.S. Jul. 2, 2020). Nothing has changed since then that makes issuing an injunction while absentee voting is already taking place any wiser a course this time round. *See Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v.*

*Blackwell*, 467 F.3d 999, 1012 (6th Cir. 2006) (noting strong policy "against changing the rules in the middle of the submission of absentee ballots").

In fact, a stay is even more warranted today than it was back in July as a matter of both law and fact. Since then, the Supreme Court has stayed additional district court orders that would alter state election laws. Plaintiffs have had more time to find safe ways to meet the minimal burdens imposed by the witness and photo ID requirements. And, of course, the individual Plaintiffs who were eligible to vote in the July 14 primary runoff were all able to safely either vote in-person or comply with the absentee provisions that they challenged, despite asserting that they needed injunctive relief to vote and the Supreme Court staying this Court's preliminary injunction. *See* 9/8/2020 Rough Tr. at 174-75; 9/9/2020 Rough Tr. at 14; 9/14/2020 Rough Tr. at 39-40, 77-78, 83-87.

Granting a stay would allow the Eleventh Circuit the opportunity to review this Court's decision before Alabama's election law is again upended in the middle of another election. If the Court enters a stay and the Eleventh Circuit affirms the injunction, the injunction can take effect at that time with minimal (if any) harm to Plaintiffs. But if the Court does not enter a stay and a reviewing court then grants Defendants relief, Alabama's election law will have been twice changed during ongoing elections. Without doubt, that will sow needless confusion for voters and cause much extra work for election officials (and the organizational Plaintiffs). *See*

*Purcell*, 549 U.S. at 4 (recognizing the confusion caused by "conflicting orders"). The Court should avoid all that by entering a stay pending appeal.

## ARGUMENT

Under Federal Rule of Civil Procedure 62(c), the Court's injunction will take immediate effect unless it is stayed. In determining whether to enter a stay, courts generally consider: "(1) whether the stay application has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). The first two factors are generally "the 'most critical.'" *Id.* (quoting *Nken*, 556 U.S. at 434). But here, the Court is also "required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases." *Purcell*, 549 U.S. at 4. And given how many times the Supreme Court has entered stays in election cases just this year—including in *this* case—the Court should give those considerations a particularly close look.

## A. A Stay Is Required Under *Purcell*.[2]

Five months ago, the Supreme Court stayed a district court's injunction that altered Wisconsin's election practices due to COVID-19. *See Republican Nat'l Comm.*, 140 S. Ct. at 1208. In doing so, the Court noted that it had "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Id.* at 1207 (citing *Purcell*, 549 U.S. 1; *Frank v. Walker*, 574 U.S. 929 (2014); and *Veasey v. Perry*, 135 S. Ct. 9 (2014)). The reason for that admonition is clear: "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell*, 549 U.S. at 4-5.

The Supreme Court has acted with particular vigilance since the COVID-19 pandemic began to stay injunctions entered by district courts viewing the pandemic as cause to interfere with state elections. In July, of course, it stayed the preliminary injunction this Court had entered. *Merrill*, No. 19A1063, 2020 WL 360409 (U.S. Jul. 2, 2020). That same month it also stayed a district court's injunction that relied

---

[2] The focus of this motion is on why the Court should grant a stay *even though* it has determined that some of Plaintiffs' claims succeed on the merits. The Defendants do not rehash all their arguments on the merits. But they do not abandon them, and the Court should reconsider its rulings on the merits, too, for the reasons Defendants stated in their pre-trial motions, at trial itself, and in their post-trial briefing. *See, e.g.*, Docs. 121, 139, 160, 186, 209, 244.

on COVID-19 to relax Idaho's rule for ballot initiatives. *See Little v. Reclaim Idaho*, No. 20A18, 2020 WL 4360897 (U.S. Jul. 30, 2020). And in August, the Supreme Court also stayed a district court's injunction that altered Oregon's election procedures due to COVID-19. *Clarno v. People Not Politicians*, No. 20A21, 2020 WL 4589742 (U.S. Aug. 11, 2020).

The inverse has also been true: The Supreme Court has upheld orders by Courts of Appeals staying election-related injunctions that were entered by district courts due to COVID-19. *See Thompson v. DeWine*, No. 19A1054, 2020 WL 3456705 (U.S. June 25, 2020) (denying application to vacate Sixth Circuit's stay of district court's order suspending Ohio's enforcement of in-person signature requirements due to COVID-19); *Tex. Democratic Party v. Abbott*, 140 S. Ct. 2015 (2020) (denying application to vacate Fifth Circuit's stay of district court's injunction requiring Texas to implement no-excuse absentee voting during COVID-19).

So the message by now should be clear (but is worth repeating nonetheless): "[L]ower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1208. That message is just as pertinent in this stage of the proceeding as it was when the Supreme Court acted to stay the Court's prior order. Then, like now, absentee voting was already underway. And then, like now, in-person voting was just around the corner and well within the

normal *Purcell* window. *E.g.*, *North Carolina v. League of Women Voters of N.C.*, 574 U.S. 927 (2014) (staying lower court's order entered 32 days before election day); *Husted v. Ohio State Conference of NAACP*, 573 U.S. 988 (2014) (staying lower court's order entered 61 days before election day); *Purcell*, 549 U.S. at 4-5 (staying lower court's order entered 33 days before election day). If anything, as explained below, the equities warrant a stay more *now* than they did at the preliminary injunction stage.

Moreover, this Court was wrong to conclude that "State defendants are judicially estopped" from relying on *Purcell* to object to a change in Alabama's election law during the November 3 election. Doc. 250 at 116. The Court came to this conclusion because the State Defendants had argued in May that the allegations Plaintiffs had raised as to the November election were too speculative to warrant injunctive relief at that time. *Id.* (citing Doc. 35 at 13-14). But nothing about that position—which came before Plaintiffs amended their Complaint, and well before trial—is inconsistent with the concerns of *Purcell*. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) ("[A] party's later position must be 'clearly inconsistent' with its earlier position."). That is so because an injunction is an act of equity; the underlying merits of the claim are but one factor to consider. *See Benisek*, 138 S. Ct. at 1944. So it can *both* be that the Plaintiffs' allegations in May concerning the November election were too speculative to warrant relief then *and* that equitable

7

considerations warrant the denial of an injunction now that Alabama is in the middle of the election. These are completely separate inquiries. The speculative nature of Plaintiffs' claims in May is simply a product of Plaintiffs' theory of the case. Defendants were not required to pretend the claims were not speculative over the summer in order to preserve their right to ask this Court to prevent voter confusion caused by changing election laws in the middle of an election. And in any event, there is "nothing improper or disingenuous about Defendants taking the alternative position(s): (1) that Plaintiffs' claims were still premature (unripe) as of May 2[5]; but (2) that if Plaintiffs are correct that their claims were ripe as of May 2[5], they would likewise have been ripe long before May 1 and thus should have been brought long before May 1." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 4279623, at *7 (M.D. Tenn. July 21, 2020) (noting in COVID-19 election challenge that "the Court [was] unwilling to accept th[e] proposition" that "a defendant who previously made and lost a ripeness argument should be de facto (if not de jure) estopped from asserting laches").

Finally, the Mobile County Defendants are certainly not judicially estopped from raising *Purcell*.

**B.      Defendants Will Be Irreparably Injured Absent A Stay.**

Absent a stay, the State Defendants will be irreparably harmed. "[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the

State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). "[F]or all intents and purposes," the order "constituted injunctions barring the State from conducting this year's elections" in the manner chosen by the Legislature. *Id.* at 2324. This is why the Supreme Court allows for interlocutory appeals of preliminary injunctions, because unless the legislative directive "is unconstitutional, [the injunction] would seriously and irreparably harm the State." *Id.* (footnote omitted); *see also Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration omitted) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers))); *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (noting that the "harm of being prevented from enforcing one of its laws" is "present every time the validity of a state law is challenged").

The injunctions against the County Defendants similarly harm both them and the State. The Mobile County Defendants are harmed by the injunction preventing them from carrying out their duties under State law, and the State is harmed because *its* laws are being enjoined. The Supreme Court recognized this latter point earlier in this litigation when it granted the State Defendants' motion for a stay, even though the State was not specifically enjoined by the Court's preliminary injunction.

9

*See Merrill*, 2020 WL 360409. Soon after that ruling, the Supreme Court explained its reasoning on this point when it compared the situation in this case to the very different situation confronting the Court when the Republican National Committee and the Republican Party of Rhode Island applied for a stay of a district court's injunction of Rhode Island's voting laws. *See Republican Nat'l Comm v. Common Cause Rhode Island*, No. 20A28, 2020 WL 4680151, at *1 (U.S. Aug. 13, 2020). In denying that application, the Supreme Court explained: "Unlike *Merrill v. People First of Alabama*, 591 U.S.__ (2020), and other similar cases where a State defends its own law, here the state election officials support the challenged decree, and no state official has expressed opposition. Under these circumstances, the applicants lack a cognizable interest in the State's ability to 'enforce its duly enacted' laws." *Id.* (quoting *Abbott v. Perez*, 138 S. Ct. at 2324 n.17).

Moreover, unless this Court enters a stay, the State will not only be harmed as a matter of law, but also as a matter of fact. The trial took place not on the "eve" of an election, *Republican Nat'l Comm.*, 140 S. Ct at 1207, but during one. Absentee voting began on the second day of trial—September 9, 2020. *See* 9/11/2020 Rough Tr. at 58. By the fourth day of trial, more than 30,000 Alabamians had applied for absentee ballots, and "several hundred" of them had cast their ballots in person. *Id.* And the Court heard directly from local election officials who were processing thousands of ballots during trial in the days leading up to their testimony. 9/16/2020

Rough Tr. at 55–56 (Carla Woodall testifying that she had processed nearly 1,000 ballots); 9/17/2020 Rough Tr. at 136-37 (Alleen Barnett testifying that she had processed 2,864 applications as of September 9); 9/17/2020 Rough Tr. at 195 (Judge Bill English testifying that in Lee County 400 voters had cast absentee ballots in person and 600 absentee ballots had been mailed to voters).

If the Court's injunction is not stayed, election officials throughout the State will have to work to implement the injunction and educate voters about the new requirements. That will cost money and time, and the changes will undoubtedly confuse voters. And if a reviewing Court then determines that a stay is necessary, or holds that the injunction shouldn't have issued to begin with, then the Defendants will again need to invest time and resources to undo their previous efforts and educate voters of the additional change. Given all that, it is simply hard to imagine how the Defendants will not be harmed if Alabama's election laws are changed—possibly twice—while an election is ongoing.

### C. Plaintiffs Will Not Be Substantially Harmed By A Stay.

By contrast, Plaintiffs will not suffer an irreparable injury by maintaining the status quo while this case is on appeal. Even if the Court's findings are ultimately upheld, that does not mean that Plaintiffs are suffering irreparable harm *now*. "The only areas of constitutional jurisprudence where [the Eleventh Circuit] ha[s] said that an on-going violation may be presumed to cause irreparable injury involve the

right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000). And factually, voters will still be able to vote in the November 3 election—by absentee ballot if they wish, in person if they choose.

### D. The Public Interest Demands A Stay.

Finally, the public interest also demands a stay. First, the State—not Plaintiffs—represents the public; their interests "merge" when the State moves for relief, as it does here. *See Nken*, 556 U.S. at 435. Second, all the risks that the Supreme Court warned about in the *Purcell* line of cases apply here with considerable force because absentee voting for the November 3 election is already taking place.

As Secretary Merrill testified, Alabama expects more people to vote absentee this election cycle than ever before. 9/11/2020 Rough Tr. at 47. That is in large part because of the Secretary's efforts to make absentee voting accessible to voters during the COVID-19 pandemic. For many of these voters, this will be the first time they will be voting absentee. Changing the rules now will only cause more confusion and uncertainty. Remarkably (or not, given the simplicity of this truth), Plaintiffs themselves recognize this. As Benard Simelton, President of the Alabama State Conference of the NAACP, testified at trial when he was asked what efforts his

organization would need to undertake if it "obtain[ed] relief in some counties but not others":

> [W]e would try to educate voters on what the new agreements or procedures are. I mean, it's – and then again, we would look at it and say, well, we don't want to confuse voters. *And sometimes when you start down one path and you get in the middle of that path and you change directions, voters might become confused.* So we would have to look at it and determine, you know, would it be better to proceed on with the election as it is. But we would again attempt to educate voters. But I couldn't say right now that we would definitely do it or not try to educate voters.

9/10/20 Rough Tr. at 123-24 (emphasis added). The *Purcell* Court couldn't say it any better.

For similar reasons, the Court's order permitting curbside voting may cause voters to miss the opportunity to safely vote absentee. For example, Plaintiff Howard Porter lives with two adults and has a copier in his home; there is no dispute that he can safely vote absentee, as this Court recognized in dismissing his claims related to the witness and photo ID requirements. *See* Doc. 226 at 7; 9/14/2020 Rough Tr. at 83. Nevertheless, he testified that he would prefer to vote curbside. *Id.* at 99. Should he and other voters like him decide to forgo absentee voting in reliance on the availability of curbside voting, only to have curbside voting be unavailable on election day, they might be forced to vote at their polling place in person or else miss the opportunity to vote at all. But the Court can avoid this sort of "incentive to remain

away from the polls" by staying the injunction pending appeal. *See Purcell*, 549 U.S. at 4–5.

## CONCLUSION

This Court should enter a stay of its injunction pending appeal.

Respectfully submitted,

Steve Marshall,
  *Attorney General*

A. Barrett Bowdre (ASB-2087-K29V)
  *Deputy Solicitor General*

<u>s/ James W. Davis</u>
James W. Davis (ASB-4063-I58J)
Winfield J. Sinclair (ASB-1750-S81W)
Jeremy S. Weber (ASB-3600-X42G)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Brenton M. Smith (ASB-1656-X27Q)
A. Reid Harris (ASB-1624-D92X)
  *Assistant Attorneys General*

OFFICE OF ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov
Jim.Davis@AlabamaAG.gov
Winfield.Sinclair@AlabamaAG.gov
Jeremy.Weber@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Brenton.Smith@AlabamaAG.gov
Reid.Harris@AlabamaAG.gov

***Counsel for Defendants Secretary of State John H. Merrill and the State of Alabama***

s/ *Todd D. Engelhardt*
Todd D. Engelhardt (ASB-8939-T67D)
Robert F. Dyar (ASB-1876-G12Q)
ADAMS AND REESE LLP
1901 6th Avenue North, Suite 3000
Birmingham, AL 35203
(205) 250-5000
todd.engelhardt@arlaw.com
robert.dyar@arlaw.com

Jay M. Ross (ASB-6378-069J)
A. Patrick Dungan (ASB-0951-Y84D)
ADAMS AND REESE LLP
11 North Water Street, Suite 23200
Mobile, AL 36602
(251) 433-3234
jay.ross@arlaw.com
patrick.dungan@arlaw.com

*Counsel for Defendant JoJo Schwarzauer*

s/ *Jerome E. Speegle*
Jerome E. Speegle (SPEEJ6724)
Jennifer S. Holifield (HOLIJ4127)
SPEEGLE, HOFFMAN, HOLMAN & HOLIFIELD, LLC
P.O. Box 11
Mobile, Alabama 36601
(251) 694-1700
(251) 694-1998 (fax)
jspeegle@speeglehoffman.com
jholifield@speeglehoffman.com

s/ *Lee L. Hale*
Lee L. Hale (1143-L44L)
501 Church Street
Mobile, Alabama 36602
(251) 433-3671
(251) 432-1982 (fax)
lee.hale@comcast.net

*Counsel for Defendant Judge Don Davis*

**Certificate of Service**

I hereby certify that on September 30, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such to all counsel of record.

*s/* James W. Davis
*Counsel for Defendants Secretary of State John H. Merrill and the State of Alabama*